# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

———————————

Daniel Jackson

Plaintiff - Appellant,

v.

D. Dameron, et al.

Defendants - Appellees.

———————————

On Appeal from the U.S. District Court
for the Western District of Virginia
No. 7:22-CV-90, U.S. Magistrate Judge C. Kailani Memmer

———————————

## OPENING BRIEF

———————————

Samuel Weiss
RIGHTS BEHIND BARS
1800 M Street NW Front 1 #33821
Washington, DC 20001
202-455-4399
sam@rightsbehindbars.org

*Counsel for Plaintiff-Appellant*

# TABLE OF CONTENTS

TABLE OF CONTENTS .............................................................................................i

TABLE OF AUTHORITIES ....................................................................... ii

STATEMENT OF JURISDICTION ........................................................... 1

STANDARD OF REVIEW ........................................................................ 1

STATEMENT OF THE ISSUES ................................................................ 1

STATEMENT OF THE CASE ................................................................... 2

SUMMARY OF ARGUMENT .................................................................. 5

ARGUMENT ............................................................................................. 6

    I. Whether Jackson Properly Stated a Claim Under the ADA and Due Process Clause is Properly Before This Court. .................................................. 6

    II. Jackson Stated a Claim Under the ADA. ........................................ 10

    III.  Jackson Stated a Claim Under the Due Process Clause by Alleging He Was Fined 25 Dollars Without Adequate Process. .................................... 16

CONCLUSION ........................................................................................ 18

CERTIFICATE OF COMPLIANCE ....................................................... 19

CERTIFICATE OF SERVICE................................................................. 20

# TABLE OF AUTHORITIES

## CASES

*A Helping Hand, LLC v. Baltimore Cty.*, 515 F.3d 356 (4th Cir. 2008) ................13

*Ainooson v. O'Gara*, No. 23-11478, 2024 WL 4349240 (D. Mass. Sept. 30, 2024) 8

*Akard v. Comm'r of Indiana Dep't of Correction*, No. 21-2133, 2024 WL 1140965 (S.D. Ind. Mar. 15, 2024) ..................................................................................8

*Armstrong v. Schwarzenegger*, 622 F.3d 1058 (9th Cir. 2010) ............................15

*Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972) ............................16

*Brown v. Stapleton*, 2025 WL 1802387 (4th Cir. July 1, 2025) ......................16, 17

*Castle v. Eurofresh, Inc.*, 731 F.3d 901 (9th Cir. 2013) .........................................9

*Castro v. Illinois Dep't of Corr.*, No. 15-707, 2015 WL 4751019 (S.D. Ill. Aug. 11, 2015) .......................................................................................................................8

*Compton v. Taylor*, No. 7:21-478, 2022 WL 1110351 (W.D. Va. Apr. 13, 2022) ...4

*Durham v. Lappin*, 346 F. App'x 330 (10th Cir. 2009) ..........................................4

*Erickson v. Pardus*, 551 U.S. 89 (2007)................................................................1

*Hernandez v. Cty. of Monterey*, 110 F. Supp. 3d 929 (N.D. Cal. 2015) ................14

*Ibarra v. United States*, 120 F.3d 472 (4th Cir. 1997) ...........................................1

*Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667 (7th Cir. 2012) ...............................9

*Johnson v. City of Shelby, Miss.*, 574 U.S. 10 (2014) .........................................6, 7

*Labram v. Havel,* 43 F.3d 918 (4th Cir. 1995) .......................................................8

*Lennear v. Wilson*, 937 F.3d 257 (4th Cir. 2019) .................................................10

*Marks v. Colorado Department of Corrections*, 976 F.3d 1087 (10th Cir. 2020) ....9

*McDaniel v. Syed*, 115 F.4th 805 (7th Cir. 2024) ..................................................9

*Merriweather v. Kijakazi*, No. 1:21-391, 2023 WL 8355899 (S.D.W. Va. Dec. 1, 2023) .......................................................................................................................8

