# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

———————————

Daniel Jackson

Plaintiff - Appellant,

v.

D. Dameron, et al.

Defendants - Appellees.

———————————

On Appeal from the U.S. District Court
for the Western District of Virginia
No. 7:22-CV-90, U.S. Magistrate Judge C. Kailani Memmer

———————————

## JOINT APPENDIX

———————————

Samuel Weiss
RIGHTS BEHIND BARS
1800 M Street NW Front 1 #33821
Washington, DC 20001
202-455-4399
sam@rightsbehindbars.org

*Counsel for Plaintiff-Appellant*

# TABLE OF CONTENTS

| Docket | JA1 |
|---|---|
| Doc. No. 1, Complaint | JA8 |
| Doc. No. 5, Opinion | JA13 |
| Doc. No. 6, Order | JA16 |
| Doc. No. 35, Waiver of Answer | JA17 |
| Doc. No. 37, Response to Waiver of Answer | JA21 |
| Doc. No. 39, Motion for Leave to File a Supplemental Complaint | JA27 |
| Doc. No. 41, Partial Motion to Dismiss | JA37 |
| Doc. No. 55, Motion for Summary Judgment | JA39 |
| Doc. No. 59, Opinion | JA41 |
| Doc. No. 60, Order | JA53 |
| Doc. No. 69, Opinion | JA54 |
| Doc. No. 70, Order | JA72 |
| Doc. No. 71, Notice of Appeal | JA73 |

Query    Reports    Utilities    Help    Log Out

CLOSED,APPEAL,PRIS,PROSE

# U.S. District Court
## Western District of Virginia (Roanoke)
## CIVIL DOCKET FOR CASE #: 7:22-cv-00090-CKM

Jackson v. Dameron et al
Assigned to: Magistrate Judge C. Kailani Memmer
Case in other court:  USCA, 25-06295
Cause: 42:1983 Prisoner Civil Rights

Date Filed: 02/16/2022
Date Terminated: 03/20/2025
Jury Demand: Both
Nature of Suit: 550 Prisoner: Civil Rights
Jurisdiction: Federal Question

### Plaintiff

**Daniel Neil Jackson**
*Green Rock Correctional Center 1704*
*Beverly Heights Rd, Chatham, VA 24531*

represented by **Daniel Neil Jackson**
1182398
VDOC Centralized Mail Dist. Cntr.
3521 Woods Way
State Farm, VA 23160
PRO SE

V.

### Defendant

**D. Dameron**
*RN*

represented by **Grace Morse-McNelis**
Frith Anderson & Peake
3957 Westerre Parkway, Suite 360
Glen Allen, VA 23233
804-362-0078
Fax: 540-772-9167
Email: gmorsemcnelis@faplawfirm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ericka Wineland Kopp**
Byrne Canaan Law
3117 W. Clay Street, Suite 200
Richmond, VA 23230
804-806-4800
Email: ekopp@byrnecanaanlaw.com
*TERMINATED: 01/17/2025*
*ATTORNEY TO BE NOTICED*

### Defendant

**Dr. K. Smith**

represented by **Grace Morse-McNelis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ericka Wineland Kopp**

JA001

(See above for address)
*TERMINATED: 01/17/2025*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Augusta Correctional Center Medical
Dept.**
*TERMINATED: 07/08/2022*

| Date Filed | # | Docket Text |
|---|---|---|
| 02/16/2022 | 1 | COMPLAINT pursuant to 42 U.S.C. 1983 against Augusta Correctional Center Medical Dept., D. Dameron, K. Smith, filed by Daniel Neil Jackson.(tvt) |
| 02/16/2022 | 2 | Prisoner Trust Account Report and Statement of Assets by Daniel Neil Jackson (tvt) |
| 02/16/2022 | 3 | Order entered Conditionally Filing this action pursuant to 42 USC §1983; **Regarding Consent to Fee;** Advising inmate as to 3 strikes rule of PLRA; Assessing a filing fee; Deferring all action in this case; Advising inmate to comply within the allotted time and to notify of changes in address or risk dismissal within 20 days Responses due by 3/11/2022. Signed by Magistrate Judge Joel C. Hoppe on 2/16/2022. (Order mailed to Pro Se Party via US Mail)(tvt) |
| 02/25/2022 | 4 | Consent to Fee by Plaintiff Daniel Neil Jackson (tvt) |
| 07/08/2022 | 5 | MEMORANDUM OPINION. Signed by Chief Judge Michael F. Urbanski on 7/8/2022. (Opinion mailed to Pro Se Party via US Mail)(tvt) |
| 07/08/2022 | 6 | ORDER: the plaintiff's claims against Augusta Correctional Center Medical Dept. are DISMISSED. The case will proceed against the remaining defendants. Signed by Chief Judge Michael F. Urbanski on 7/8/2022. (Order mailed to Pro Se Party via US Mail)(tvt) |
| 07/18/2022 | 7 | Order entered Directing the Clerk to attempt service of process upon the named defendants D. Dameron, K. Smith re 1 Complaint filed by Daniel Neil Jackson. Signed by Magistrate Judge Joel C. Hoppe on 7/18/2022. (Order mailed to Pro Se Party via US Mail)(aab) |
| 07/18/2022 | 8 | Clerks Notice of Service (OAG 1983) sent to D. Dameron, et al on 7/18/2022. Pursuant to the agreement of electronic service. Waiver of Service due by 8/17/2022.(aab) |
| 08/18/2022 | 9 | Notice of Declination of Service .(Vorhis, Richard) |
| 08/19/2022 | 10 | REQUEST FOR WAIVER of Service sent to D. Dameron, et al on 8/19/2022. (Service paperwork mailed to Defendant(s) at Augusta Correctional Center 1821 Estaline Road Augusta, Virginia 24430) Waiver of Service due by 9/19/2022. (Attachments: # 1 Dr. K. Smith)(aab) |
| 09/06/2022 | 11 | MOTION for Preliminary Injunction by Daniel Neil Jackson. (Clerk sending docket sheet) (aab) |
| 09/21/2022 | 12 | Order entered Directing the Clerk to attempt service of process via the U.S. Marshals Service upon the named defendants D. Dameron, K. Smith re 1 Complaint filed by Daniel Neil Jackson. Signed by Magistrate Judge Joel C. Hoppe on 9/21/2022. (Order mailed to Pro Se Party via US Mail)(tvt) |
| 09/21/2022 | 13 | Summons Issued as to D. Dameron, K. Smith. (Attachments: # 1 Dameron 285, # 2 Dr. Smith Summons, # 3 Smith 285)(tvt) |

| 10/04/2022 | 14 | Marshal's Return of service of Complaint/Summons on 9/28/2022 upon Dameron and Smith Executed. D. Dameron served on 9/28/2022, answer due 10/19/2022; K. Smith served on 9/28/2022, answer due 10/19/2022. (Attachments: # 1 K. Smith)(tvt) |
|---|---|---|
| 10/28/2022 | 15 | ORDER denying 11 Motion for Preliminary Injunction. Signed by Chief Judge Michael F. Urbanski on 10/28/2022. (Order mailed to Pro Se Party via US Mail)(aab) |
| 06/23/2023 | 16 | ORDER TO SHOW CAUSE: Jackson shall have thirty (30) days from the date of entry of this order to show cause as to why this case should not be dismissed for failure to prosecute. Failure to respond to this order within thirty (30) days will result in the dismissal of the action without prejudice. Signed by Magistrate Judge Joel C. Hoppe on 6/23/2023. (Order mailed to Pro Se Party via US Mail)(aab) |
| 07/07/2023 | 17 | RESPONSE TO ORDER TO SHOW CAUSE filed by Daniel Neil Jackson. (aab) |
| 08/03/2023 | 18 | ORDER: The court declines to dismiss the case for failure to prosecute. Jackson's request for entry of default is GRANTED. The Clerk is DIRECTED to enter default against the defendants; and Jackson shall file any motion for default judgment within thirty days. Failure to do so will result in dismissal of this action without prejudice. Signed by Chief Judge Michael F. Urbanski on 8/3/2023. (Order mailed to Pro Se Party via US Mail and to both defendants at addresses as directed as well as e-mail address given)(tvt) Clerk corrected typo in this entryModified on 8/17/2023 (tvt). |
| 08/03/2023 | 19 | VACATED ON 11/22/23 PURSUANT TO DOCUMENT 33 Clerk's ENTRY OF DEFAULT as to Smith and Dameron. Clerk correcting docket entry as noted. Sending paper copy of entry of default to plaintiff and both defendants at physical address as well as e-mail address given in Order #18. Updated entry attaching paper copy of default and docket text stating default as to both named defendants Modified on 8/17/2023 (tvt). Modified on 11/22/2023, added vacated language. (aab). |
| 08/15/2023 | 20 | Mail Returned as Undeliverable: *Return to Sender, Need full name or inmate No.* as to D. Dameron. re 18 Order,,. No forwarding address provided. (aab) Updated entry per direction of Court. Clerk re-sending 18 Order to D. Dameron at same address using title Nurse D. Dameron on envelope Modified on 8/17/2023 (tvt). |
| 08/16/2023 | 21 | MOTION for Default Judgment as to D. Dameron, K. Smith by Daniel Neil Jackson. (aab) (Entered: 08/17/2023) |
| 08/17/2023 | | 21 MOTION for Default Judgment as to D. Dameron, K. Smith mailed to D. Dameron and K. Smith at Augusta Correctional Center, 1821 Estaline Valley Road, Craigsville, VA 24430, and VitalCore Health Strategies, 719 SW Van Buren Street, Suite 100, Topeka, Kansas 66603 via U.S. Mail. Motion was also emailed to the defendants at VchsAdmin@VitalCoreHS.com. (aab) |
| 08/23/2023 | 22 | NOTICE of Appearance by Grace Morse-McNelis on behalf of D. Dameron, K. Smith (Morse-McNelis, Grace) |
| 08/23/2023 | 23 | MOTION to Set Aside Default by D. Dameron, K. Smith. (Morse-McNelis, Grace) |
| 08/23/2023 | 24 | Memorandum in Support re 23 MOTION to Set Aside Default by D. Dameron, K. Smith. (Morse-McNelis, Grace) Modified on 8/24/2023 (aab). Docket text was modified to reflect the correct docket entry |
| 08/24/2023 | 25 | Magistrate Consent Notice to Parties. (Notice mailed to Pro Se Party via US Mail)(aab) |
| 08/24/2023 | 26 | CONSENT to Jurisdiction by US Magistrate Judge by D. Dameron, Daniel Neil Jackson, K. Smith. (aab) |
| 09/08/2023 | 27 | Response re 23 MOTION to Set Aside Default filed by Daniel Neil Jackson. (aab) |

| 09/15/2023 | 28 | REPLY to Response to Motion re 23 MOTION to Set Aside Default . filed by D. Dameron, K. Smith. (Morse-McNelis, Grace) |
| 10/17/2023 | 29 | ORDER TRANSFERRING CASE. Case transferred to Honorable C. Kailani Memmer for all further proceedings. Magistrate Judge Joel C. Hoppe and Chief Judge Michael F. Urbanski no longer assigned to case. Signed by Chief Judge Michael F. Urbanski on 10/17/2023. (Order mailed to Pro Se Party via US Mail)(aab) (Entered: 10/18/2023) |
| 10/30/2023 | 30 | MOTION to Appoint Counsel by Daniel Neil Jackson. (aab) |
| 11/22/2023 | 31 | ORDER denying without prejudice 30 Motion to Appoint Counsel. Signed by Honorable C. Kailani Memmer on 11/22/2023. (Order mailed to Pro Se Party via US Mail)(aab) |
| 11/22/2023 | 32 | MEMORANDUM OPINION. Signed by Honorable C. Kailani Memmer on 11/22/2023. (Opinion mailed to Pro Se Party via US Mail)(aab) |
| 11/22/2023 | 33 | ORDER granting 23 Motion to Set Aside Default; vacating 19 Clerk's entry of default; denying 21 Motion for Default Judgment. Signed by Honorable C. Kailani Memmer on 11/22/2023. (Order mailed to Pro Se Party via US Mail)(aab) |
| 12/01/2023 | 34 | MOTION for Leave to File a Supplemental Complaint by Daniel Neil Jackson. (aab) |
| 12/06/2023 | 35 | *WAIVER OF* ANSWER to Complaint with JURY DEMAND by D. Dameron, K. Smith. (Morse-McNelis, Grace) |
| 12/18/2023 | 36 | Additional Evidence by Daniel Neil Jackson (aab) (Entered: 12/19/2023) |
| 01/08/2024 | 37 | Response re 35 Answer to Complaint filed by Daniel Neil Jackson. (aab) |
| 02/07/2024 | 38 | ORDER granting 34 Motion for Leave to File a supplemental complaint; The clerk shall re-docket ECF No. 34 as a supplemental complaint; The defendants are directed to respond to the supplemental complaint within 21 days. Signed by Honorable C. Kailani Memmer on 2/7/2024. (Order mailed to Pro Se Party via US Mail)(aab) |
| 02/07/2024 | 39 | SUPPLEMENTAL COMPLAINT filed by Daniel Neil Jackson (aab) |
| 02/16/2024 | 40 | NOTICE of Appearance by Ericka Wineland Kopp on behalf of D. Dameron, K. Smith (Kopp, Ericka) (Main Document 40 replaced on 2/16/2024) (al). Modified on 2/16/2024 Deficient PDF replaced with flattened PDF (al). |
| 02/19/2024 |  | Ericka W. Kopp, in accordance with Section C.9. of the Administrative Procedures for Filing, Signing and Verifying Pleadings and Papers by Electronic Means, a registered user is responsible for ensuring their mailing address, primary email address, and telephone number are kept up-to-date with this court by updating the information in their PACER account and submitting to this court. Click here for PACER aid to updating your personal information, address information or email noticing. (aab) |
| 02/28/2024 | 41 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *(Partial)* by D. Dameron, K. Smith. (Morse-McNelis, Grace) |
| 02/28/2024 | 42 | Brief / Memorandum in Support re 41 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *(Partial)* . filed by D. Dameron, K. Smith. (Morse-McNelis, Grace) |
| 02/28/2024 | 43 | MOTION for Discovery by D. Dameron, K. Smith. (Morse-McNelis, Grace) |
| 02/28/2024 | 44 | Brief / Memorandum in Support re 43 MOTION for Discovery . filed by D. Dameron, K. Smith. (Morse-McNelis, Grace) |
| 02/28/2024 | 45 | MOTION for Extension of Time to File *Response* by D. Dameron, K. Smith. (Morse-McNelis, Grace) |