*Munoz v. California Dep't of Corr. & Rehab.*, 842 F. App'x 59 (9th Cir. 2021) ...15

*Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494 (4th Cir. 2016) ........................11

*PGA Tour, Inc. v. Martin*, 532 U.S. 661 (2001)...................................................13

*Pierce v. Cty. of Orange*, 526 F.3d 1190 (9th Cir. 2008) ......................................15

*Pierce v. District of Columbia*, 128 F. Supp. 3d 250 (D.D.C. 2015) ......................11

*Rosen v. Montgomery County, Maryland*, 121 F.3d 154 (4th Cir. 1997) ..............12

*Sandin v. Conner*, 515 U.S. 472 (1995) ......................................................10

*Sansotta v. Town of Nags Head,* 724 F.3d 533 (4th Cir. 2013) ...............................8

*Seremeth v. Bd. of Cnty. Comm'rs Frederick Cnty.*, 673 F.3d 333 (4th Cir. 2012) 11

*Shaw v. Foreman*, 59 F.4th 121 (4th Cir. 2023) ...........................................6

*Simmons v. Godinez*, No. 15-4501, 2017 WL 3568408 (N.D. Ill. Aug. 16, 2017) ...8

*Stanton v. Elliott*. 25 F.4th 227 (4th Cir. 2022) ...........................................7

*Stevenson v. City of Seat Pleasant, Md.*, 743 F.3d 411 (4th Cir. 2014) .................10

*United States v. Georgia*, 546 U.S. 151 (2006) .........................................14

*Watson v. Ault*, 525 F.2d 886 (5th Cir. 1976) .........................................4

*Watson-Kaufman v. Dep't of Corr.*, No. 7:24-714, 2025 WL 1793177 (W.D. Va. June 30, 2025) ...........................................................................4

*Williamson v. Stirling*, 912 F.3d 154 (4th Cir. 2018) .....................................18

*Wright v. New York State Dep't of Corr.*, 831 F.3d 64 (2d Cir. 2016) ...................9

**STATUTES**

28 U.S.C. § 1291 ......................................................................................1

28 U.S.C. § 1331 ......................................................................................1

29 U.S.C. § 794 ......................................................................................13

42 U.S.C. § 12102 ................................................................................12, 13

42 U.S.C. § 12132 ................................................................................1, 11

42 U.S.C. § 1983 ......................................................................................1

Va. Code § 53.1-43.1 ............................................................................16

**OTHER AUTHORITIES**

U.S. Const. amend. XIV, § 1 ....................................................................16

**REGULATIONS**

28 C.F.R. § 35.108 ................................................................................12

28 C.F.R. § 35.152 ................................................................................15

28 C.F.R. Pt. 35, App. A ........................................................................14

## STATEMENT OF JURISDICTION

Jackson invoked the district court's jurisdiction pursuant to 28 U.S.C. § 1331. He brought his complaint under 42 U.S.C. § 1983 and 42 U.S.C. § 12132. JA27–35. This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 because the district court has issued a final judgment. JA72. The district court docketed Jackson's timely notice of appeal on April 10, 2025, 21 days after the final judgment. JA73.

## STANDARD OF REVIEW

This Court reviews dismissals under Rule 12(b)(6) de novo. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). It "accept[s] the well-pled allegations of the complaint as true, and [construes] the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Id.* This construal must be particularly liberal here, as "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

## STATEMENT OF THE ISSUES

I.    Whether the issue of if Jackson's *pro se* complaint stated a claim under the ADA or Due Process Clause is properly before this Court when his allegations stated a claim even if he did not thoroughly identify the legal theories.