| | | |
|---|---|---|
| 02/29/2024 | 46 | Roseboro Notice re 41 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *(Partial)*. Deadline set for March 25, 2024. (Notice mailed to Pro Se Party via US Mail) (sln) Modified docket text, clerk mailed on 2/29/2024 (sln). |
| 03/07/2024 | 47 | NOTICE of Change of Address by Daniel Neil Jackson: Lawrenceville Correctional Center 1607 Planter's Road Lawrenceville, Virginia 23868. (aab) |
| 04/09/2024 | 48 | ORDER granting 43 Motion for Discovery; granting 45 Motion for Extension of Time. Defendants shall file a response to Jackson's claims of inadequate medical care within 30 days of receipt of the requested medical records. Signed by Honorable C. Kailani Memmer on 4/9/2024. (Order mailed to Pro Se Party/Parties via US Mail)(aab) |
| 04/15/2024 | 49 | MOTION for Extension of Time to File Response/Reply as to 41 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *(Partial)* by Daniel Neil Jackson. (aab) |
| 04/15/2024 | 50 | RESPONSE to Motion re 41 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *(Partial)* filed by Daniel Neil Jackson. (aab) |
| 04/22/2024 | 51 | REPLY to Response to Motion re 41 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *(Partial)* . filed by D. Dameron, K. Smith. (Morse-McNelis, Grace) |
| 05/10/2024 | 52 | MINUTE ORDER: It is hereby ORDERED that the plaintiff's motion for extension of time to file a response to the defendants' partial motion to dismiss (ECF No. 49 ) is GRANTED. The plaintiff's response to the defendants' motion (ECF No. 50 ) is deemed timely filed. Entered by Honorable C. Kailani Memmer on 5/10/2024. *This Notice of Electronic Filing is the Official ORDER for this entry. No document is attached.* (Order mailed to Pro Se Party/Parties via US Mail)(aab) |
| 06/07/2024 | 53 | MOTION for Extension of Time to File Response/Reply by D. Dameron, K. Smith *Regarding Records and Motion for Enlargment* (Morse-McNelis, Grace) Modified on 6/10/2024, Docket text was modified to reflect the correct docket entry (aab). |
| 06/10/2024 | 54 | MINUTE ORDER: It is hereby ORDERED that the defendants' motion for enlargement of time to file a dispositive motion (ECF No. 53 ) is GRANTED. The deadline set forth in the court's previous order (ECF No. 48 ) is extended by a period of 10 days. Signed by Honorable C. Kailani Memmer on 6/10/2024. (Order mailed to Pro Se Party/Parties via US Mail)(aab) |
| 06/17/2024 | 55 | MOTION for Summary Judgment by D. Dameron, K. Smith. (Morse-McNelis, Grace) |
| 06/17/2024 | 56 | Brief / Memorandum in Support re 55 MOTION for Summary Judgment . filed by D. Dameron, K. Smith. (Attachments: # 1 Exhibit Ex. A - Declaration Dr. Smith, # 2 Exhibit Ex. B -Declaration Nurse Dameron, # 3 Exhibit Ex. C - Medical Records)(Morse-McNelis, Grace) |
| 06/20/2024 | 57 | Roseboro Notice re 55 MOTION for Summary Judgment . (Notice mailed to Pro Se Party/Parties via US Mail)(mcs) |
| 07/18/2024 | 58 | MOTION for Relief under Rule 56(d) filed by Daniel Neil Jackson. (aab) Modified on 9/9/2024 per court order (ECF No. 61 ) construing response as a Motion for Relief. (aab). |
| 09/09/2024 | 59 | MEMORANDUM OPINION. Signed by Magistrate Judge C. Kailani Memmer on 9/9/2024. (Opinion mailed to Pro Se Party/Parties via US Mail)(aab) |
| 09/09/2024 | 60 | ORDER granting in part and denying in part 41 Motion to Dismiss for Failure to State a Claim. The retaliation claims asserted against Nurse D. Dameron are DISMISSED for failure to state a claim upon which relief can be granted. Signed by Magistrate Judge C. Kailani Memmer on 9/9/2024. (Order mailed to Pro Se Party/Parties via US Mail)(aab) |

| | | |
|---|---|---|
| 09/09/2024 | 61 | ORDER granting 58 MOTION for Relief under Rule 56(d). Within 15 days of the date of entry of this Order, the defendants shall provide Jackson with a complete copy of the medical records obtained from the VDOC. Jackson shall file any supplemental response to the defendants' motion for summary judgment, including any additional medical records that he wishes to add to the summary judgment record, within 45 days of the date of entry of this Order. Signed by Magistrate Judge C. Kailani Memmer on 9/9/2024. (Order mailed to Pro Se Party/Parties via US Mail)(aab) |
| 10/03/2024 | 62 | NOTICE of Change of Address by Daniel Neil Jackson: 1704 Beverly Heights Rd, Chatham, VA 24531 (aab) |
| 10/03/2024 | 63 | Response re 61 ORDER granting 58 MOTION for Relief under Rule 56(d). Within 15 days of the date of entry of this Order, the defendants shall provide Jackson with a complete copy of the medical records obtained from the VDOC, filed by Daniel Neil Jackson. (aab) |
| 10/03/2024 | 64 | MOTION for Extension of Time to File *medical records* by D. Dameron, K. Smith. (Morse-McNelis, Grace) |
| 11/01/2024 | 65 | RESPONSE in Opposition re 64 MOTION for Extension of Time to File *medical records*, 55 MOTION for Summary Judgment . filed by Daniel Neil Jackson. (Attachments: # 1 Attachment: Grievance)(mlp) |
| 11/15/2024 | 66 | ORDER granting 64 Motion for Extension of Time; Jackson shall file any additional evidence or argument in response to the defendants' motion for summary judgment within 21 days of the date of entry of this order. The additional evidence shall include any portions of the medical records sent to Jackson by the defendants that Jackson wants the court to consider when ruling on the motion for summary judgment. Signed by Magistrate Judge C. Kailani Memmer on 11/15/2024. (Order mailed to Pro Se Party/Parties via US Mail)(tvt) |
| 11/18/2024 | 67 | MOTION to Withdraw as Attorney by D. Dameron, K. Smith. (Kopp, Ericka) |
| 01/17/2025 | 68 | MINUTE ORDER: It is hereby ORDERED that Ericka W. Kopp's motion to withdraw as counsel, ECF No. 67 , is GRANTED. Ms. Kopp shall be terminated as counsel of record for the defendants. Entered by Magistrate Judge C. Kailani Memmer on 1/17/2025. *This Notice of Electronic Filing is the Official ORDER for this entry. No document is attached.* (Order mailed to Pro Se Party/Parties via US Mail)(aab) |
| 03/20/2025 | 69 | MEMORANDUM OPINION. Signed by Magistrate Judge C. Kailani Memmer on 3/20/2025. (Opinion mailed to Pro Se Party/Parties via US Mail)(jv) |
| 03/20/2025 | 70 | ORDER granting 55 Motion for Summary Judgment. Signed by Magistrate Judge C. Kailani Memmer on 3/20/2025. (Order mailed to Pro Se Party/Parties via US Mail)(jv) |
| 04/10/2025 | 71 | NOTICE OF APPEAL as to 69 Memorandum Opinion, 70 Order on Motion for Summary Judgment by Daniel Neil Jackson. (aab) |
| 04/10/2025 | 72 | Transmittal of Notice of Appeal to 4CCA re 71 Notice of Appeal NOTE: The Docketing Statement and Transcript Order Form are available on the 4th Circuit Court of Appeals website at www.ca4.uscourts.gov. If CJA24 form(s) are applicable, you must submit a separate Auth-24 for each court reporter from whom you wish to order a transcript through the District Court's eVoucher system. (aab) |
| 04/11/2025 | 73 | USCA Notice of Appellate Case Opening re 71 Notice of Appeal filed by Daniel Neil Jackson. **USCA Case Number 25-6295**. Case Manager: Richard H. Sewell. (aab) |
| 04/11/2025 | 74 | Fourth Circuit Record Request, **No. 25-6295**, re 71 Notice of Appeal filed by Daniel Neil Jackson. (aab) |

| 04/11/2025 | Assembled Electronic Record Transmitted to 4CCA re [74] Fourth Circuit Record Request, [71] Notice of Appeal (aab) |
| 05/09/2025 | USCA Appeal Fees received $605 receipt number 300004029 re [71] Notice of Appeal filed by Daniel Neil Jackson. (skm) |

| **PACER Service Center** | | |
|---|---|---|
| **Transaction Receipt** | | |
| 07/11/2025 20:33:39 | | |
| **PACER Login:** | rightsbehindbars | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 7:22-cv-00090-CKM |
| **Billable Pages:** | 6 | **Cost:** | 0.60 |

CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 16 2022

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK

<table>
<tr><td colspan="2">For Clerk's Office Use</td></tr>
<tr><td>Judge</td><td>Rec'd</td></tr>
<tr><td></td><td></td></tr>
</table>

IN THE UNITED STATES DISTRICT
COURT FOR THE WESTERN DISTRICT
OF VIRGINIA

For use by inmates filing a complaint under **CIVIL RIGHTS ACT, 42 U.S.C. §1983**

Daniel Neil Jackson
**Plaintiff full name**

1182395
**Inmate No.**

**v.**

CIVIL ACTION NO. 7:22·CV·00090

D. Dameron, RN.; Dr. K. Smith; Augusta Correctional Center
**Defendant(s) full name(s)**

Medical Dept.

*********************************************************************************************************

A. Current facility and address: Augusta Correctional Center

1821 Estaline Valley Rd., Craigsville, VA 24430

B. Where did this action take place? Augusta Correctional Center

C. Have you begun an action in state or federal court dealing with the same
facts involved in this complaint?

_____ Yes     ✓ No

If your answer to A is Yes, answer the following:

1. Court: _____

2. Case Number: _____

D. Have you filed any grievances regarding the facts of this complaint?

✓ Yes     _____ No

1. If your answer is Yes, indicate the result:

Unfounded

2. If your answer is No, indicate why:

E, Statement of Claim(s)

Claim #1 - In 2019 I was suffering from pain in my right leg (knee, hip and achilles) and numbness in my heel. After several visits to outside specialists I was diagnosed as having nerve damage in my right leg. I was prescribed medications for pain, given an ankle sleeve for support, assigned bottom bunk status, and scheduled for further specialist care.

Upon arrival at Augusta Correctional Center in January of 2020 my ankle sleeve was confiscated and not returned, without any justification. Dr. K. Smith refused to even follow-up on this matter. Furthermore, I was put into a pod that was up two flights of stairs, requiring me to walk up and down the stairs numerous times each day to get my medications and food. These actions caused increased pain in my damaged leg, and Dr. Smith failed to address my complaints.

Claim #2 - In March of 2020 I was hired to work in the Apparel Shop. One requirement is that employees wear boots or have a medical exemption. As the wearing of boots caused me extreme pain and discomfort I requested for Dr. Smith to issue a medical exemption. According to him, there was 'no such thing' and 'if there is, he would not issue one.' He had no medical reason for this, except that he just didn't want to.

Because of the pain and discomfort experienced by the wearing of the hard-soled boots, I was forced to resign from the Apparel Shop. I was out of work from June 2020 until January 2022 when I was given a houseman job - losing seven months of pay. (Approximately $60.00 per month). MCV later prescribed soft, supportive insoles as treatment.

Claim #3 - A final visit to MCV in July 2021 determined that surgery was not necessary at this time (it was not an emergency). It was ordered that I continue on pain medications & receive physical therapy. Dr. Smith has never given me any physical therapy, nor has he issued any prescribed physical therapy. He has not in any way followed up with me regarding my ongoing medical issue — even though I have sent a number of requests.

In Oct. 2021 my prescribed pain meds were discontinued. According to Nurse V. Hallse, I did not get enough of my Cymbalta to continue — even though I explained that having to walk up and down a staircase multiple times a day acerbated the injury and often it was more detrimental for me to pick up the days dosage.

Furthermore, my Ibruprofen — which often helped moreso than the Cymbalta, and which I did pick up regularly — was discontinued. According to RN D. Dameron, Ibruprofen is available for purchase on Commissary and the Medical Dept. is not responsible for providing treatment of my pain. After Multiple requests to see the Doctor about renewing, each of which was denied by Dameron, I explained I could not afford to regularly purchase the dosage I was taking daily. Nurse Dameron stated "Just buy some Suboxone off the yard like everyone else does."