II.     Whether Jackson's *pro se* complaint states a claim under the ADA.

III.    Whether Jackson's *pro se* complaint states a claim under the Due Process
        Clause.

## STATEMENT OF THE CASE

In early 2021, state prison officials transferred Daniel Jackson from River North Correctional Center to Augusta Correctional Center. JA27. He was struggling with a series of injuries to his right leg at the time, and River North was accommodating his limitations through, *inter alia*, a support sleeve for his ankle and a medically assigned bottom bunk. *Id.*

Upon arrival at Augusta, prison staff confiscated his ankle support pending reissue by medical staff. JA28. Jackson met with a physician, Dr. Smith, several times and requested the sleeve. *Id.* Each time, Dr. Smith indicated that he understood the reason it was prescribed and its necessity and would look into getting the sleeve reissued. *Id.* He never did. *Id.* Lacking the sleeve, Jackson was less mobile and was limited in his ability to engage in physical exercise. *Id.*

In May of 2021, Jackson was working at the apparel plant at Augusta. *Id.* The plant's dress code required state boots during work hours unless a prisoner had medical clearance to wear tennis shoes, called a "Tennis Shoe Pass." *Id.* The boots caused him pain and loss of feeling, which hampered his ability to work. *Id.* He sought the Tennis Shoe Pass, but Dr. Smith told him he would not even consider the

pass and that he should either suffer the pain or quit. JA29. He told Jackson he did not care if other prisoners had the pass; Jackson would not be receiving one. *Id.* Jackson resigned from the job for medical reasons. *Id.*

In June 2021, a neurologist prescribed soft-soled shoes for Jackson along with special insoles. *Id.* The damage was done, however, as he no longer had his job and it would be six months before he received another one despite applying for multiple positions. *Id.* The neurologist also diagnosed him with a bone spur in his heel, a partial tear of the Achilles, muscle atrophy, and nerve damage. *Id.*

In October 2023, medical staff issued a note stating that he was no longer medically indicated for a bottom bunk. JA33–34. This was confusing, as his bottom bunk pass had been renewed for 365 days on June 6, 2023. JA34. The change occurred without any examination of Jackson. *Id.* Jackson sent in a request and saw Dr. Gomez in November 2023, who told him he had no recollection of the status being removed and that he was indeed indicated for bottom bunk status. *Id.* Dr. Gomez suggested that Nurse Dameron had removed his status but that it had been medically inappropriate to do so. *Id.*

Also in October 2023, Dameron's husband Lt. Lokey ordered a urinalysis done on Jackson. *Id.* Jackson had no history or indications of drug usage. *Id.* Lokey indicated that Jackson was positive and lied and said that Jackson had admitted to regular usage. JA32. Lokey also fabricated the answers to a questionnaire he claims

to have given Jackson. *Id.* Although was no documentation proving these statements; urinalysis procedures were not followed; and Jackson had not signed any statement purportedly by him, "due process was violated" and Jackon was found guilty. JA33. The prison fined him 25 dollars and took away his visits and use of the phone for two years. *Id.*

In February 2022, Daniel Jackson filed a *pro se* complaint containing some of the above allegations as well as explaining that he had been put in a pod "up two flights of stairs, requiring [him] to walk up and down the stairs numerous times each day to get [his] medications and food," which caused pain in his leg. JA9. He used the form complaint available to him inside the prison. *Id.* Although the form itself says "For use by inmates filing a complaint under CIVIL RIGHTS ACT, 42 U.S.C. § 1983," this is the only form for *pro se* prisoners bringing conditions of confinement claims and district courts in the Western District of Virginia often suggest that *pro se* prisoners use the form.[1] *See, e.g.*, *Watson-Kaufman v. Dep't of Corr.*, No. 7:24-714, 2025 WL 1793177, at *1 (W.D. Va. June 30, 2025) ("The Clerk shall send the plaintiff a copy of this order and a blank § 1983 form for filing his Amended

---

[1] The current version of the form is available on the court's website at https://www.vawd.uscourts.gov/forms/forms/. The purpose of these forms, of course, is to avoid *pro se* prisoners losing their claims on technical pleading errors, not the opposite. *See Watson v. Ault*, 525 F.2d 886, 893 (5th Cir. 1976); *Durham v. Lappin*, 346 F. App'x 330 (10th Cir. 2009).