The pain has caused me to suffer from lack of sleep for past 3 months, and mental and physical anguish.

E. Statement of Claim(s): State briefly the facts in this complaint. Describe what
   action(s) each defendant took in violation of your federal rights and include the
   relevant dates and places. **Do not give any legal arguments or cite any cases
   or statutes.** If necessary, you may attach additional page(s). Please write
   legibly.

Claim #1 – Supporting Facts – Briefly tell your story without citing cases or law:

Suffering pain in right leg and loss of feeling in right foot.
MCV determined not to operate at this time — prescribed that I continue
on pain meds and begin physical therapy. Dr. Smith neglected to follow-up
with forced, and has since denied any treatment.

Claim #2 – Supporting Facts – Briefly tell your story without citing cases or law:

See Attached

Dr. Smith never carried out any physical therapy. The Ibruprofen
(which was helping to alleviate pain) prescribed was discontinued in
Oct. 2021. Nurse Dameron refused to schedule an appointment for renewal
stating "If ibeuprofen is available on Commissary" when I told her I could
not afford it she told me "Just suck some off the ground like everyone else does."
The pain has caused lack of sleep and extreme anguish.

F. State what relief you seek from the Court. Make no legal arguments and cite no
   cases or statutes.
   Compensation for 7 months of lost pay (Approx. $420.00)
   To be treated for the pain and be compensated for the loss of sleep
   and physical, mental, and emotional anguish suffered over past 3 months.

G. If this case goes to trial do you request a trial by jury?    Yes _X_    No ____

H. If I am released or transferred, I understand it is my responsibility to immediately
   notify the court in writing of any change of address after I have been released or
   transferred or my case may be dismissed.

DATED: 1-31-22              SIGNATURE: _____

VERIFICATION:
I, __Daniel Neil Jackson__, state that I am the plaintiff in this action and I
know the content of the above complaint; that it is true of my own knowledge, except as to those
matters that are stated to be based on information and belief, and as to those matters, I believe
them to be true. I further state that I believe the factual assertions are sufficient to support a
claim of violation of constitutional rights. Further, I verify that I am aware of the provisions set
forth in 28 U.S.C. §1915 that prohibit an inmate from filing a civil action or appeal, if the prisoner
has, on three or more occasions, while incarcerated brought an action or appeal in federal court
that is dismissed on the grounds that it was frivolous, malicious, or failed to state a claim upon
which relief may be granted, unless the prisoner is imminent danger of serious physical injury. I
understand that if this complaint is dismissed on any of the above grounds, I may be prohibited
from filing any future actions without the pre-payment of the filing fees. I declare under penalty of
perjury the foregoing to be true and correct.

DATED: 1-31-22              SIGNATURE: _____

Daniel Jackson #1182398
ACC
1821 Estaline Valley Rd
Craigsville, VA 24430



Clerk, United States District Court

210 Franklin Road, SW, Suite 540

Roanoke, VA 24011-2208

JA012

24011$0003 C003

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| DANIEL NEIL JACKSON, | ) | |
| Plaintiff, | ) | Civil Action No. 7:22-cv-00090 |
| | ) | |
| v. | ) | |
| | ) | By: Michael F. Urbanski |
| D. DAMERON, <u>et al.</u>, | ) | Chief United States District Judge |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Daniel Neil Jackson, a Virginia inmate proceeding <u>pro se</u>, filed this civil rights action under 42 U.S.C. § 1983, alleging that Nurse D. Dameron and Dr. K. Smith acted with deliberate indifference to his serious medical needs in violation of the Eighth Amendment. In addition to Nurse Dameron and Dr. Smith, Jackson's complaint names the Augusta Correctional Center Medical Department ("Medical Department") as a defendant. Because the Medical Department is not a proper defendant in a § 1983 action, the court will dismiss the claims against it pursuant to 28 U.S.C. § 1915A(b)(1).

## I.

The court is required to review a complaint in a civil action in which an inmate seeks redress from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). On review, the court must "dismiss the complaint, or any portion of the complaint, if the complaint . . . fails to state a claim upon which relief may be granted." <u>Id.</u> § 1915A(b)(1). To survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

## II.

Section 1983 imposes liability on any "person" who, under color of state law, deprives another person "of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. "To state a claim under § 1983[,] a plaintiff 'must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.'" Loftus v. Bobzien, 848 F.3d 278, 284–85 (4th Cir. 2017) (quoting Crosby v. City of Gastonia, 635 F.3d 634, 639 (4th Cir. 2011)).

It is well settled that a state prison is not a "person" subject to suit under § 1983. See Va. Office for Prot. & Advocacy v. Reinhard, 405 F.3d 185, 189 (4th Cir. 2005) (agreeing that a state agency "is not a 'person' within the meaning of [§ 1983]"); McCoy v. Chesapeake Corr. Ctr., 788 F. Supp. 890, 893 (E.D. Va. 1992) (holding that correctional facilities in Virginia are properly considered "arms of the state" and "therefore not persons under § 1983"). Likewise, "[t]he medical department of a prison may not be sued, because it is not a person within the meaning of § 1983." Harden v. Green, 27 F. App'x 173, 178 (4th Cir. 2001). Accordingly, the Medical Department is not a proper defendant in this action.

## III.

For the reasons stated, the court concludes that Jackson's complaint fails to state a claim against the Medical Department. Therefore, the court will dismiss the claims against this defendant pursuant to 28 U.S.C. § 1915A(b)(1). An appropriate order will be entered.

2

Entered: July 8, 2022

Digitally signed by Michael
F. Urbanski        Chief U.S.
District Judge
Date: 2022.07.08 15:20:27
-04'00'

Michael F. Urbanski
Chief United States District Judge

3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| **DANIEL NEIL JACKSON,** | ) | |
| **Plaintiff,** | ) | Civil Action No. 7:22-cv-00090 |
| | ) | |
| **v.** | ) | |
| | ) | **By: Michael F. Urbanski** |
| **D. DAMERON, et al.,** | ) | **Chief United States District Judge** |
| **Defendants.** | ) | |

### ORDER

For the reasons set forth in the accompanying memorandum opinion, the plaintiff's claims against the Augusta Correctional Center Medical Department are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1), and this defendant shall be terminated as a party to this action. The case will proceed against the remaining individual defendants.

The Clerk is directed to send a copy of this order and the accompanying memorandum opinion to the plaintiff.

It is so **ORDERED**.

Entered: July 8, 2022

Digitally signed by Michael F.
Urbanski      Chief U.S. District
Judge
Date: 2022.07.08 15:20:46 -04'00'

Michael F. Urbanski
Chief United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

**DANIEL NEIL JACKSON,**

       **Plaintiff,**

**v.**

                                          **Case No.: 7:22-cv-00090**

**D. DAMERON, et al.**

       **Defendants.**


## <u>WAIVER OF ANSWER</u>

COME NOW, Kyle Smith, MD (identified in the Complaint as "Dr. K. Smith") and Derinda Dameron, RN (identified in the Complaint as "D. Dameron, RN"), by counsel, and hereby give notice to this Court and to Plaintiff that they have elected not to file an Answer to Plaintiff's Complaint (Doc. 1) and instead give notice of this Waiver, which, pursuant to 42 U.S.C. § 1997e(g)(1), shall not be construed as an admission as to the putative truth of the allegations contained in Plaintiff's Complaint. Kyle Smith, MD ("Dr. Smith") and Derinda Dameron, RN ("Nurse Dameron") additionally assert the following affirmative defenses in response to Plaintiff's Complaint as to the claims and allegations asserted against them.

<u>FIRST AFFIRMATIVE DEFENSE</u>

Plaintiff's Complaint fails to state a claim upon which relief can be granted.

<u>SECOND AFFIRMATIVE DEFENSE</u>

Plaintiff has not been denied any rights protected by the United States Constitution, any provision of the United States Code, or any provision of the Virginia Code Annotated.

THIRD AFFIRMATIVE DEFENSE

Dr. Smith and Nurse Dameron deny that Plaintiff has suffered any cognizable injuries or damages as a result of any acts or omissions on their part and they demand strict proof thereof.

FOURTH AFFIRMATIVE DEFENSE

Dr. Smith and Nurse Dameron aver that any injury, damage, or loss alleged by Plaintiff was the result of pre-existing or subsequently existing medical conditions or incidents that occurred prior to or subsequent to any act or conduct of either of these Defendants.

FIFTH AFFIRMATIVE DEFENSE

Dr. Smith and Nurse Dameron aver that Plaintiff failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e and other applicable law.

SIXTH AFFIRMATIVE DEFENSE

Dr. Smith and Nurse Dameron avers that at all times relevant in their interactions with Plaintiff, they exercised the same degree of care, skill and diligence that other health care providers in each of their respective fields of practice would have exercised under similar circumstances, and that at no time did they act towards Plaintiff with deliberate indifference to a serious medical need.

SEVENTH AFFIRMATIVE DEFENSE

The Prison Litigation Reform Act amendment to 42 U.S.C. § 1997e(c) mandates the dismissal of Plaintiff's claims against Dr. Smith and Nurse Dameron as this action in regard to them is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks money damages from them.  These Defendants are entitled to immunity from such damages.

## EIGHTH AFFIRMATIVE DEFENSE

Any claims sounding in negligence asserted against Dr. Smith and Nurse Dameron are not actionable since they acted in good faith and with due care in regard to the prevailing professional standard of care in their care and treatment/interactions with Plaintiff.

## NINTH AFFIRMATIVE DEFENSE

Dr. Smith cannot be held liable on the theories of *respondeat superior*, agency, and/or vicarious liability.

## TENTH AFFIRMATIVE DEFENSE

To the extent Plaintiff attempts to assert a state-law medical negligence/malpractice claim against these Defendants, Plaintiff has failed to comply with the statutory requirements prior to serving seeking service on Dr. Smith and Nurse Dameron.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff has failed to set out the requisite elements necessary for a claims of injunctive relief against Dr. Smith and Nurse Dameron, and any therefore, any such claims against them must be dismissed.

## TWELFTH AFFIRMATIVE DEFENSE

Dr. Smith and Nurse Dameron are entitled to qualified immunity.

## THIRTEENTH AFFIRMATIVE DEFENSE

Dr. Smith and Nurse Dameron reserve the right to amend her affirmative defenses and to add new affirmative defenses in the event future discovery reveals the existence of or need for such.

<u>JURY TRIAL DEMANDED</u>

Dr. Smith and Nurse Dameron demand a trial by jury.

Respectfully submitted,

**KYLE SMITH, MD and
DERINDA DAMERON, RN**

_____/s/   Grace Morse McNelis_
Grace Morse-McNelis, Esq., VSB No. 75957
Frith Anderson + Peake
4198 Cox Road, Suite 102
Glen Allen, VA 23060
Phone – (804) 362-0078
Fax – (540) 772-9167
gmorsemcnelis@faplawfirm.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 6TH day of December, 2023, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF system and I further certify that I will mail the

document by U.S. mail to the following non-filing user:

Daniel Neil Jackson, 1182398
VADOC Centralized Mail Distribution Center
3521 Woods Way
State Farm, Virginia 23160
Plaintiff, _pro-se_

_____/s/   Grace Morse McNelis_
Grace Morse-McNelis, Esq., VSB No. 75957
Frith Anderson + Peake
4198 Cox Road, Suite 102
Glen Allen, VA 23060
Phone – (804) 362-0078
Fax – (540) 772-9167
gmorsemcnelis@faplawfirm.com

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF VIRGINIA

ROANOKE DIVISION

1.

CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

January 08, 2024

LAURA A. AUSTIN, CLERK
BY:
           s/A. Beeson
     DEPUTY CLERK

DANIEL NEIL JACKSON

  Plaintiff,

v.        Case No. 7:22-cv-00090

D. DAMERON, et. al.

  Defendants

PLAINTIFF'S RESPONSE TO WAIVER OF ANSWER

 As I am proceeding Pro Se, and do not know if a response to the Defendant's Waiver of Answer is warranted or necessary, I will err on the side of caution and provide one. At the very least, it may help to clarify some matters and expedite the process of moving forward.

1) The claims outlined in the initial filing, and clarified in the amended complaint, clearly fall under the Eighth Amendment, and meet the standards for serious medical need and Deliberate indifference on the part of the Defendants.

2) These claims, as noted above, outline violations of the Eighth Amendment rights protected by the U.S. Constitution.

3) Resulting damages suffered include severe mental health trauma resulting from ongoing pain and lack of sleep, further physical damage to the injured leg,

2

the development of an addiction to Suboxone, and institutional charges resulting from retaliatory measures— all of which can be proven and substantiated by documentation and examination of the Plaintiff's history prior to his dealings with the defendants.

4) While the injury to the Plaintiff's leg existed prior to the conduct of the Defendants, their actions resulted in additional damages and losses that had not and would not have existed if the Defendants had not shown such wanton disregard — deliberate indifference— for the Plaintiff's condition. Of significance, prior to the conduct of the Defendants, the Plaintiff had no overwhelming financial strain and consistently held employment, his chronic pain was being treated and cared for, The Plaintiff did not have an addiction to Suboxone, his mental health and sleep patterns were much more stable, his institutional record of conduct — while not spotless— was not as severely disruptive (resulting from mental and emotional traumas suffered over the past several years, the developed substance abuse problem, and the retaliatory measures exacted against the Plaintiff), and finally, the injury to his leg was not as severe or as advanced.

5) The Plaintiff has documentation showing that he pursued and exhausted the grievance procedures available to him prior to filing

3

the 1983 complaint.