Complaint, should he choose to do so."); *Compton v. Taylor*, No. 7:21-478, 2022 WL 1110351, at *3 (W.D. Va. Apr. 13, 2022) (same).

In July 2022, the district court screened the complaint under the Prison Litigation Reform Act and dismissed "Augusta Correctional Center Medical Department" as a defendant. JA13. State agencies, the court wrote, such a prison or prison system, is not a "person" subject to suit under § 1983. *Id.* The court did not consider whether the state or its prison agency would be an appropriate defendant under any other causes of action. *Id.*

In February 2024, Jackson filed the now-operative amended complaint which elaborated on the allegations from his initial one. JA39. Defendants partially moved to dismiss and then moved for summary judgment, addressing only the Eight Amendment and First Amendment claims against Defendants. JA37; JA39. The district court granted the motion to dismiss in part and then granted the motion for summary judgment in full. JA41–52; JA54–71. The court never addressed, in its screening order or later, whether Jackson stated a claim under the Americans with Disabilities Act (ADA) or the procedural Due Process Clause. *Id.* Jackson timely appealed. JA73.

## SUMMARY OF ARGUMENT

This Court may consider whether Jackon properly stated a claim under the ADA and the Due Process Clause on *de novo* review. In a complaint, especially a

*pro se* complaint, the question is whether the plaintiff's allegations state a claim and not whether he articulated the correct legal theory.

Jackson stated a claim under the ADA. His mobility limitations qualify as a disability under the ADA's forgiving standard. He identified several services that he lacked meaningful access to because of the prison's failure to accommodate his disabilities, including his job and his bed.

Jackson also stated a claim under the Due Process Clause. He had a property interest in twenty-five dollars, thus triggering procedural protections for his disciplinary hearing. Under a liberal reading of his *pro se* complaint, he did not receive them. This Court should reverse and remand for further proceedings.

## ARGUMENT

### I.  Whether Jackson Properly Stated a Claim Under the ADA and Due Process Clause is Properly Before This Court.

"This Court reads pro se pleadings liberally and interpret[s] them to raise the strongest arguments that they suggest." *Shaw v. Foreman*, 59 F.4th 121, 127 (4th Cir. 2023) (internal quotations omitted). "[W]hen an action implicates a civil rights interest," this Court "must be especially solicitous of the wrongs alleged and must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged." *Id.*

Federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014). In *Johnson*, the Court unanimously and summarily reversed the Fifth Circuit for dismissing a claim because the civil rights plaintiffs did not cite 42 U.S.C. § 1983, the relevant cause of action, in their complaint. *Id.* The Court distinguished *Johnson* from its recent high-profile cases requiring a heightened pleading standard for *factual* allegations, as the complaint in *Johnson* "was not deficient in that regard." *Id.* Plaintiffs "stated simply, concisely, and directly events that, they alleged, entitled them to damages." *Id.* "Having informed the city of the factual basis for their complaint, they were required to do no more to stave off threshold dismissal for want of an adequate statement of their claim." *Id.*

This Court has invoked *Johnson* in reversing district courts for failing to recognize claims. In *Stanton v. Elliott*, this Court reversed a district court that failed to recognize a claim because the complaint had not invoked the precise statute. 25 F.4th 227, 237 (4th Cir. 2022). "The district court was too harsh," this Court wrote, as "complaints do not have to be so precise." *Id.* The Court cited Fed. R. Civ. P. 8(e): "Pleadings must be construed so as to do justice." *Id.* at 238. While factual plausibility "requires a higher standard," for legal misstatements this Court "is more forgiving." *Id.* "Plaintiffs need not put a claim under a special heading, quote the

statute, or use magic words to make out a claim." *Id.* In sum, "Courts should focus on the substance of the allegations."[2] *Id.* The purpose of a complaint is notice; if Defendants are on notice of what is being alleged, the accurate invocation of a legal theory is of no moment. *See Sansotta v. Town of Nags Head,* 724 F.3d 533, 548 (4th Cir. 2013); *see also Labram v. Havel,* 43 F.3d 918, 920–21 (4th Cir. 1995) ("Legal labels characterizing a claim cannot, standing alone, determine whether it fails to meet [the standard for notice pleading pursuant to Federal Rule of Civil Procedure 8(a)(2)]").