6) Other health care providers would not have ignored a patients concerns, requests, and prospering treatments. Furthermore, other health care providers would not have outright refused to treat a patient's pain, or suggested that a patient should pursue "illegal drugs" to treat his pain.

Additionally, other health care providers had previously prescribed treatments, which the defendants chose to ignore or dismiss, even those treatments that were proving beneficial to the Plaintiff's needs.

7) The defendants do not fall under the protections of qualified immunity. They acted in their individual capacity and personally violated rights. Furthermore, their actions were clear violations, and on one occassion the plaintiff actually stated to Dr. Smith, "You are refusing to treat me. This is a violation of my rights." To which he made no response, but to stare at the Plaintiff blankly.

8) Redundant - see above.

9) Dr. Smith does not qualify for immunity in his individual capacity.

10) The Plaintiff is proceeding Pro Se and is not individually accountable for service of the complaint.

11) Amended complaint addresses all claims of injunctive relief.

4

12) Redundant — see #7

13) —

JURY TRIAL DEMAND) Both parties have consented to a Magistrate

THEREFORE, there is no justifiable reason to dismiss

the Plaintiff's claims and I set forth a

MOTION TO ORDER THE DEFENDANTS TO REPLY.


Respectfully Submitted,


DANIEL NEIL JACKSON
# 1182398


12-30-23

Daniel Jackson ACC #1623786

THE DEPARTMENT OF CORRECTIONS HAS
NEITHER CENSORED NOR INSPECTED THIS
ITEM AND ASSUMES NO RESPONSIBILITY
FOR ITS CONTENT

UNITED STATES DISTRICT COURT
Office of the Clerk
210 Franklin Rd., Rm 540
Roanoke, VA 24011



US POSTAGE AND FEES PAID LEGAL
ZIP 24430
02 4W
0000375357 JAN 03 2024
$ 000.63°



US POSTAGE

PITNEY BOWES

$ 000.00⁰

ZIP 24430
02 4W
0000375357 JAN 03 2024

THE DEPARTMENT OF CORRECTIONS HAS
NEITHER CENSORED NOR INSPECTED THIS
ITEM AND ASSUMES NO RESPONSIBILITY
FOR ITS CONTENT

RECEIVED
JAN 03 2024
USDC Clerk's Office
Mail Room
OUTGOING LEGAL MAIL

RECEIVED
JAN 08 2023

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF VIRGINIA

ROANOKE DIVISION

CLERK'S OFFICE U.S. DISTRICT COURT
AT ROANOKE, VA
FILED

DEC 0 1 2023

LAURA A. AUSTIN, CLERK
BY: D. Beeson
DEPUTY CLERK

DANIEL NEIL JACKSON

    Plaintiff,

v.

D. DAMERON, et. al.

    Defendants

Case No. : 7:22-cv-00090

---

MOTION FOR LEAVE TO FILE A SUPPLEMENTAL COMPLAINT

Plaintiff Daniel Neil Jackson, pursuant to Rules 15(d), Fed. R. Civ. P., requests leave to file a Supplemental Complaint, clarifying some of the initial claims and expanding upon those claims to take into account further violations.

## I. FACTS

1. In February of 2021 the Plaintiff was transferred from River North Correctional Center to Augusta Correctional Center. At the time of the Plaintiff's transfer, he was being treated for a number of injuries to his right leg, which were resulting in pain and nerve damage. As part of this treatment the Plaintiff was prescribed a support sleeve for his ankle, medications for the treatment of pain, a medically assigned bottom bunk, and scheduled visits with a Neurologist.

Upon arrival at Augusta, the prescribed ankle support was confiscated by property pending reissue by medical. On three separate occassions the Plaintiff met with Dr. Smith and requested to be reissued the support sleeve. On each occassion Dr. Smith told the Plaintiff that he would 'look into' getting the support sleeve reissued, indicating that he understood the reason it had been prescribed and its necessity, but never reissued the item.

Not having the support limited the Plaintiff's mobility and restricted his ability to engage in physical exercises, which resulted in further deterioration to the muscles in the leg, and by proxy, the health of the leg.

2. In May of 2021 the Plaintiff was employed by the Apparel Plant at Augusta. Employee dress code required the Plaintiff to wear state boots during work hours, unless issued medical clearance to wear tennis shoes — known as a 'Tennis Shoe Pass.' The hard-soled state boots increased the pain and loss of feeling in the injured leg, which increased throughout the day and severely hampered the Plaintiff's ability to work. Therefore, the Plaintiff requested to be issued a 'Tennis Shoe Pass'.

Dr. Smith refused to even consider the request, and told the Plaintiff that he would either have to suffer the pain and discomfort – and possibly risk further damage – or quit. Dr. Smith also stated that he did not care if others had 'Tennis Shoe Passes', I would not get one from him.

Because of the pain and the fact that the boots were resulting in further damage, the Plaintiff was forced to resign for Medical reasons.

In June of 2021 the Neurologist prescribed the wearing of soft-soled shoes, along with insoles for further support and cushioning, substantiating the Plaintiff's initial request for a 'Tennis Shoe Pass'. The Plaintiff was not given another job for a period of six months due to the resignation, though he applied for multiple positions.

3. In June of 2021 the Plaintiff attended an appointment with the Neurologist at MCV. Though diagnosing ~~a bone~~ a bone spur in the heel (causing partial tearing to the Achilles), a cyst in the knee (from ACL/MCL damage), muscle atrophy, and Nerve Damage, the Neurologist indicated there was no <u>immediate</u> need for surgery, but that the plaintiff should continue being treated for pain and begin

JA029

Physical Therapy to prevent further decline. Upon returning to Augusta, Dr. Smith met with the Plaintiff confirming he was aware of the prescribed treatments. In the months (and now years) to follow, the Plaintiff was never given any physical therapy. The Plaintiff sent Dr. Smith and Head Nurse D. Dameron multiple requests regarding the physical therapy, but never received any response.

4. In October of 2021 the Plaintiff requested renewal of his expired medications for treatment of pain. He was informed of the fact that his medications would not be renewed and if he needed treatment for pain he could 'buy over-the-counter meds from commissary'. The Plaintiff sent multiple requests to medical regarding his ongoing pain and was given similar responses or was ignored.

On one occassion, after explaining to Head Nurse Dameron that he could not afford to purchase OTC meds from commissary every week, and was limited to far less than what he had been taking to treat pain by purchase limits with commissary. Nurse Dameron told the Plaintiff to 'just do what everyone else does and go buy suboxone off the yard,' indicating the

JA030

Plaintiff should pursue illegal means for the treatment of pain.

5. From the date of his removal from prescribed medications (                ), until August of 2023 the Plaintiff was forced to suffer almost constant pain and discomfort. This resited in further damage to the injured leg (due to diminished capacity for mobility), loss of sleep, diminished mental health (stress, depression, and anxiety), and unnecessary financial burdens in the Plaintiffs attempts to 'self-medicate'

Upon information and belief, further attempts by the Plaintiff were outright ignored due to the Plaintiffs pursuit of the 1983 Complaint.

In August of 2023 the medical department at Augusta began a contract with a new provider and had another doctor coming in to treat inmates. At that time, the Plaintiff was immediately reissued his ankle support sleeve, new insoles, and medication for the treatment of pain. This was based off of previous records, and the provider indicated at the time that the Plaintiff should have been receiving the treatments all along.

7. On October 11, 2023 a note was placed in my medical record stating that a medical

bottom bunk status was not indicated, though
I had documentation showing it had been
renewed for a period of 365 days on June
6, 2023. This change had occurred without
any examination or evaluation of the Plaintiff.

The Plaintiff then sent in a request regarding
this and On 11-14-23 met with Dr. Gamez. The
Doctor stated that he had no recollection of
ordering the status to be removed from the
Plaintiff and that based on the injuries
to the Plaintiff's leg he should be on medical
bottom bunk status. He indicated that removals
of such status had been done at the urging
of Nurse Dameron, but that I did require bottom
bunk and should not have been removed. Upon
information and belief the Defendant, D.
Dameron, removed me from my bottom bunk
status of her own accord as retaliation for
the 1983 Civil Suit.

8. On 10-12-23 the Defendant's, D. Dameron's,
husband Lt. Lokey (Institutional Investigator)
ordered a Urinalysis be conducted on the
Plaintiff. This occurred, even though the
Plaintiff has no history of opioid usage
and was not displaying any signs of usage.
The only connection the Plaintiff had to

JA032

Opioids was Nurse Dameron's statement that the Plaintiff should use them to treat pain, which is a significant claim in the 1983 Civil Suit.

Lt. Lokey indicated that the Plaintiff was positive for the substance his wife had 'prescribed' to him, and then proceeded to make claims that the Plaintiff had admitted to regular usage and fabricated the answers to a questionaire he claims to have given to the Plaintiff.

Though Lt. Lokey had no documentation proving the legitimacy of his statements, procedures were not properly followed for the urinalysis investigation, due process was violated, and Lokey did not have any statement signed by the Plaintiff, The Plaintiff was nonetheless found guilty. This resulted in a $25.00 fine, loss of visits for two years, and loss of phone for two years.

## III. LEGAL CLAIMS

9. Plaintiff realleges and incorporates by reference paragraphs 1-7 indicating a deliberate indifference to medical needs by Dr. K. Smith and RN Derinda Dameron (nee Lokey), which violated the Plaintiff's, Daniel Neil Jackson's rights and constituted cruel and

unusual punishment under the Eighth Amendment to the United States Constitution.

10. Plaintiff realleges and incorporates by reference paragraphs 7 and 8 indicating a Campaign of Retaliation initiated by the Defendant Derinda Dameron, the actions of which would be enough to make many people drop their claims.

## IV. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this court enter judgement granting Plaintiff:

11. Compensatory Damages in the amount of $1,840.00 for expenses on pain relievers against each defendant.

12. Compensatory Damages in the amount of $500.00 for wages lost as a result of Plaintiff's medical resignation, and subsequent time spent without a job, against Dr. K. Smith.

13. Punitive Damages for pain and suffering — both physical and emotional — in the amount of $65,000.00 (approx. $100.00 per day for each day of suffering) jointly against the Defendants.

14. Plaintiff's costs in this suit.

15. Any additional relief the court deems just, proper, and equitable

Respectfully Submitted,
11 - 24 - 23

Daniel Neil Jackson
Plaintiff
Augusta Correctional Center

Daniel Jackson #1182398
Augusta Corr. Center



United States District Court
  Office of the Clerk
210 Franklin Rd., RM 540
Roanoke, VA  24011

2401182208 C001

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

**DANIEL NEIL JACKSON,**

       **Plaintiff,**

**v.**

                                         **Case No.: 7:22-cv-00090**

**D. DAMERON, et al.**

       **Defendants.**

## KYLE SMITH, MD AND DERINDA DAMERON, RN'S (PARTIAL) MOTION TO DISMISS

COME NOW, Kyle Smith, MD (identified in the Complaint as "Dr. K. Smith") and Derinda Dameron, RN (identified in the Complaint as "D. Dameron, RN"), by counsel, and pursuant to Rule 12(b)(6), Rule 15(a) and (d), and Rule 20 of the Federal Rules of Civil Procedure as well as Local Rule 11(c) hereby file this Partial Motion to Dismiss the Plaintiff's Supplemental Complaint. A Memorandum in Support accompanies this Motion as required by the Local Rules.

Respectfully submitted,

**KYLE SMITH, MD and**
**DERINDA DAMERON, RN**

          /s/  *Grace Morse McNelis*
Grace Morse-McNelis, Esq., VSB No. 75957
Ericka W. Kopp, Esq. VSB No. 98265
Frith Anderson + Peake
4198 Cox Road, Suite 102
Glen Allen, VA 23060
Phone – (804) 362-0078
Fax – (540) 772-9167
gmorsemcnelis@faplawfirm.com
ekopp@faplawfirm.com

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 28th day of February, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and I further certify that I will mail the document by U.S. mail to the following non-filing user:

> Daniel Neil Jackson, 1182398
> VADOC Centralized Mail Distribution Center
> 3521 Woods Way
> State Farm, Virginia 23160
> Plaintiff, *pro-se*

_/s/_  *Grace Morse McNelis*
Grace Morse-McNelis, Esq., VSB No. 75957
Ericka W. Kopp, Esq. VSB No. 98265
Frith Anderson + Peake
4198 Cox Road, Suite 102
Glen Allen, VA 23060
Phone – (804) 362-0078
Fax – (540) 772-9167
gmorsemcnelis@faplawfirm.com
ekopp@faplawfirm.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

**DANIEL NEIL JACKSON,**

      **Plaintiff,**

**v.**

                                        **Case No.: 7:22-cv-00090**

**D. DAMERON, et al.**

      **Defendants.**

**KYLE SMITH, MD AND DERINDA DAMERON, RN'S**
**MOTION FOR SUMMARY JUDGMENT**

      COME NOW, Kyle Smith, MD (identified in the Complaint as "Dr. K. Smith") and Derinda Dameron, RN (identified in the Complaint as "D. Dameron, RN"), by counsel, and pursuant to Rule 56 of the Federal Rules of Civil Procedure as well as Local Rules 56 and 11(c), hereby file this Motion for Summary Judgment in response to Plaintiff's operative pleading. A Memorandum in Support accompanies this Motion as required by the Local Rules.