Jackson's allegations were sufficient to put Defendants on notice that he had a disability that they had failed to accommodate. In his initial complaint, he named a public entity that the district court understood to reference a state agency, an improper defendant for a Section 1983 claim but a correct defendant for an ADA claim. *See* JA13. His allegations that he required a bottom bunk pass because of a mobility problem but his limitations were not accommodated is a paradigmatic claim under the ADA.[3] JA32. So was his claim that the prison house him up two flights of

---

[2] District courts in the Fourth Circuit have relied on *Stanton* to analyze claims under disability law although plaintiffs failed to accurately invoke it, even in counseled cases. *See Merriweather v. Kijakazi*, No. 1:21-391, 2023 WL 8355899, at *14 (S.D.W. Va. Dec. 1, 2023); *see also Castro v. Illinois Dep't of Corr.*, No. 15-CV-707, 2015 WL 4751019, at *3 (S.D. Ill. Aug. 11, 2015) (*sua sponte* recognizing an ADA claim when a *pro se* prisoner brought an Eighth Amendment claim).

[3] *See, e.g.*, *Ainooson v. O'Gara*, No. 23-11478, 2024 WL 4349240, at *12 (D. Mass. Sept. 30, 2024) (holding that denial of lower bunk pass stated a claim under the ADA); *Akard v. Comm'r of Indiana Dep't of Correction*, No. 21-2133, 2024 WL

stairs, causing him pain.[4] JA9. So was his request for an ankle sleeve so he could have sufficient mobility to partake in the prison's recreation.[5] JA28. So was his claim that he wanted to work but could not do so without an accommodation for special shoes.[6] JA29. Notably, the damages section of his *pro se* complaint included compensation for "wages lost" as a result of his forced resignation from the apparel plant and the prison's refusal to hire him in another role. JA34.

Jackson's allegations were also sufficient to put Defendants on notice that he was bringing a claim under the Due Process Clause. He alleged that "due process

---

1140965, at *3 (S.D. Ind. Mar. 15, 2024) (same); *Simmons v. Godinez*, No. 15-4501, 2017 WL 3568408, at *6 (N.D. Ill. Aug. 16, 2017) (same).

[4] *See, e.g.*, *McDaniel v. Syed*, 115 F.4th 805 (7th Cir. 2024) (holding that a prisoner being forced to endure pain and difficulty getting up and down stairs to access prison programming violated the ADA).

[5] *See, e.g.*, *Wright v. New York State Dep't of Corr.*, 831 F.3d 64, 70 (2d Cir. 2016) (holding that a prisoner who sought an electric rather than manual wheelchair had a claim under the ADA because he was "avoid[ing] recreational time in the yard because he fear[ed] he would be unable to escape quickly in the event of a prison fight, and when he [was] forced to spend recreational time in the yard, he [was] physically and socially isolated because no inmates are willing to push him around").

[6] *See, e.g.*, *Marks v. Colorado Department of Corrections*, 976 F.3d 1087 (10th Cir. 2020) (holding that a prison's transfer of a prisoner from community corrections back to prison because the prisoner could no longer work due to his disability plausibly violated the ADA); *Castle v. Eurofresh, Inc.*, 731 F.3d 901, 904 (9th Cir. 2013) (transfer of prisoner from higher-paying to lower-paying job because of his disability plausibly violated the ADA); *Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 672–73 (7th Cir. 2012) (blocking prisoner from consideration for work release program because he walked with a cane plausibly violated the ADA); *Akard*, No. 121-CV-2133, 2024 WL 1140965, at *3 (holding that unfulfilled request for accommodation that would allow prisoner to work violated disability law).

was violated" when Defendants did not properly follow disciplinary procedures and fined him twenty-five dollars and took visitation and phone rights away from him for two years each. JA33. The U.S. Supreme Court and this Court have a significant jurisprudence on when process is owed and what process is owed in prison disciplinary hearings, which is exactly what Jackson invoked here. *See, e.g.*, *Sandin v. Conner*, 515 U.S. 472, 485 (1995); *Lennear v. Wilson*, 937 F.3d 257, 268 (4th Cir. 2019).