      Respectfully submitted,

      **KYLE SMITH, MD and**
      **DERINDA DAMERON, RN**

              /s/ *Grace Morse McNelis*
      Grace Morse-McNelis, Esq., VSB No. 75957
      Ericka W. Kopp, Esq. VSB No. 98265
      Frith Anderson + Peake
      4198 Cox Road, Suite 102
      Glen Allen, VA 23060
      Phone – (804) 362-0078
      Fax – (540) 772-9167
      gmorsemcnelis@faplawfirm.com
      ekopp@faplawfirm.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 17th day of June, 2024, I electronically filed the foregoing with

the Clerk of the Court using the CM/ECF system and I further certify that I will mail the document

by U.S. mail to the following non-filing user:

> Daniel Neil Jackson, 1182398
> VADOC Centralized Mail Distribution Center
> 3521 Woods Way
> State Farm, Virginia 23160
> Plaintiff, *pro-se*

    /s/   *Grace Morse McNelis*
Grace Morse-McNelis, Esq., VSB No. 75957
Ericka W. Kopp, Esq. VSB No. 98265
Frith Anderson + Peake
4198 Cox Road, Suite 102
Glen Allen, VA 23060
Phone – (804) 362-0078
Fax – (540) 772-9167
gmorsemcnelis@faplawfirm.com
ekopp@faplawfirm.com

CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

September 09, 2024

LAURA A. AUSTIN, CLERK
BY:
        s/A. Beeson
        DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| DANIEL NEIL JACKSON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7:22-cv-00090 |
| | ) | |
| v. | ) | |
| | ) | |
| D. DAMERON, RN, *et al.*, | ) | By: C. Kailani Memmer |
| | ) | United States Magistrate Judge |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Plaintiff Daniel Neil Jackson, a Virginia inmate proceeding *pro se*, filed this civil action under 42 U.S.C. § 1983 against D. Dameron, RN ("Nurse Dameron"), and Kyle Smith, MD ("Dr. Smith"). Jackson claims that the defendants acted with deliberate indifference to his serious medical needs in violation of the Eighth Amendment. He also claims that Nurse Dameron retaliated against him for engaging in activity protected by the First Amendment.

The case is before me by the parties' consent under 28 U.S.C. § 636(c). *See* ECF No. 26. Presently before me is the defendants' partial motion to dismiss. ECF No. 41. The motion has been fully briefed and is ripe for review. *See* ECF Nos. 42, 50, 51. For the reasons set forth below, the partial motion to dismiss is **GRANTED IN PART AND DENIED IN PART**.

## I.      BACKGROUND

Jackson is in the custody of the Virginia Department of Corrections ("VDOC"). He was previously incarcerated at Augusta Correctional Center ("Augusta"), and his claims stem from events that allegedly occurred there between February 2021 and November 2023. The following factual allegations are taken from the supplemental complaint filed on February 7, 2024, ECF No. 39.

Jackson was transferred to Augusta from another VDOC facility in February 2021. At the time of his transfer, Jackson was being treated for "pain and nerve damage" in his right leg. Supp'l Compl. 1, ECF No. 6. He had been prescribed "a support sleeve for his ankle, medications for the treatment of pain, [and] a medically assigned bottom bunk." *Id.* After he arrived at Augusta, "the prescribed ankle support was confiscated by property pending reissue by medical." *Id.* at 2. Jackson alleges that he met with Dr. Smith on several occasions and requested that a support sleeve be reissued for his ankle. *Id.* Although Dr. Smith told Jackson that he would "look into getting the support sleeve reissued," he "never reissued the item." *Id.* (internal quotation marks omitted).

In May 2021, Jackson was hired to work in the apparel shop at Augusta. *Id.* The employee dress code required that he wear boots to work unless he received a medical exemption. *Id.* Because the hard-soled boots issued by the VDOC increased the pain and numbness in his right leg, he asked Dr. Smith to issue a medical exemption known as a "tennis shoe pass," but Dr. Smith "refused to even consider the request." *Id.* at 3 (internal quotation marks omitted). Jackson ultimately resigned from the apparel shop because of the pain and discomfort that he experienced wearing the boots. *Id.*

Jackson subsequently saw a neurologist who "prescribed the wearing of soft-soled shoes, along with insoles for further support and cushioning." *Id.* Jackson alleges that the neurologist also recommended that he "begin physical therapy to prevent further decline." *Id.* at 3–4. Jackson claims that despite being aware of the treatment prescribed by the neurologist, neither Dr. Smith nor Nurse Dameron responded to his "multiple requests" to begin physical therapy. *Id.* at 4.

Jackson alleges that his prescription pain medications, including ibuprofen, were discontinued in October 2021 and that he was told that "if he needed treatment for pain he could 'buy over-the-counter meds from [the] commissary.'" *Id.* Jackson subsequently submitted

"multiple requests to medical regarding his ongoing pain and was given similar responses or was ignored." *Id.* On one occasion, Jackson specifically explained to Nurse Dameron that he could not afford to purchase over-the-counter medications from the commissary and that he was "limited to far less than what he had been taking to treat pain by [commissary] purchase limits." *Id.* Jackson alleges that Nurse Dameron "told [him] to 'just do what everyone else does and go buy suboxone off the yard.'" *Id.* at 4–5.

Jackson alleges that he endured "almost constant pain and discomfort" from the time his prescription medications were discontinued until August 2023, when the VDOC "began a contract with a new provider and had another doctor coming in to treat inmates." *Id.* at 5. At that point, Jackson was "immediately reissued his ankle support sleeve, new insoles, and medication for the treatment of pain." *Id.*

On October 11, 2023, "a note was placed in [Jackson's] medical record stating that a medical bottom bunk status was not indicated." *Id.* at 6. Jackson subsequently met with the new doctor, Dr. Gomez, and inquired about the change. *Id.* Dr. Gomez reportedly told Jackson that the "removal[] of such status had been done at the urging of Nurse Dameron, but that [Jackson] did require [a] bottom bunk and should not have been removed." *Id.* Jackson alleges, upon information and belief, that Nurse Dameron "removed [him] from [his] bottom bunk status of her own accord as retaliation for [this §] 1983 civil suit." *Id.*

On October 12, 2023, Nurse Dameron's husband, Lieutenant Lokey, ordered that Jackson undergo a urinalysis even though he had "no history of opioid usage and was not displaying any signs of usage." *Id.* Jackson alleges that the "only connection" that he had to suboxone was "Nurse Dameron's statement that [he] should use [suboxone] to treat pain." *Id.* at 6–7. Lokey accused Jackson of testing positive for suboxone and charged him with a disciplinary offense. *Id.* at 7.

3

Jackson was found guilty of the offense and penalized with a fine, a loss of visitation privileges for two years, and a loss of phone privileges for two years. *Id.* at 7.

Based on the foregoing allegations, Jackson claims that Dr. Smith and Nurse Dameron acted with deliberate indifference to his serious medical needs in violation of the Eighth Amendment and that Nurse Dameron retaliated against him for exercising his First Amendment right to file this lawsuit. Liberally construed, the supplemental complaint alleges that Dr. Smith violated the Eighth Amendment by (1) failing to reissue Jackson an ankle sleeve after he arrived at ACC; (2) refusing to issue a medical exemption that would have permitted Jackson to wear tennis shoes while working in the apparel shop at ACC; and (3) failing to order the physical therapy allegedly prescribed by a neurologist. The supplemental complaint alleges that Nurse Dameron violated the Eighth Amendment by (1) failing to respond to Jackson's requests for physical therapy; and (2) suggesting that he unlawfully purchase suboxone when he complained of being unable to purchase enough over-the-counter medication to address his ongoing pain, rather than assisting him in having his prior prescriptions renewed. The supplemental complaint also asserts claims of retaliation against Nurse Dameron arising from the removal of his bottom punk pass and the disciplinary charge issued by Nurse Dameron's husband. *See* Supp'l Compl. 7–8.

## II.    STANDARD OF REVIEW

Defendants have filed a partial motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) in which they argue that the supplemental complaint fails to state a claim against Nurse Dameron. Rule 12(b)(6) permits defendants to seek dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp.*

*v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While "detailed factual allegations" are not required, "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

When evaluating whether a complaint states a claim upon which relief can be granted, "the court must construe all factual allegations in the light most favorable to the plaintiff." *Wilcox v. Brown*, 877 F.3d 161, 166–67 (4th Cir. 2017). "Additionally, when a plaintiff raises a civil rights issue and files a complaint *pro se*, the court must construe pleading requirements liberally." *Id.* Nevertheless, "[p]rinciples requiring generous construction of pro se complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). A complaint filed by a *pro se* plaintiff "still must contain enough facts to state a claim for relief that is plausible on its face." *Thomas v. Salvation Army S. Terr.*, 841 F.3d 632, 637 (4th Cir. 2016) (internal quotation marks omitted).

## III.    DISCUSSION

### A.    Jackson's Supplemental Complaint

Before turning to the partial motion to dismiss filed under Rule 12(b)(6), the court will first address the defendants' request that I dismiss or strike "each and every claim and fact set forth in the Supplemental Complaint that differs from what was alleged in the original Complaint." Defs.' Br. Supp. Mot. Dismiss 13, ECF No. 42. By Order entered February 7, 2024, I granted Jackson's unopposed motion for leave to file a supplemental complaint that clarifies his claims of deliberate indifference against the defendants and adds claims of retaliation against Nurse Dameron based on events that allegedly occurred after the date of the original complaint. *See* Order, ECF No. 38. I noted that the motion implicated Rules 15(a) and 15(d) of the Federal Rules of Civil Procedure.

*Id.* "Rule 15(a) embodies the federal courts' policy of liberal pleading amendment by ensuring that an inadvertent error in, or omission from, an original pleading will not preclude a party from securing relief on the merits of his claim." *Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019). "Rule 15(d) operates in conjunction with Rule 15(a)" and "allows a court to grant a party the ability to 'serve a supplemental pleading setting out any transaction, occurrence or event that happened after the date of the pleading to be supplemented.'" *Id.* (quoting Fed. R. Civ. P. 15(d)). "Leave to supplement 'should be freely granted, and should be denied only where 'good reason exists . . . ., such as prejudice to the defendants.'" *Hodges v. Meletis*, 109 F.4th 252, 263 n.17 (4th Cir. 2024) (alteration in original) (quoting *Franks v. Ross*, 313 F.3d 184, 198 n. 15 (4th Cir. 2002)).

The supplemental pleading filed by Jackson serves two functions. It sets forth amended allegations and claims arising out of the events described in the original complaint, and it also presents new factual allegations and claims that arose after the original complaint was filed. Accordingly, under Rules 15(a) and 15(d), the pleading is "both an amended complaint and a supplemental complaint." *Garrett*, 989 F.3d at 82. To the extent that the defendants seek to have any new allegations or claims stricken for failure to comply with Rule 15(a) or 15(d), the request is denied.

## B.     Claims Against Nurse Dameron

The defendants also argue that the supplemental complaint fails to state a viable claim of deliberate indifference or retaliation against Nurse Dameron. The court will address each claim in turn.

### 1.     Deliberate Indifference

"The Eighth Amendment, which is applicable to the States through the Fourteenth Amendment, prohibits the infliction of cruel and unusual punishments.'" *Anderson v. Kingsley*,

877 F.3d 539, 543 (4th Cir. 2017) (quoting U.S. Const. amend. VIII). "Under the Eighth Amendment, prisoners have the right to receive adequate medical care while incarcerated." *DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018) (citing *Scinto v. Stansberry*, 841 F.3d 219, 236 (4th Cir. 2016)). A constitutional violation occurs "[w]hen a prison official demonstrates 'deliberate indifference' to an inmate's serious medical needs." *Id.*

"A successful medical deliberate indifference claim has 'two components, objective and subjective.'" *Phoenix v. Amonette*, 95 F.4th 852, 859 (4th Cir. 2024) (quoting *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014)). "The objective component requires that the plaintiff's 'medical condition . . . be serious—one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Id.* (quoting *Jackson*, 775 F.3d at 178). To satisfy the subjective component, a plaintiff must show that a defendant "had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Jackson*, 775 F.3d 178. "A plaintiff can meet the subjective knowledge requirement through direct evidence of a prison official's actual knowledge or circumstantial evidence tending to establish such knowledge, including evidence that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Scinto*, 841 F.3d at 226 (internal quotation marks omitted).

In moving to dismiss any claim of deliberate indifference asserted against Nurse Dameron, the defendants argue that Jackson's allegations are insufficient to satisfy either component. With respect to the objective component, the defendants contend that "a reasonable inference can be made that [Jackson's] leg issues were not sufficiently serious to meet the constitutional definition," since Jackson alleges that a specialist "simply prescribed physical therapy and treatment for pain," rather than surgery. Defs.' Reply Br. 9, ECF No. 51. This argument is unpersuasive for two

7

reasons. First, when ruling on a motion to dismiss, the court must view the allegations "in the light most favorable to the plaintiff" and "draw all reasonable inference in the plaintiff's favor." *Barbour v. Garland*, 105 F.4th 579, 589 (4th Cir. 2024). Second, as reflected above, a medical problem is serious enough to satisfy the objective component if has it been diagnosed by a physician as requiring "treatment." *Phoenix*, 95 F.4th at 859. Jackson's allegations regarding the leg issues for which he was prescribed treatment and the pain that he experienced after his medications were discontinued are sufficient to satisfy the objective component at this stage of the proceedings. *Id.*; *see also Melton v. Abston*, 841 F.3d 1207, 1222 (11th Cir. 2016) (noting that "[s]evere pain that is not promptly or adequately treated can also constitute a serious medical need depending on the circumstances").