Jackson's failure to identify the district court's legal errors in discovery is of no consequence, especially as he was operating *pro se*. As this Court has explained, "discovery is an exercise in fact-finding, and it is the complaint—not depositions or interrogatories—that provides 'fair notice' to defendants of the allegations against them." *Stevenson v. City of Seat Pleasant, Md.*, 743 F.3d 411, 420 (4th Cir. 2014). If the "plain language of the complaint sufficiently states a cause of action" then anything the plaintiff did or did not do in discovery "is inapposite of the notice issue." *Id.* The district court's failure to recognize Jackson's claims under a Rule 12 standard are before this Court on *de novo* review. As described below, they state a claim, and therefore this Court should reverse.

## II. Jackson Stated a Claim Under the ADA.

The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits

10

of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Under the statute, "discrimination" is not limited to instances of animus toward individuals with disabilities. Rather, it "includes 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability.'" *Seremeth v. Bd. of Cnty. Comm'rs Frederick Cnty.*, 673 F.3d 333, 336 (4th Cir. 2012) (quoting 42 U.S.C. § 12112(b)(5)(A)); *see also, e.g.*, *Pierce v. District of Columbia*, 128 F. Supp. 3d 250, 269 (D.D.C. 2015) ("Section 504 and Title II mandate that entities act *affirmatively* to evaluate the programs and services they offer and to ensure that people with disabilities will have meaningful access to those services."). An accommodation "is reasonable if it is reasonable on its face or used ordinarily or in the run of cases and will not cause undue hardship." *Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 507 (4th Cir. 2016) (internal quotation marks and citation omitted).

The ADA "unmistakably includes State prisons and prisoners within its coverage," and encompasses the services offered by prisons. *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 209-11 (1998). Indeed, the "affirmative duty" to accommodate "is seemingly at its *apex* in the context of a prison facility, in light of the uneven power dynamic between prison officials and inmates that inherently and appropriately exists, and also the fact that departments of corrections have complete

control over whether prison inmates (disabled or not) receive any programs or services at all." *Pierce*, 128 F. Supp. 3d at 269.

A public entity violates the ADA when it fails to provide a reasonable accommodation to disabled individuals "that will allow them the meaningful access" to which they are entitled. *NFB*, 813 F.3d at 507–08; *Seremeth*, 673 F.3d at 336. The entity may be liable under a direct theory of liability or on a secondary basis for the violations of its agents. *Rosen v. Montgomery County, Maryland*, 121 F.3d 154, 157 n.3 (4th Cir. 1997).

Jackson adequately alleged that he had a disability under the ADA. The ADA defines qualified disability, in relevant part, as "a physical or mental impairment that substantially limits one or more major life activities of [the] individual." 42 U.S.C. § 12102(1)(A). Congress intended this definition to be interpreted expansively. 42 U.S.C. § 12102(a)(A); 28 C.F.R. § 35.108(a) (mandating, in keeping with the ADA Amendments Act of 2008, that "[t]he definition of 'disability' shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA."). Jackson's allegations that he had severe leg injuries that limited his mobility, prevented him from working in boots without serious pain, and required

a lower-bunk pass demonstrates that he was substantially limited in several major life activities, including climbing and working.[7] JA27–32.