The defendants also argue that the allegations against Nurse Dameron are insufficient to satisfy the subjective component of deliberate indifference. "The necessary showing of deliberate indifference can be manifested by prison officials in responding to a prisoner's medical needs in various ways, including intentionally *denying* or *delaying* medical care, or intentionally *interfering* with prescribed medical care." *Formica v. Aylor*, 739 F. App'x 745, 754 (4th Cir. 2018) (emphasis in original) (citing *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976)). Additionally, "the treatment a prison facility [provides] must . . . be adequate to address the prisoner's serious medical need," and "government officials who ignore indications that a prisoner's or pretrial detainee's initial medical treatment was inadequate can be liable for deliberate indifference to medical needs." *Stevens v. Holler*, 68 F.4th 921, 933 (4th Cir. 2023) (alterations in original) (internal quotation marks omitted).

In the supplemental complaint, Jackson alleges that a specialist prescribed physical therapy for his leg issues; that he sent Nurse Dameron multiple requests to undergo physical therapy after

being seen by the specialist; and that despite being aware of the treatment prescribed by the specialist, Nurse Dameron never responded to his requests or arranged for him to undergo physical therapy. Jackson further alleges that he informed Nurse Dameron that he could not afford to purchase over-the-counter pain medication from the commissary and that she responded to his complaints by suggesting that he unlawfully obtain suboxone on the recreation yard. The allegations in the supplemental complaint, which must be accepted as true at this stage of the litigation, plausibly suggest that Nurse Dameron acted with deliberate indifference to Jackson's serious medical needs. *See, e.g.*, *Anderson v. Less*, 14-3167, 2014 U.S. App. LEXIS 25095, at *5 (6th Cir. Sept. 19, 2014) ("We find that a factual scenario in which prison officials force an inmate to purchase needed medication when those officials know the inmate cannot afford to do so is enough to survive dismissal for failure to state a claim."). Accordingly, the defendants' partial motion to dismiss is denied to the extent that the defendants argue that the supplemental complaint fails to state a claim of deliberate indifference against Nurse Dameron.

### 2.    Retaliation

Jackson's supplemental complaint also claims that Nurse Dameron retaliated against him for engaging in activity protected by the First Amendment.  Jackson alleges that Nurse Dameron had his bottom-bunk pass removed in October 2023 in retaliation for filing this action. Jackson also suggests that Nurse Dameron's husband charged him with a disciplinary offense because he filed this action and that Nurse Dameron was involved in the decision. I agree with the defendants that the supplemental complaint fails to state a plausible claim of retaliation against Nurse Dameron.

"To state a colorable First Amendment retaliation claim, a plaintiff must allege (1) that he engaged in protected First Amendment activity, (2) the defendant[] took some action that adversely

9

affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant['s] conduct." *Shaw v. Foreman*, 59 F.4th 121, 130 (4th Cir. 2023) (internal quotation marks omitted). Here, Jackson plainly engaged in protected activity by filing this lawsuit against Dr. Smith and Nurse Dameron. *See Hudspeth v. Figgins*, 584 F.2d 1345, 1347 (4th Cir. 1978) ("State prisoners have a constitutional right of meaningful access to the courts," and "the state may not punish a prisoner for having sought judicial remedies."). However, even assuming that Nurse Jackson was involved in the removal of the bottom-bunk pass or the disciplinary charge issued by her husband, Jackson has failed to allege a causal connection between his protected activity and the adverse actions described in the supplemental complaint.

First, the mere fact that Nurse Dameron (or her husband) knew about this action at the time of the events in question is insufficient to satisfy the causation prong of a retaliation claim. As the United States Court of Appeals for the Fourth Circuit recently emphasized, "knowledge of protected First Amendment activity alone 'does not establish a causal connection between the protected activity and the adverse action.'" *Hodges v. Meletis*, 109 F.4th 252, 262 (4th Cir. 2024) (quoting *Constantine v. Rectors & Visitors of George Mason Univ.*, 380 F.3d 209, 213 (4th Cir. 2005)). "Instead, a plaintiff must allege some additional evidence that can support an inference of causation." *Id.*

Second, while "temporal proximity alone can create the inference of causation," the Fourth Circuit "require[s] 'the temporal proximity [to be] very close.'" *Id.* (second alteration in original) (quoting *Penley v. McDowell Cnty. Bd. of Educ.*, 876 F.3d 646, 656 (4th Cir. 2017)). A lengthy lapse of time between a defendant learning of the protected activity and the defendant taking the allegedly retaliatory action "negates any inference that a causal connection exists between the two." *Id.* (internal quotation marks omitted). For instance, the Fourth Circuit has "expressly held

that adverse action taken three months after a grievance did not closely follow a protected activity, and thus does not present a circumstance that courts have characterized as creating a strong inference of retaliation." *Id.* (internal quotation marks omitted).

Here, the record reflects that a deputy marshal personally served Nurse Dameron with a summons and a copy of the original complaint on September 21, 2022. *See* Proof of Service, ECF No. 14 at 2. The adverse actions for which Jackson seeks to hold Nurse Dameron responsible— the removal of the bottom-bunk pass and the issuance of a disciplinary charge for using suboxone—occurred more than a year later, in October 2023. This length of time is too long to establish a causal connection by temporal proximity alone. *Hodges*, 109 F.4th at 263; *see also Pepper v. Precision Valve Corp.*, 526 F. App'x 335, 337 (4th Cir. 2013) (concluding that the plaintiff's protected activity "was the filing of his lawsuit" against his former employer, rather than "his continuing pursuit of the lawsuit," and that the plaintiff could not establish a causal connection between his protected activity and his termination since the termination occurred ten months after the lawsuit was filed). Thus, "without more," Jackson's supplemental pleading "fails to allege a First Amendment retaliation claim." *Hodges*, 109 F.4th at 263. Because the pleading does not contain any other allegations suggesting that Nurse Dameron took an adverse action against him because he filed this action, it fails to state a claim of retaliation in violation of the First Amendment. *Id.*; *see also Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999) ("The inmate must allege more than his personal belief that he is the victim of retaliation. Mere conclusory allegations of retaliation will not be enough to withstand a proper motion for dismissal of the claim."). Accordingly, the partial motion to dismiss is granted with respect to the claims of retaliation asserted against Nurse Dameron.

JA051

### IV.     CONCLUSION

For the reasons stated, the defendants' partial motion to dismiss is **GRANTED IN PART AND DENIED IN PART**. The retaliation claims asserted against Nurse Dameron in the supplemental complaint are **DISMISSED** for failure to state a claim upon which relief can be granted. An appropriate Order will be entered.

ENTERED: September 9, 2024

*C. Kailani Memmer*

C. Kailani Memmer
United States Magistrate Judge

12

JA052

CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

September 09, 2024

LAURA A. AUSTIN, CLERK
BY:
        s/A. Beeson
        DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| DANIEL NEIL JACKSON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7:22-cv-00090 |
| | ) | |
| v. | ) | |
| | ) | |
| D. DAMERON, RN, *et al.*, | ) | By: C. Kailani Memmer |
| | ) | United States Magistrate Judge |
| Defendants. | ) | |

## ORDER

For the reasons stated in the accompanying Memorandum Opinion, the defendants' partial motion to dismiss, ECF No. 41, is **GRANTED IN PART AND DENIED IN PART**. The retaliation claims asserted against Nurse D. Dameron are **DISMISSED** for failure to state a claim upon which relief can be granted.

The Clerk is directed to send a copy of this Order and the accompanying Memorandum Opinion to the parties.

ENTERED: September 9, 2024

*C. Kailani Memmer*

C. Kailani Memmer
United States Magistrate Judge

CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

March 20, 2025

LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

DANIEL NEIL JACKSON,      )
      )
     Plaintiff,      )     Civil Action No. 7:22-cv-00090
      )
v.      )
      )
D. DAMERON, RN, *et al.*,      )     By: C. Kailani Memmer
      )     United States Magistrate Judge
     Defendants.      )

**MEMORANDUM OPINION**

Plaintiff Daniel Neil Jackson, a Virginia inmate proceeding *pro se*, filed this civil action under 42 U.S.C. § 1983 against D. Dameron, RN ("Nurse Dameron"), and Kyle Smith, MD ("Dr. Smith"). Jackson claims the defendants acted with deliberate indifference to his serious medical needs in violation of the Eighth Amendment.

The case is before me by the parties' consent under 28 U.S.C. § 636(c). *See* ECF No. 26. Presently before me is the defendants' motion for summary judgment. ECF No. 55. Jackson responded to the motion, ECF No. 65, the time for filing any additional argument or evidence in response to the motion has expired, ECF No. 66, and the motion is ripe for review. For the reasons set forth below, the motion for summary judgment is **GRANTED**.

## I.    BACKGROUND

### A.    Jackson's Allegations and Claims

Jackson is in the custody of the Virginia Department of Corrections ("VDOC"). He was previously incarcerated at Augusta Correctional Center ("Augusta"), and his Eighth Amendment claims stem from events that allegedly occurred there between February 2021 and November 2023.

The following allegations are drawn from Jackson's verified original complaint and his unverified supplemental complaint.[1] *See* Compl., ECF No. 1; Supp'l Compl., ECF No. 39.

The VDOC transferred Jackson to Augusta in February 2021. Jackson alleges he was diagnosed with nerve damage in his right leg approximately two years prior to the transfer and he was "prescribed medications for pain, given an ankle sleeve for support, assigned bottom bunk status, and scheduled for further specialist care." Compl. 2. After he arrived at Augusta, "the prescribed ankle support was confiscated by property pending reissue by medical." Supp'l Compl. 2. Jackson alleges he met with Dr. Smith on several occasions and requested a support sleeve be reissued for his ankle. *Id.* However, Dr. Smith "refused to even follow-up on this matter." Compl. 2.

In May 2021, Jackson was hired to work in the apparel shop at Augusta. Supp'l Compl. 2. The employee dress code required that he wear boots to work unless he received a medical exemption. *Id.* Because the hard-soled boots issued by the VDOC increased the pain and numbness in his right leg, Jackson asked Dr. Smith to issue a medical exemption known as a "tennis shoe pass," but Dr. Smith refused to do so. *Id.* at 2–3. Jackson ultimately resigned from the apparel shop because of the pain and discomfort he experienced wearing the required boots. *Id.* at 3.

Jackson alleges he subsequently saw an outside specialist who "prescribed soft, supportive insoles as treatment." Compl. 2. He further alleges a specialist recommended he "begin physical therapy to prevent further decline." Suppl. Compl. 3–4. Jackson claims that despite being aware of the treatment recommended by the specialist, neither Dr. Smith nor Nurse Dameron responded

---

[1] "A complaint is 'verified' if it is 'signed, sworn, and submitted under penalty of perjury.'" *Goodman v. Diggs*, 986 F.3d 493, 495 n.2 (4th Cir. 2021) (quoting *James v. Hale*, 959 F.3d 307, 314 (7th Cir. 2020)). A verified complaint is "the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge." *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991).

JA055

to his requests to begin physical therapy. *Id.* at 4; *see also* Compl. 3 ("Dr. Smith has never given me any physical therapy, nor has he issued any prescribed physical therapy.").

Jackson alleges his prescription medications, including ibuprofen, were discontinued in October 2021 and he was advised "if he needed treatment for pain he could 'buy over-the-counter meds from [the] commissary.'" Supp'l Compl. 4. Jackson subsequently submitted "multiple requests to medical regarding his ongoing pain and was given similar responses or was ignored." *Id.* Jackson subsequently told Nurse Dameron he "could not afford to regularly purchase the dosage [he] was taking." Compl. 3. He alleges Nurse Dameron informed him he should "just buy some suboxone off the yard like everyone else does." *Id.*; *see also* Supp'l Compl. 4–5.

Jackson alleges he continued to experience pain and discomfort until August 2023, when Augusta "began a contract with a new provider and had another doctor coming in to treat inmates." Supp'l Compl. 5. At that point, Jackson was "reissued his ankle support sleeve, new insoles, and medication for the treatment of pain." *Id.*

Jackson alleges he met with the new doctor in November 2023, after learning that his bottom bunk status was discontinued. *Id.* at 6. Jackson asserts, on information and belief, that Nurse Dameron was responsible for the decision. *Id.*

Based on the foregoing allegations, Jackson claims Dr. Smith and Nurse Dameron acted with deliberate indifference to his serious medical needs in violation of the Eighth Amendment. In particular, Jackson claims Dr. Smith violated the Eighth Amendment by (1) failing to reissue him an ankle sleeve after he arrived at Augusta; (2) refusing to issue a medical exemption that would have permitted him to wear tennis shoes while working in the apparel shop at Augusta; and (3) failing to order the physical therapy allegedly prescribed by a specialist. Jackson claims Nurse Dameron violated the Eighth Amendment by (1) failing to respond to his requests for physical

therapy; (2) failing to help him renew his prescriptions after he told her that he could not afford to purchase medication from the commissary; and (3) discontinuing his bottom bunk status.

## B.    Defendants' Evidence

In support of the pending motion for summary judgment, Dr. Smith and Nurse Dameron submitted their own declarations, along with various medical records. According to the declarations, Dr. Smith provided primary care services to inmates at Augusta and was the Medical Director at that facility from 2018 until May 2023. Smith Decl. ¶ 1, ECF No. 56-1. Nurse Dameron was employed as the Health Services Administrator at Augusta during a portion of the time period relevant to this action. Dameron Decl. ¶ 1, ECF No. 56-2. In that administrative role, Nurse Dameron's duties "involved the oversight of the nursing care at the facility and staffing of medical personnel generally." *Id.* ¶ 4. As a registered nurse, she could not prescribe medications. *Id.* ¶ 14.