Jackson also alleged that he lacked meaningful access to several services or activities provided by the public entity. The ADA is a "broad mandate" of "comprehensive character" and "sweeping purpose" intended "to eliminate discrimination against disabled individuals." *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675 (2001). Though the ADA does not define the "services, programs, or activities of a public entity," the Rehabilitation Act of 1973 defines a "program or activity" as "*all* of the operations of ... a local government." 29 U.S.C. § 794(b)(1)(A) (emphasis added). The Rehabilitation Act and the ADA are generally interpreted in tandem, and Congress has instructed courts that nothing in the ADA shall be construed to apply a lesser standard than the standards applied under § 504 of the Rehabilitation Act or the regulations issued by Federal agencies pursuant to that title. *See A Helping Hand, LLC v. Baltimore Cty.*, 515 F.3d 356, 362 (4th Cir. 2008). The Department of Justice—which is tasked with administering Title II of the ADA and promulgating regulations to implement it— has interpreted Title II to apply to "anything a public entity does." 28 C.F.R. Pt. 35, App. B (Section 35.102

---

[7] Although Jackson's "actual" impairment is both clear and sufficient, he also qualifies as someone with a "record of impairment," under 42 U.S.C. § 12102(1)(B) as demonstrated by the series of accommodations he was provided with prior to entering Augusta. JA27.

Application), at 687 (2017). "[C]orrectional facilities are unique facilities under Title II," because "[disabled] [i]nmates cannot leave the facilities and must have their needs met by the corrections system." 28 C.F.R. Pt. 35, App. A; *id.* ("If the detention and correctional facilities fail to accommodate prisoners with disabilities, these individuals have little recourse, particularly when the need is great.").

As a result, virtually everything a prison does qualifies as a program, service, or activity. *See Seremeth*, 673 F.3d at 338 (noting the Supreme Court's "expansive interpretation" in defining program, services, or activities in the prison context); *see also Hernandez v. Cty. of Monterey*, 110 F. Supp. 3d 929, 935–36 (N.D. Cal. 2015) ("Because of the unique nature of correctional facilities, in which jail staff control nearly all aspects of inmates' daily lives, most everything provided to inmates is a public service, program or activity, including sleeping, eating, showering, [and] toileting").

The work program at the apparel plant was a prison activity. The recreational programs that he could not meaningfully participate in were as well. *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998) ("Modern prisons provide inmates with many recreational 'activities'"). Mobility itself is a prison service. *United States v. Georgia*, 546 U.S. 151, 157 (2006) (describing the "deliberate refusal of prison officials to accommodate [the plaintiff's] disability-related needs in such fundamentals as mobility" as plausibly stating a claim); *see also Armstrong*

*v. Schwarzenegger*, 622 F.3d 1058, 1068 (9th Cir. 2010) (describing "elementary mobility" as a prison service). A safe place to sleep is also a prison service. *See Pierce v. Cty. of Orange*, 526 F.3d 1190, 1224 n.44 (9th Cir. 2008) ("Providing inmates with appropriate and adequate bedding" is a "'service[] of the jail' for purposes of the ADA"); 28 C.F.R. § 35.152(b)(3) (requiring prisons to "ensure that each inmate with a disability is housed in a cell with the accessible elements necessary to afford the inmate access to safe, appropriate housing.").

Jackson plausibly alleged that the prison did not reasonably accommodate his disability. He already had the accommodations he needed upon arriving at Augusta only for prison staff to take them from him. JA28. Dr. Smith refused to reissue his support sleeve despite knowing his need for it. *Id.* He also refused to even consider issuing a tennis shoe pass, forcing him to resign from his job. JA29. His top bunk status was removed seemingly for retaliatory reasons without even examining Jackson. JA32. The prison's failure to even consider the appropriateness of these accommodations are textbook examples of a failure to accommodate a disability under the powerful remedial standards of the ADA. *See Munoz v. California Dep't of Corr. & Rehab.*, 842 F. App'x 59, 62 (9th Cir. 2021) (holding that a prison's withdrawal of a lower-bunk pass without even examining the patient left disputed material facts on whether defendants had violated the ADA).

### III.   Jackson Stated a Claim Under the Due Process Clause by Alleging He Was Fined 25 Dollars Without Adequate Process.

The Due Process Clause of the Fourteenth Amendment prohibits a state from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. For the procedural protections of the Clause to apply, the challenged state action must deprive the plaintiff of a protected property or liberty interest. *See Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 571 (1972).