Jackson's medical records indicate he was transferred to Augusta on or about February 10, 2021. Smith Decl. ¶ 6 (citing FR-SDT-VDOC-000147).[2] He arrived at the facility with the following medications: ibuprofen, "an over-the-counter anti-inflammatory";[3] Cymbalta, which "can be used for anxiety and pain relief"; and Metamucil for constipation. *Id.* His existing medical issues were identified as "numbness/pain from knee to foot, [right] sided." FR-SDT-VDOC-000147. The licensed practical nurse responsible for performing an intake assessment noted Jackson complained of "numbness, tingling [and] pain from knee to foot on [right] side causing an inability to climb the ladder requiring a bottom bunk." FR-SDT-VDOC-000146. Based on his complaints, Jackson was referred to Dr. Smith. Smith Decl. ¶ 7.

---

[2] When citing to the compilation of medical records available at ECF No. 56-3, I will use the Bates numbering found in the lower right corner of the documents.

[3] Ibuprofen is in a class of medications referred to as "NSAIDs" (nonsteroidal anti-inflammatory drugs). *See* Ibuprofen, U.S. National Library of Medicine: Medline Plus, https://medlineplus.gov/druginfo/meds/a682159.html (last visited Mar. 11, 2025).

JA057

Dr. Smith first saw Jackson on February 18, 2021. *Id.* ¶ 8 (citing FR-SDT-VDOC-000143). At that time, Dr. Smith verified Jackson's medication orders were up to date. *Id.* He also placed a request for Jackson to be seen by a neurosurgeon regarding his leg complaints. *Id.*

On March 9, 2021, Jackson was seen in the medical clinic by C. Russell, RN, in anticipation of the upcoming appointment with a neurosurgeon. *Id.* ¶ 9 (citing FR-SDT-VDOC-000143). The nurse reported Jackson mentioned wanting "return of right ankle brace," which he claimed to have previously requested. FR-SDT-VDOC-0143. The nurse noted she would "check [with] Ms. Hall for visit referral." *Id.*

On March 10, 2021, Jackson had an appointment with Dr. John Ward, a neurosurgeon at VCU Medical Center. FR-SDT-VDOC-000096. Dr. Ward noted that he had previously seen Jackson for complaints of pain and numbness in his right leg and foot, and that Jackson had undergone an "EMG which was interpreted as showing nerve compression." *Id.* Dr. Ward also noted Jackson "recently had an MRI of his leg which was read as normal" and that a "lumbar MRI also look[ed] fairly benign with no evidence of any stenosis or ruptured disc." *Id.* Since the objective studies were "a bit conflicting," Dr. Ward reported he planned to have a peripheral nerve surgeon review the studies and determine whether surgery needed to be explored. FR-SDT-VDOC-000097.

On March 16, 2021, Dr. Smith saw Jackson in the medical clinic to review the neurosurgeon's plan with him. Smith Decl. ¶ 12 (citing FR-SDT-VDOC-000142). Although Jackson continued to complain of pain and numbness, Dr. Smith found Jackson was in no acute distress and had a normal gait. FR-SDT-VDOC-000142. Dr. Smith noted he was going to contact Dr. Ward for further information. *Id.* He also ordered Jackson be assigned to a bottom bunk for 365 days. FR-SDT-VDOC-000014.

On April 14, 2021, Dr. Smith requested Jackson be referred for a neurosurgery follow-up appointment. FR-SDT-VDOC-000095. Dr. Smith classified the referral as "urgent" to ensure Jackson would be seen expeditiously. Smith Decl. ¶ 13. The referral request was approved on April 15, 2021. FR-SDT-VDOC-000095.

On May 8, 2021, a nurse noted Jackson presented to sick call complaining about the boots he was required to wear for his new job in the tailor shop. FR-SDT-VDOC-000140. Jackson requested a doctor's order for "tennis shoes or modified work boots." *Id.* The nurse referred Jackson to Dr. Smith for a medical assessment. *Id.*

Dr. Ward, the neurosurgeon, physically examined Jackson on May 12, 2021. FR-SDT-VDOC-000091. Dr. Ward noted Jackson had "totally normal muscle function of his right lower extremity." FR-SDT-VDOC-000092. Although Jackson exhibited numbness in his heel, the involved muscles were "all within normal limits." *Id.* Based on the physical examination findings, Dr. Ward provided the following assessment: "In the absence of any weakness of his right foot there is no point in exploring his nerve. We will get orthopedics to look at his MRI to see whether not . . . the Baker cyst in the back of his leg might be addressed." *Id.* Otherwise, Dr. Ward noted there was "no follow-up needed." FR-SDT-VDOC-000093.

Dr. Smith saw Jackson again on June 3, 2021, regarding his request for a "shoe pass." FR-SDT-VDOC-000134. Prior to the visit, Dr. Smith "reviewed the visit note and documentation by Dr. Ward and noted that the neurosurgeon had evaluated him and found normal strength and muscle function and did not recommend surgery." Smith Decl. ¶ 16 (citing SDT-VDOC-000134). During the visit with Dr. Smith, Jackson's gait was normal, and he was not in acute distress. *Id.* They discussed Jackson's shoe request, and Dr. Smith informed Jackson "there was no medical reason why he could not wear boots to his job, which would offer more protection than a tennis

6

shoe." *Id.* Dr. Smith noted Jackson became angry and threatened to file a lawsuit against him. *Id.* (citing FR-SDT-VDOC-000134). Based on Dr. Ward's most recent report, Dr. Smith placed a referral for an orthopedic consult. *Id.*

Jackson was examined by Dr. Madana Mohana Vallem at VCU Orthopedics on July 12, 2021. FR-SDT-VDOC-000088. X-rays obtained that day revealed "no acute findings." *Id.* Dr. Vallem noted Jackson exhibited "tenderness along the Achilles tendon in the right foot" and "generalized numbness in the right foot," but Jackson's strength appeared to be "normal bilaterally in both feet with normal strength in dorsiflexion, plantar flexion, inversion and eversion with intact distal pulses." *Id.* Dr. Vallem diagnosed Jackson with "[r]ight foot insertional calcific Achilles tendinopathy." *Id.* He recommended Jackson wear arch supports and noted he "showed [Jackson] how to perform stretching exercises for the Achilles tendinopathy." *Id.* Dr. Vallem also recommended Jackson "continue symptomatic treatment with NSAIDs as needed" and "continue activity as tolerated." *Id.* At the conclusion of his report, Dr. Vallem noted "[n]o further acute orthopedic intervention [was] necessary" at that time and Jackson "understood the treatment plan." FR-SDT-VDOC-000089.

Dr. Smith saw Jackson again on July 27, 2021, and reviewed the orthopedic specialist's recommendations with him. Smith Decl. ¶ 19 (citing FR-SDT-VDOC-000131). Dr. Smith renewed Jackson's prescriptions for ibuprofen and Cymbalta. *Id.* He also ordered arch supports as recommended by the orthopedic specialist. Smith Decl. ¶ 18. Nurse V. Hall issued the arch supports to Jackson on August 19, 2021. FR-SDT-VDOC-0000131.

Dr. Smith's declaration indicates he "continued to see [Jackson] as needed for general medical issues through the year 2021 and into 2022." Smith Decl. ¶ 21. A November 3, 2021, notation in Jackson's medical chart indicates Jackson's prescription for Cymbalta was not renewed

due to poor compliance and Jackson could obtain ibuprofen through the commissary. FR-SDT-VDOC-000131; *see also* Dameron Decl. ¶ 10 (noting that "ibuprofen, which is the medication that was recommended by the orthopedic specialist, is always available to inmates at the commissary" and that no prescription is required).

On June 19, 2022, Dr. Smith renewed Jackson's medical order for a bottom bunk assignment. FR-SDT-VDOC-000014. Dr. Smith left Augusta in May 2023. Smith Decl. ¶ 23.

As of November 9, 2023, Jackson's bottom bunk status was discontinued. FR-SDT-VDOC-000111. On November 14, 2023, Nurse V. Hall scheduled Jackson to see a doctor regarding his bunk assignment, and a doctor met with Jackson that same day. *Id.* The doctor noted Jackson was able to function normally, he ambulated well, and he did not meet the requirements for a bottom bunk. Dameron Decl. ¶ 19 (citing FR-SDT-VDOC-000111). "The provider also noted that neurosurgery and orthopedics had signed off on further care." *Id.*  Nurse Dameron's declaration indicates she played no role in the decision to discontinue Jackson's bottom bunk pass. *Id.* ¶¶ 18–19.

## C.    Jackson's Response in Opposition

On November 1, 2024, Jackson filed a verified response in opposition to the defendants' motion for summary judgment. In response to the defendants' statement of facts, Jackson asserts he was prescribed an ankle sleeve by a healthcare provider at another correctional institution and Dr. Smith failed to address his request for the sleeve to be reissued after he arrived at Augusta. *See* Pl.'s Resp. Mot. Summ. J. 3–4, ECF No. 65. Jackson also asserts he "had no choice but to resign" from his prison job after Dr. Smith denied his request for a tennis shoe pass. *Id.* at 5.

Jackson contends the orthopedic specialist, Dr. Vallem, informed him that the specialist was "ordering physical therapy exercises to be performed" and Jackson interpreted the specialist's

statement to mean he would receive physical therapy at Augusta. *Id.* When Dr. Smith subsequently asked Jackson if the specialist explained the physical therapy exercises to him, Jackson admittedly responded in the affirmative. *See id.* at 6 ("I told him that, yes, [the specialist] had told me about the need for them.") Jackson asserts, however, he had "a different understanding of this prescribed treatment" and he was under the impression the exercises would be performed with a physical therapist rather than on his own. *Id.* Jackson further asserts he submitted requests for physical therapy in August and September 2021, all of which went unanswered. *Id.*

Jackson maintains Dr. Smith did not examine him again after the follow-up appointment on July 27, 2021. *Id.* at 6. Jackson asserts he "was not seen again until a new provider took over in 2023." *Id.*

Jackson acknowledges his prescription for Cymbalta was discontinued due to poor compliance. *Id.* at 7. When he submitted written requests to have his prescriptions renewed, Nurse Dameron informed him he could purchase over-the-counter pain medication from the commissary. *Id.* Although Nurse Dameron denies making the comment, *see* Dameron Decl. ¶¶ 11–12, Jackson continues to assert she told him to "just purchase suboxone off the yard like everyone else" when he complained of being unable to afford to buy over-the-counter medication. Pl.'s Resp. Mot. Summ. J. 8 (internal quotation marks omitted).

With respect to the discontinuation of his bottom bunk status in November 2023, Jackson does not dispute Nurse Dameron's sworn assertion that she played no role in the decision. *See id.* at 6 (responding to paragraphs 26–30 of the defendants' statement of facts with "no dispute").

By Order entered November 15, 2024, Jackson was given 21 days to file any additional evidence or argument in response to the defendants' motion for summary judgment. Order 3, ECF

No. 66. The 21-day period has expired, and no additional evidence or argument has been presented for consideration.

## II.    STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, a court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Henry v. Purnell*, 652 F.3d 524, 548 (4th Cir. 2011)).

When ruling on a motion for summary judgment, the court must "view the facts and all justifiable inferences arising therefrom in the light most favorable to the nonmoving party." *Id.* at 312. "To defeat a properly filed motion for summary judgment, the nonmoving party must set forth specific facts that go beyond the 'mere existence of a scintilla of evidence.'" *Muchira v. Al-Rawaf*, 850 F.3d 605, 616 (4th Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "Conclusory allegations and speculation will not suffice." *Id.* Instead, "there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson*, 477 U.S. at 252.

## III.    DISCUSSION

Jackson claims Dr. Smith and Nurse Dameron acted with deliberate indifference to his serious medical needs in violation of the Eighth Amendment to the United States Constitution. "The Eighth Amendment, which is applicable to the States through the Fourteenth Amendment, prohibits the infliction of 'cruel and unusual punishments.'" *Anderson v. Kingsley*, 877 F.3d 539,

543 (4th Cir. 2017) (quoting U.S. Const. amend. VIII). "Under the Eighth Amendment, prisoners have the right to receive adequate medical care while incarcerated." *DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018) (citing *Scinto v. Stansberry*, 841 F.3d 219, 236 (4th Cir. 2016)). An Eighth Amendment violation occurs when a prison official "demonstrates 'deliberate indifference' to an inmate's serious medical needs." *Id.*

"A deliberate indifference claim has two components, objective and subjective." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). The plaintiff must show he had serious medical needs (the objective component) and a defendant acted with deliberate indifference to those needs (the subjective component). *Hixson v. Moran*, 1 F.4th 297, 302 (4th Cir. 2021). A medical need is sufficiently serious for purposes of the objective component "when it has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gordon v. Schilling*, 937 F.3d 348, 356 (4th Cir. 2019) (internal quotation marks omitted).

"The subjective component requires showing that the defendant had actual subjective knowledge of both the plaintiff's serious medical condition and the excessive risk posed by the official's action or inaction." *Phoenix v. Amonette*, 95 F.4th 852, 859 (4th Cir. 2024) (internal quotation marks and brackets omitted). In other words, "[a]n official is deliberately indifferent to an inmate's serious medical needs only when he or she subjectively 'knows of and disregards an excessive risk to inmate health or safety.'" *Jackson*, 775 F.3d at 178 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "That is a higher standard for culpability than mere negligence or even civil recklessness, and as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Id.* To establish an Eighth Amendment violation, "it is not enough that an official *should* have known of a risk; he or she

must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Id.*

Additionally, the United States Court of Appeals for the Fourth Circuit "consistently" has found that mere disagreements between an inmate and a medical provider over the inmate's proper medical care "fall short of showing deliberate indifference." *Id.*; *see also Phoenix*, 95 F.4th at 859 (noting that such disagreements "do not cut it"). Likewise, "in the Eighth Amendment context, questions of medical judgment are generally 'not subject to judicial review.'" *Griffin v. Mortier*, 837 F. App'x 166, 171 (4th Cir. 2020) (quoting *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975)). To find a medical provider liable, "the treatment given must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Hixson*, 1 F.4th at 303.