This Court analyzes property and liberty interests under different standards. Because "money is … indisputably a property interest," the focus, here, is on "a legitimate claim of entitlement" to an object or benefit "upon which people rely in their daily lives." *Brown v. Stapleton*, 2025 WL 1802387 at *3 (4th Cir. July 1, 2025) (emphasis removed). This Court determines whether a prisoner has such a property interest by asking whether an independent source of law gives them a legal entitlement to it. *Id.* "Virginia state law is clear on prison trust accounts." *Id.* at *2. Several Virginia statutes expressly grant incarcerated people an entitlement to the funds held in their accounts. *See, e.g.*, Va. Code § 53.1-43.1; *id.* § 53.1-44 ("[T]he funds held by the Director or by any state correctional facility … belong to prisoners"); *id.* § 53.1-43.1 ("[A]n inmate may direct the Department to transfer funds from his personal trust account to any other account maintained for him."). Virginia, by creating prison trust accounts, has therefore vested in prisoners "a

legitimate claim of entitlement to the funds in those accounts." *Brown*, 2025 WL 1802387 at *2.

Recently in *Brown*, this Court reaffirmed, in a clear and unambiguous holding, that because prisoners have a property interest in their personal trust accounts, fining a prisoner even seven dollars without due process violates the Fourteenth Amendment. 2025 WL 1802387 at *1, n.1. This Court rejected arguments that prison administrators could arbitrarily take personal funds, notwithstanding the otherwise totalizing nature of incarceration: "an inmate sentenced to prison presumably expects to spend time in a cell, to listen to orders, and to eat and sleep on a rigid schedule; he presumably does not expect to have what little property in prison he lawfully owns taken arbitrarily." *Id.* at *4. Here, arbitrary aptly describes Jackson's twenty-five dollar fine. JA33. Like the plaintiff in *Brown* before him, Jackson was fined money that could only have come from his personal trust account, savings that represent wages from barely compensated prison labor or transfers from loved ones in the free world. *See Brown*, 2025 WL 1802387 at *1, Therefore, like Brown—and all prisoners in Virginia's correctional facilities—Jackson has a property interest in those twenty-five dollars and is entitled to procedural due process protections before the prison can seize them as a fine. *Id.* at *2.

Jackson has also alleged that he was denied constitutionally adequate process. Prisoners are "entitled to notice, a hearing (which may involve witnesses and

documentary evidence), and an explanation of the resulting decision." *Williamson v. Stirling*, 912 F.3d 154, 176 (4th Cir. 2018). Jackson alleged that ordinary "procedures were not properly followed," evidence was fabricated, statements by him were fraudulently obtained, and "due process was violated." JA33. Although he does not detail specifically if, for example, he received a notice, read liberally, the amended complaint is sufficient to state a claim under the Due Process Clause.

## CONCLUSION

This Court should reverse the district court grant of judgment to Defendants and remand for further proceedings.

July 10, 2025                              Respectfully submitted,


*/s/ Samuel Weiss*

Samuel Weiss
Rights Behind Bars
1800 M Street NW Front 1
#33821
Washington, DC 20001
202-455-4399
sam@rightsbehindbars.org

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), I certify that:

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains x,xxx words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word with a Times New Roman 14-point font.

Date: July 10, 2025

> */s/ Samuel Weiss*
> Samuel Weiss
> Rights Behind Bars
> 1800 M St. NW Front 1, #33821
> Washington, DC 20033
>
> *Counsel for Plaintiff-Appellee*
> *Daniel Jackson*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 10, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the ECF/ACMS system.

Participants in the case who are registered CM/ECF users will be served by the ECF/ACMS system.

Date: July 10, 2025.

*/s/ Samuel Weiss*
Samuel Weiss
Rights Behind Bars
1800 M St. NW Front 1, #33821
Washington, DC 20033

*Counsel for Plaintiff-Appellant*
*Daniel Jackson*