Applying these standards, and after reviewing the record in light most favorable to Jackson, I conclude that Dr. Smith and Nurse Dameron are entitled to summary judgment. I will address each defendant in turn.

## A.    Dr. Smith

The medical records establish Dr. Smith personally examined Jackson on several occasions after Jackson arrived at Augusta and Dr. Smith actively took steps to address Jackson's complaints of pain and numbness in his right foot and leg. As indicated above, Dr. Smith arranged for Jackson to be evaluated by a neurosurgeon and an orthopedic specialist; he ordered Jackson be assigned to a bottom bunk; he ordered arch supports as recommended by the orthopedic specialist; and he prescribed an anti-inflammatory medication (ibuprofen) as recommended by the orthopedic specialist. *See* FR-SDT-VDOC-000088 (recommending that Jackson wear arch supports and "continue symptomatic treatment with NSAIDs as needed"). On this record, no reasonable juror

could find that Dr. Smith provided medical treatment that was so grossly inadequate or incompetent as to shock the conscience. Although Jackson asserts that Dr. Smith never examined him again after a July 2021 follow-up appointment, there is no evidence that Jackson's condition worsened to the point that another examination was medically warranted, or that Dr. Smith was made aware of any worsening pain or numbness. To the extent Jackson disagrees with any of the treatment decisions made by Dr. Smith, "such disagreements . . . fall short of showing deliberate indifference." *Jackson*, 775 F.3d at 178.

For similar reasons, Jackson has failed to establish Dr. Smith exhibited deliberate indifference by declining to issue him an ankle sleeve. Dr. Smith's declaration explains he chose to consult with and obtain recommendations from a neurosurgeon and an orthopedist after Jackson arrived at Augusta, *see* Smith Decl. ¶ 24, and it is undisputed that neither specialist recommended Jackson wear an ankle sleeve or brace. Even if another prison doctor determined an ankle sleeve was necessary or appropriate, "a disagreement among reasonable medical professionals is not sufficient to sustain a deliberate indifference claim." *Hixson*, 1 F.4th at 303; *see also Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) ("Disagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation.").

The record is also devoid of evidence from which a reasonable juror could find that Dr. Smith "disregarded an excessive risk [to Jackson's] health or safety" by declining to issue a tennis shoe pass for work. *Hixson*, 1 F.4th at 302. The record reflects Dr. Smith determined there was "no medical reason" why Jackson could not wear boots to work, which he believed would provide "more protection than a tennis shoe," and Dr. Smith based this determination on his own physical examination findings and those made by the neurosurgeon a few weeks earlier. *See* Smith Decl.

¶¶ 16, 26; FR-SDT-VDOC-000134. As the Fourth Circuit has explained, "[the] deliberate indifference standard is not satisfied by a showing of mere negligence, a mere error of judgment . . . , or mere disagreement concerning questions of medical judgment." *Germain v. Shearin*, 531 F. App'x 392, 395 (4th Cir. 2013). Thus, "where the evidence shows that a decision was based on medical judgment, a jury may not find deliberate indifference, even if other professionals would have handled the decision differently." *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 241 (7th Cir. 2021); *see also Jackson*, 775 F.3d at 178–79 ("Though hindsight suggests that Lightsey's treatment decisions may have been mistaken, even gravely so, we agree with the district court that Jackson's claim against Lightsey is essentially a disagreement between an inmate and a physician over the inmate's proper medical care, and we consistently have found such disagreements to fall short of showing deliberate indifference.") (internal quotation marks and brackets omitted).

Finally, Jackson has no viable claim for deliberate indifference against Dr. Smith based on the alleged failure to order physical therapy prescribed by a specialist. Although "[a] refusal to follow a specialist's order can reflect deliberate indifference," *Bilik v. Shearing*, 860 F. App'x 435, 439 (7th Cir. 2021), it is undisputed that none of the specialists' reports actually contained a prescription or recommendation for physical therapy. *See id.* (noting, in affirming summary judgment, that an inmate did not proffer evidence that the specialist who examined him had ordered physical therapy). Instead, the orthopedist's report indicates that he "showed [Jackson] how to perform stretching exercises" and instructed Jackson's facility "to provide arch support[s] and continue activity as tolerated." FR-SDT-VDOC-000088. Thus, while Jackson's own interactions with the orthopedist may have led him to believe that he would be receiving physical therapy at Augusta, there is no evidence from which a reasonable juror could find that Dr. Smith knowingly disregarded the treatment recommendations made by either specialist. Jackson's personal belief

14

that physical therapy would be provided is insufficient to establish Dr. Smith acted with deliberate indifference.

For these reasons, I conclude Dr. Smith is entitled to summary judgment on the Eighth Amendment claims asserted against him.

**B.      Nurse Dameron**

Jackson has also failed to put forth sufficient evidence to survive summary judgment on his Eighth Amendment claims against Nurse Dameron, who served in an administrative capacity during the time period at issue. To the extent Jackson faults Nurse Dameron for failing to respond to his requests for physical therapy in August and September 2021, he has pointed to no evidence that would allow a reasonable juror to find Nurse Dameron actually knew of and disregarded an excessive risk to his health or safety. Jackson was examined by an orthopedist in July 2021, and the specialist's written treatment plan included no referral or recommendation for physical therapy. Instead, the specialist recommended Jackson perform stretching exercises on his own. Courts have recognized that "administrative officials . . . are entitled to rely on medical judgments made by medical professionals responsible for prisoner care," *Brennan v. Headley*, 807 F. App'x 927, 938 (11th Cir. 2020) (internal quotation marks omitted), and that "nurses may generally defer to instructions given by physicians," *Holloway v. Del. Cnty. Sheriff*, 700 F.3d 1063, 1075 (7th Cir. 2012). Although "that deference may not be blind or unthinking, particularly if it is apparent that [a] physician's order will likely harm the patient," there is no evidence from which a reasonable juror could find that Nurse Dameron knew that deferring to the orthopedic specialist or any other examining physician posed an excessive risk to Jackson's health or safety.

There is also no evidence that Nurse Dameron played any role in discontinuing Jackson's medication prescriptions in November 2021. A treatment note reflects the prescription for

Cymbalta was discontinued for poor compliance and that ibuprofen—the only type of medication recommended by the orthopedic specialist— was available for inmates to purchase in the prison commissary without a prescription. It is "well established" that "the Eighth Amendment does not compel prison administrators to provide cost-free medical services to inmates who are able to contribute to the cost of their care." *Poole v. Isaacs*, 703 F.3d 1024, 1026 (7th Cir. 2012); *see also Hoffer v. Fla. Dep't of Corr.*, 973 F.3d 1263, 1276 (11th Cir. 2020) ("It is surely uncontroversial that 'the deliberate difference standard . . . does not guarantee prisoners the right to be entirely free from the cost considerations that figure in the medical-care decisions made by most non-prisoners in our society.'") (quoting *Reynolds v. Wagner*, 128 F.3d 166, 175 (3d Cir. 1997)). Although Jackson asserts he told Nurse Dameron he could not afford to regularly purchase over-the-counter medication from the commissary, he has not submitted any evidence indicating he actually lacked the funds necessary to purchase ibuprofen as needed for pain relief. Without such evidence, no reasonable juror could find that Nurse Dameron violated the Eighth Amendment by failing to help him obtain prescription pain medication. *See, e.g.*, *Franklin v. Shah*, No. 3:17-cv-00960, 2020 WL 980238, 2020 U.S. Dist. LEXIS 34253, at *16–17 (S.D. Ill. Feb. 28, 2020) (concluding that an inmate's conclusory assertion that he was unable to afford pain medication, which was unsupported by any evidence, was insufficient to avoid summary judgment on a claim of deliberate indifference asserted against a doctor who stopped prescribing pain medication and told the inmate to purchase it from the commissary); *Taylor v. Corizon Med. Servs.*, No. 1:11-cv-01436, 2013 WL 4678670, 2013 U.S. Dist. LEXIS 124411, at *12–15 (S.D. Ind. Aug. 30, 2013) (concluding that prison medical staff did not violate an inmate's Eighth Amendment rights by refusing to prescribe a fiber supplement since there was no evidence to support the inmate's contention that he could not afford to purchase the fiber supplement available in the commissary).

16

In reaching this decision, I do not condone the "snide remark" that Nurse Dameron purportedly made suggesting that Jackson "just purchase suboxone off the yard like everyone else." Pl.'s Resp. Mot. Summ. J. 8 (internal quotation marks omitted). While this alleged comment, which Nurse Dameron denies making, is completely inappropriate, it is not alone sufficient to give rise to an Eighth Amendment claim. *See Hollyfield v. Hurst*, 796 F. App'x 817, 820 (5th Cir. 2019) ("Rude or insensitive behavior towards prisoners is disgraceful conduct, but it does not alone rise to the level of deliberate indifference."); *Bismark v. Fisher*, 213 F. App'x 892, 897 (11th Cir. 2007) ("[I]t is not a violation of the Eighth Amendment for a prison physician to consult with a prisoner concerning a medical condition in an aloof or unfriendly way. Much more is required."); *Atkins v. Lofton*, 373 F. App'x 472, 473 n.1 (5th Cir. 2010) ("We do not suggest that we condone any rude or insensitive treatment Atkins may have received. However, rudeness or lack of compassion alone are insufficient to support a cause of action [under § 1983]."); *Beard v. Gusman*, No. 2:13-cv-06633, 2015 WL 422999, 2015 U.S. Dist. LEXIS 12065, at *7 (E.D. La. Feb. 2, 2015) ("Although [the medical staff's] comments were clearly insensitive, being callous or rude in the context of medical care does not an Eighth Amendment violation make.") (internal quotation marks omitted).

Finally, to the extent Jackson sought to hold Nurse Dameron responsible for the discontinuation of his bottom bunk pass in October or November 2023, it is now undisputed that Nurse Dameron was not personally involved in that decision. Accordingly, she cannot be held liable under § 1983 for the change to Jackson's bunk assignment. *See Younger v. Crowder*, 79 F.4th 373, 381 (4th Cir. 2023) ("As the Supreme Court has explained, '[i]n a § 1983 suit . . . each Government official, his or her title notwithstanding, is only liable for his or her own misconduct.'") (alterations in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)).

### IV.     CONCLUSION

For the reasons stated, the court concludes Dr. Smith and Nurse Dameron are entitled to summary judgment on Jackson's Eighth Amendment claims of deliberate indifference. Accordingly, the defendants' motion for summary judgment, ECF No. 55, is **GRANTED**. An appropriate Order will be entered.

Entered: March 20, 2025

*C. Kailani Memmer*

C. Kailani Memmer
United States Magistrate Judge

18

CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

March 20, 2025

LAURA A. AUSTIN, CLERK
BY:  s/J.Vasquez
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

DANIEL NEIL JACKSON,                 )
                                     )
        Plaintiff,                   )     Civil Action No. 7:22-cv-00090
                                     )
v.                                   )
                                     )
D. DAMERON, RN, *et al.*,            )     By: C. Kailani Memmer
                                     )     United States Magistrate Judge
        Defendants.                  )

## ORDER

For the reasons stated in the accompanying Memorandum Opinion, the defendants' motion for summary judgment, ECF No. 55, is **GRANTED**. The Clerk shall **STRIKE** this case from the court's active docket and provide a copy of this Order and the accompanying Memorandum Opinion to the parties.

Entered: March 20, 2025

*C. Kailani Memmer*

C. Kailani Memmer
United States Magistrate Judge

JA072

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

DANIEL NEIL JACKSON
  Plaintiff

Civil Action No. 7:22-cv-00090

V.

D. DAMERON, RN, et al.,
  Defendants.

CLERK'S OFFICE U.S. DISTRICT. COURT
AT ROANOKE, VA
FILED

APR 1 0 2025

LAURA A. AUSTIN, CLERK
BY: _____
DEPUTY CLERK

## NOTICE OF APPEAL

I am appealing the Summary Judgement
decision made in this case to the Fourth
Circuit Court of Appeals.

Daniel Neil Jackson
# 1182398

April 6, 2025

Daniel Neil Jackson #1182398
G.R.O.C.
P.O. Box 1000
Chatham, VA 24531

GREENSBORO NC   270
PIEDMONT TRIAD AREA
8 APR 2025   PM 1  L



United States District Court
Office of the Clerk
210 Franklin Rd., Rm 540
Roanoke, VA 24011

RECEIVED

APR 10 2025

USDC Clerk's Office
Mail Room

24011-220840

JA074

**CERTIFICATE OF SERVICE**

I hereby certify that on July 10, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the ECF/ACMS system.

Participants in the case who are registered CM/ECF users will be served by the ECF/ACMS system.

Date: July 10, 2025.

*/s/ Samuel Weiss*
Samuel Weiss
Rights Behind Bars
1800 M St. NW Front 1, #33821
Washington, DC 20033

*Counsel for Plaintiff-Appellant*
*Daniel Jackson*