# United States Court of Appeals
## *for the*
# Fourth Circuit

DANIEL NEIL JACKSON,

*Plaintiff-Appellant,*

— v. —

D. DAMERON, RN; DR. K. SMITH,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF VIRGINIA AT ROANOKE

## BRIEF OF DEFENDANTS-APPELLEES

GRACE MORSE-MCNEILS
FRITH, ANDERSON & PEAKE, PC
3957 Westerre Parkway, Suite 360
Glen Allen, Virginia 23233
(804) 362-0078

— and —

NATHAN HENRY SCHNETZLER
FRITH, ANDERSON & PEAKE, PC
29 Franklin Road SW
Roanoke, VA 24011
(540) 725-3371

*Attorneys for Defendants-Appellees*

CP COUNSEL PRESS   (800) 4-APPEAL • (813454)

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

### DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. <u>25-6295</u>     Caption: <u>Daniel Jackson v D. Dameron et al</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>Derinda Dameron</u>
(name of party/amicus)

_____

who is <u>     Appelle     </u>, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.     Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.     Does party/amicus have any parent corporations?  ☐ YES ☑ NO
     If yes, identify all parent corporations, including all generations of parent corporations:

3.     Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO
     If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct
    financial interest in the outcome of the litigation?                          ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)     ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected
    substantially by the outcome of the proceeding or whose claims the trade association is
    pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?                           ☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
    party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
    caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
    corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?           ☐YES ☒NO
    If yes, the United States, absent good cause shown, must list (1) each organizational
    victim of the criminal activity and (2) if an organizational victim is a corporation, the
    parent corporation and any publicly held corporation that owns 10% or more of the stock
    of victim, to the extent that information can be obtained through due diligence.

Signature: _____     Date: _____4/25/2025_____

Counsel for: Kyle Smith, MD & Derinda Dameron

Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. __25-6295__          Caption: __Daniel Jackson v D. Dameron et al__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Kyle Smith, M.D.__

(name of party/amicus)

_____

 who is _____Appelle_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?   ☐YES ☑NO


2.    Does party/amicus have any parent corporations?                              ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:




3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                              ☐YES ☑NO
      If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?  ☐YES ☑NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim?  ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: _____     Date: _____4/25/2025_____

Counsel for: Kyle Smith, MD & Derinda Dameron

- 2 -

Print to PDF for Filing

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................ii

STATEMENT OF THE ISSUES.............................................................1

STATEMENT OF THE CASE ...............................................................1

    I.    Jackson Files His Complaint..................................................1

    II.   Jackson Files an Amended Complaint...................................2

    III.   Appellees File a Partial Motion to Dismiss
        and Motion for Summary Judgment .....................................5

SUMMARY OF ARGUMENT ...............................................................7

ARGUMENT ........................................................................................8

    I.    Standard of Review ...............................................................9

    II.   Jackson Failed to Preserve any ADA
        or Due Process Claim ...........................................................11

    III.   Jackson's Argument on Appeal Extends Liberal
        Construction of Pro Se Complaints Too Far .........................12

    IV.   Jackson Failed to Name Proper Defendants for
        Purposes of an ADA Claim or Due Process Claim................18

CONCLUSION ....................................................................................22

CERTIFICATE OF COMPLIANCE .......................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

Ashcroft v. Iqbal,
  556 U.S. 662 (2009) .......................................................... 9, 21

Baird ex rel. Baird v. Rose,
  192 F.3d 462 (4th Cir. 1999) ................................................ 18

Beaudett v. City of Hampton,
  775 F.2d 1274 (4th Cir. 1985) ................................... 10, 17, 18

Brickwood Contrs., Inc. v. Datanet Eng'g, Inc.,
  369 F.3d 385 (4th Cir. 2004) ................................................ 11

Cook v. James,
  100 F. App'x 178 (4th Cir. 2004) .......................................... 21

Doe v. Va. Polytechnic Inst. & State Univ.,
  77 F.4th 231 (4th Cir. 2023) ................................................... 9

Erickson v. Pardus,
  551 U.S. 89 (2007) ................................................................. 9

Johnson v. City of Shelby,
  574 U.S. 10 (2014) ......................................................... 13, 14

Johnson v. City of Shelby,
  743 F.3d 59 (5th Cir. 2013) ................................................. 14

Jones v. Sternheimer,
  387 F. App'x 366 (4th Cir. 2010 .......................................... 18

Laber v. Harvey,
  483 F.3d 404 (4th Cir. 2006) ......................................... 15, 16

Shaw v. Foreman,
  59 F.4th 121 (4th Cir. 2022) ...................................... 9, 10, 14

Stanton v. Elliott,
  25 F.4th 227 (4th Cir. 2021) ................................................ 13

Stanton v. Elliott,
  No. 2:19cv49, 2021 WL 217610, 2021 U.S. Dist. LEXIS 10917
  (N.D.W. Va. Ja. 21, 2021) ....................................................................... 13

United States v. Dunkel,
  927 F.2d 955 (7th Cir. 1991) .................................................................. 7

Vinnedge v. Gibbs,
  550 F.2d 926 (4th Cir. 1977) ................................................................ 21

Wright v. Collins,
  766 F.2d 841 (4th Cir. 1985) ................................................................ 21

**Statutes & Other Authorities:**

U.S. Const. amend. VIII ................................................................ 3, 5, 11

28 U.S.C. § 1915A ............................................................................. *passim*

42 U.S.C. § 12132 ......................................................................... 8, 18

42 U.S.C. § 1983 ............................................................................. *passim*

42 U.S.C. § 1997e(g)(1) ...................................................................... 3

Fed. R. Civ. P. 12 ................................................................................ 8

Fed. R. Civ. P. 12(b)(6) ............................................................... 5, 9, 18

Fed. R. Civ. P. 17(b)(3) ................................................................... 19

Fed. R. Civ. P. 56(d) ........................................................................ 5

Fed. R. Civ. P. 59 .............................................................................. 2

Va. Code § 53.1-1 ............................................................................ 19

Va. Code § 53.1-10(1) ...................................................................... 19

Va. Code § 53.1-18 .......................................................................... 19

Va. Code § 53.1-31 .......................................................................... 19

Va. Code § 53.1-262 ........................................................................ 19

## STATEMENT OF THE ISSUES

Whether Daniel Jackson ("Jackson") forfeited his right to pursue any claim under the Americans with Disabilities Act ("ADA") or the Due Process Clause of the United States Constitution?

Whether the District Court erred by failing to interpret Jackson's allegations as stating claims for violations of the ADA and the Due Process Clause?

## STATEMENT OF THE CASE

### I.   Jackson Files His Complaint

Jackson brought this prisoner civil rights action in February 2022 against D. Dameron, RN, Dr. K. Smith, and the "Augusta Correctional Center Medical Department." JA8.

In his original Complaint, Jackson claimed that he suffered from nerve damage in his right leg, which caused him pain, and had a prescription for pain medication, an ankle sleeve, and "bottom bunk" status. JA9. Upon his transfer to Augusta Correctional Center, prison staff confiscated Jackson's ankle sleeve, and Dr. Kyle Smith ("Dr. Smith") failed to follow-up on the matter and failed to address any of Jackson's complaints of pain in his damaged leg. Id.

Jackson also alleged that Dr. Smith refused to give Jackson a medical exemption to wear regular shoes instead of boots while working in the prison apparel shop. Id. Because of the pain from wearing boots, Jackson resigned from his position in the apparel shop. Id.

Finally, Jackson alleged that his prescribed pain medication was discontinued in October 2021. JA10. Nurse Derinda Dameron ("Nurse Dameron") told him that ibuprofen was available through the prison commissary, and when Jackson told her he could not afford ibuprofen, Dameron told him to "buy some suboxone off the yard like everyone else does." Id.

The District Court screened Jackson's Complaint pursuant to 28 U.S.C. § 1915A and dismissed the "Augusta Correctional Center Medical Department" as a defendant. JA13; JA16. Jackson did not seek reconsideration of that decision pursuant to Rule 59 of the Federal Rules of Civil Procedure.

## II.  Jackson Files an Amended Complaint

Thereafter, Jackson filed a "Motion for Leave to File a Supplemental Complaint," JA4, USDC Doc. No. 34, which was subsequently docketed as an Amended Complaint. JA4, USDC Doc. No.

38; JA27–35. Jackson did not name any new defendants in the style of the Amended Complaint and did not request that it be served on any new defendants.

Dr. Smith and Nurse Dameron filed a waiver of answer pursuant to 42 U.S.C. § 1997e(g)(1). JA17. Jackson filed a "Response to Waiver of Answer" but made no mention of the ADA or the Due Process Clause in that filing. JA21–24. Instead, Jackson stated, "The claims outlined in the initial filing, and *clarified in the amended complaint, clearly fall under the Eighth Amendment, and meet the standards for serious medical need and deliberate indifference on the part of the Defendants.*" JA21 (emphasis added). He also claimed to have exhausted his administrative remedies "prior to filing the 1983 complaint." JA22–23.

In the Amended Complaint, Jackson alleged that he had a prescription for a support sleeve for his ankle, pain medications, and a medically assigned bottom bunk. JA27. After staff confiscated his ankle sleeve, Jackson met with Dr. Smith three times about the support sleeve. JA28. Each time Dr. Smith told Jackson he would "look into" getting the support sleeve reissued but never did reissue it. Id. As a result, Jackson alleged the muscles in his leg deteriorated. Id.

3

In May of 2021, Jackson requested a "tennis shoe pass" to exempt him from wearing "state boots" while working in the prison apparel plant. Id. According to Jackson, the boots caused him pain and loss of feeling in his leg. Id. Dr. Smith refused to issue the tennis shoe pass, and Jackson resigned from his job because of the pain from wearing the boots. JA29. In June 2021, Jackson claimed a neurologist prescribed him soft-soled shoes and insoles the following month. Id.

Apparently, Jackson's pain medications were discontinued in October of 2021, and Jackson's attempts to renew his medications "were outright ignored *due to [Jackson's] pursuit of the 1983 Complaint*." JA31. (emphasis added). Jackson's ankle sleeve and medications were reissued in August of 2023 when a new doctor began treating inmates at the prison. Id.

In October 2023, Jackson's bottom bunk status expired even though it had just been renewed in June of 2023. JA31–32. Jackson then saw a different physician, Dr. Gomez, the following month, and Dr. Gomez said that Jackson should be on "medical bottom bunk status" and that the removal of Jackson's bottom bunk status had been done at the urging of Nurse Dameron. JA32. Jackson claimed Nurse Dameron did this "as retaliation for *the 1983 civil suit*." Id. (emphasis added).

In the Amended Complaint's section titled "Legal Claims," Jackson stated that his allegations "indicat[e] a *deliberate indifference to medical needs* by Dr. K. Smith and RN Derinda Dameron . . . which violated . . . Jackson's rights and *constituted cruel and unusual punishment under the Eighth Amendment* to the United States Constitution." JA33–34 (emphasis added).

## III. Appellees File a Partial Motion to Dismiss and Motion for Summary Judgment

Dr. Smith and Nurse Dameron moved to dismiss the Amended Complaint in part pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. JA37. Jackson made no mention of the ADA or the Due Process Clause in his opposition. JA5, USDC Doc. No. 50.

Before the District Court ruled on the partial motion to dismiss, Dr. Smith and Nurse Dameron moved for summary judgment. JA39. Jackson moved for relief under Federal Rule of Civil Procedure 56(d) but made no mention of the ADA or Due Process Clause. JA5, USDC Doc. No. 58.

The District Court ordered Dr. Smith and Nurse Dameron to provide Jackson with any of his medical records they obtained from the Virginia Department of Corrections. JA5, USDC Doc. No. 59. When he ultimately filed his opposition, Jackson again made no mention of the

specter of an ADA or due process claim. JA6, USDC Doc. No. 65. The District Court afforded Jackson the opportunity to file an additional response, but he did not do so. JA6, USDC Doc. No. 66.

Despite the District Court (and appellees) characterizing Jackson's claims as claims for deliberate indifference to serious medical needs on multiple occasions, Jackson did not once contend that he was pursuing any other causes of action.

The District Court dismissed Jackson's retaliation claim against Nurse Dameron, JA53, and subsequently granted appellees' motion for summary judgment, JA72.

In its summary judgment decision, the District Court determined that it was undisputed that Dr. Smith arranged for Jackson to be evaluated by a neurosurgeon and an orthopedic specialist, ordered Jackson to be assigned to a bottom bunk, and implemented the treatment recommendations of the orthopedic specialist. JA65. It was undisputed that neither the neurologist nor the orthopedic specialist recommended Jackson wear an ankle sleeve or brace. JA66. There was no medical reason why Jackson could not wear boots to work based on Dr. Smith's physical examination findings and those made by the neurosurgeon. Id.

Neither of the specialists recommended physical therapy for Jackson. JA67. Nurse Dameron did not play any role in discontinuing Jackson's medications. JA68. And Jackson conceded that Dameron played no role in the decision to discontinue Jackson's bottom bunk status. JA62.

This appeal followed. JA73.[1]

## SUMMARY OF ARGUMENT

There can be no room for dispute that a pro se plaintiff is entitled to liberal construction of his pleadings. But judges are not advocates, nor should they be. The consequence of Jackson's argument on appeal is to strip away Lady Justice's blindfold and have district judges (and their clerks) scour pro se pleadings to identify every conceivable cause of action under state, federal, or common law supported by the factual allegations. This the Court should not do. After all, "judges are not like pigs, hunting for truffles buried in" the pleadings, United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991), particularly where, as here, the pro se plaintiff had multiple opportunities to correct the District Court's and the appellees' understanding of the nature of his claims but failed to do so.

---

[1] Jackson failed to file a Docketing Statement and did not timely file his opening brief.

## ARGUMENT

Appellees are in the odd position in that it does not appear entirely clear that Jackson seeks to revive any claims against them with this appeal. Rather, Jackson couches the ADA claim as one against "a state agency." Appellant's Br., *8.[2] And his allegations related to the Due Process Clause impugned neither Dr. Smith nor Nurse Dameron but rather a third party. Yet, he repeatedly references the "defendants" generally throughout his brief.

Muddying waters further is that it is unclear as to which Order Jackson assigns error. Was it the District Court's 28 U.S.C. § 1915A screening decision? Or was it the District Court's subsequent ruling on appellees' partial motion to dismiss? Jackson's opening brief offers neither an answer nor an inference as to either, other than fleeting references to the District Court's "failure to recognize Jackson's claims under a Rule 12 standard . . . ." Appellant's Br., *10; see also id., at *1.

What is clear is that Jackson does not assign error to the District Court's dismissal of the retaliation claim against Nurse Dameron or the District Court's summary judgment decision, a death knell, perhaps, to

---

[2] See also Appellant's Br., *1, *11 (citing 42 U.S.C. § 12132).

his attempt to pursue any ADA claim in light of the undisputed facts below. In any event, Jackson's arguments on appeal are unavailing, and the District Court's ruling(s) should be affirmed.

## I.   Standard of Review

This Court reviews a District Court's dismissal pursuant to 28 U.S.C. § 1915A or Rule 12(b)(6) of the Federal Rules of Civil Procedure *de novo*. Doe v. Va. Polytechnic Inst. & State Univ., 77 F.4th 231, 236 (4th Cir. 2023); Shaw v. Foreman, 59 F.4th 121, 126–27 (4th Cir. 2022).

The Court must "accept as true the well-pled allegations of the Complaint and construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." Id. (internal quotations omitted). Pleadings that offer mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not suffice. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotations omitted).

No matter how "inartfully pleaded," the pleadings of pro se plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551, U.S. 89, 94 (2007). Indeed, in recent years this Court has stressed the importance of interpreting pro

se pleadings "to raise the strongest argument that they suggest." <u>Shaw v. Foreman</u>, 59 F. 4th 121, 127 (4th Cir. 2023).

"Principles of generous construction of pro se complaints, are not, however, without limits." <u>Beaudett v. City of Hampton</u>, 775 F.2d 1274, 1278 (4th Cir. 1985). As Judge Wilkinson observed in <u>Beaudett</u> forty years ago, liberal construction does not require district courts "to conjure up questions never squarely presented to them. District judges are not mind readers. Even in the case of pro se litigants, they cannot be expected to construct full blown claims from sentence fragments . . . ." <u>Id.</u> Particularly poignant to this appeal, Judge Wilkinson admonished:

> Nor should appellate courts permit those same fleeting references to preserve questions on appeal. In the light of hindsight, of course, and with the benefit of counsel on appeal, issues may be brought before this court that were never fairly presented below. We will not, however, require the district courts to anticipate all arguments that clever counsel may present in some appellate future. To do so would not only strain judicial resources by requiring those courts to explore exhaustively all potential claims of a pro se plaintiff, but would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party.

<u>Id.</u>

## II. Jackson Failed to Preserve any ADA or Due Process Claim

A party who fails to make a timely assertion of a right forfeits the issue. See Brickwood Contrs., Inc. v. Datanet Eng'g, Inc., 369 F.3d 385, 395 n.7 (4th Cir. 2004). Here, Jackson had multiple opportunities to inform the District Court of his intent to pursue independent ADA and due process claims, but he failed to do so. Accordingly, he forfeited his right to pursue those claims and failed to preserve these issues for appellate review.

Jackson did not move for reconsideration or otherwise raise the issue of an ADA claim when the District Court *sua sponte* dismissed the improperly named "Augusta Correctional Center Medical Department" defendant. In his motion for leave to file an amended complaint, Jackson described his original Complaint as a claim for deliberate indifference to serios medical needs. JA21. In his Amended Complaint, Jackson did not add any new defendants and stated Dr. Smith and Nurse Dameron's actions constituted "deliberate indifference to [his] medical needs . . . cruel and unusual punishment under the Eighth Amendment to the United States Constitution." JA33–34.

As to due process, Jackson never attempted to add a defendant who allegedly violated his due process rights. See JA32–33. Jackson's

allegations did not implicate any due process violation by either Dr. Smith or Nurse Dameron. Id. Rather, a third party allegedly did so, and Jackson never gave any indication to the District Court that he wanted that individual to be added as a defendant in the suit.

In response to appellees' partial motion to dismiss and motion for summary judgment, Jackson again failed to reference any claim under the ADA or Due Process Clause. He certainly did not point out to the District Court or appellees that appellees had failed to address these claims in their dispositive motions either. Accord Appellant's Br., *9.

Accordingly, because Jackson had multiple opportunities to inform the District Court of the supposed true nature of his claims but failed to do so, he forfeited his right to pursue those claims and argue on appeal that the District Court erred by failing to recognize any such claims.

## III. Jackson's Argument on Appeal Extends Liberal Construction of Pro Se Complaints Too Far

District courts need not conjure claims from whole cloth. This Circuit's precedent demonstrates that the plaintiff's pleadings and expressed intent drive the interpretation of pro se complaints. Jackson's unequivocal statements below demonstrated that he was pursuing nothing more than a deliberate indifference claim against appellees. The cases relied on by

Jackson in his opening brief regarding liberal construction of pleadings are inapposite to Jackson's actions—or lack thereof—and the circumstances before the District Court

In <u>Stanton v. Elliott</u>, 25 F.4th 227 (4th Cir. 2021), a district court granted summary judgment to the defendants on a plaintiff's state law wrongful death claim. <u>Id.</u> at 237. The district court in that case reasoned that the plaintiff's failure to expressly plead a wrongful death claim under West Virginia state law—as opposed to the battery and negligence claims in Counts III and IV of the complaint, respectively—barred the plaintiff from pursuing a wrongful death claim. <u>Stanton v. Elliott</u>, No. 2:19cv49, 2021 WL 217610, 2021 U.S. Dist. LEXIS 10917, *18–20 (N.D.W. Va. Ja. 21, 2021). Notably, and contrary to this case, the plaintiff argued before the District Court that the wrongful death claim had been properly plead. <u>Id.</u> at *20. On appeal, this Court reversed. <u>Stanton</u>, 25 F.4th at 237–38.

In <u>Johnson v. City of Shelby</u>, 574 U.S. 10 (2014) a district court awarded defendants summary judgment because a group of plaintiffs failed to cite 42 U.S.C. § 1983 in their complaint for alleged civil rights violations. <u>Id.</u> at 10. The Fifth Circuit affirmed based on its precedent that citing 42 U.S.C. § 1983 was "not a mere pleading formality" for pursuing such claims.

Johnson v. City of Shelby, 743 F.3d 59, 62 (5th Cir. 2013) (per curiam). The Supreme Court reversed. Johnson, 574 U.S. at 11. Again, however, there was no question that the plaintiffs in that case apprised the district court of their intent to pursue claims through 42 U.S.C. § 1983 even if they had not expressly invoked the statute in their complaint.

Finally, in Shaw v. Foreman, 59 F.4th 121 (4th Cir. 2022), a pro se plaintiff asserted a procedural due process claim and a First Amendment retaliation claim against several defendants. Id. at 125. The district court read the plaintiff's complaint to assert a procedural due process violation based on the plaintiff's liberty interest in avoiding administrative segregation while in prison. Id. at 125. In turn, the district court dismissed that claim pursuant to 28 U.S.C. § 1915A. Id. at 126–27. On appeal, and with the benefit of counsel, the plaintiff argued other factual allegations supported his claimed liberty interest, namely avoiding transfer to a maximum-security prison. Id. at 127. This Court agreed and reversed and remanded the case. Id. at 127–28.

At first glance, Shaw might appear to help Jackson's argument, but the correlation does not withstand scrutiny when compared to the circumstances of this case. In Shaw, the plaintiff was clearly pursuing a

procedural due process claim. The district court merely failed to appreciate other factual allegations that could serve as potential grounds for a cognizable liberty interest to support that same claim.

Here, by contrast, Jackson's newly invented ADA and due process claims are entirely separate types of causes of action from Jackson's deliberate indifference and retaliation claims. This case is not a mere failure to cite a statute or a district court's oversight of factual allegations possibly supporting the same cause of action already identified in the complaint. Rather, Jackson made clear in his multiple filings that he was pursuing only a deliberate indifference claim against appellees. His references to the loss of his job in the apparel shop and the alleged due process violations were merely background information.

Indeed, this case is akin to the circumstances underlying this Court's opinion in Laber v. Harvey, 483 F.3d 404 (4th Cir. 2006). In Laber, a pro se plaintiff filed a complaint alleging religious discrimination, age discrimination, and retaliation by the United States Army. Id., at 412–13. While that complaint referenced religious discrimination, it did not seek a judicial determination as to whether the plaintiff had been discriminated against on the basis of his religion. Id.

After the district court awarded the Army summary judgment, the plaintiff filed a motion for reconsideration and a motion to amend, arguing that he did intend to pursue a religious discrimination claim. Id., at 414.

The plaintiff appealed the denial of those motions, and this Court, sitting en banc, noted that the reference to religious discrimination was merely "background information; in other words, while Laber alleges that the underlying discrimination occurred, he explicitly refrained from seeking a judicial determination of the discrimination." Id., at 413 n.3.

The plaintiff's other filings in the District Court also led this Court to conclude that the religious discrimination claim was not at issue. Id. Despite the plaintiff's filing of a motion to reconsider and a motion to amend, this Court concluded that plaintiff failed to "disabuse either the Army or the district court of any alleged misunderstanding of his religious discrimination claim." Id. Thus, for this Court to have held that the plaintiff's complaint sought "a judicial determination of the Army's alleged religious discrimination" would have been a complete rewriting of the complaint, not a liberal interpretation of it. Id. So, this Court affirmed.

Likewise, in <u>Beaudett</u>, the sole relief sought by a pro se plaintiff was a jury trial in his personal injury action even though the complaint also mentioned "a desire to charge the defendants with 'collusion[.]'" <u>Beaudett</u>, 775 F.2d at 1278. His arguments in motions, however, focused only on his desire for a jury trial in the personal injury action. <u>Id.</u>

On appeal, with the benefit of counsel, the plaintiff sought to pursue new claims for "a vagueness and overbreadth challenge to the Hampton loitering ordinance," selective prosecution, and that he was jailed solely because he was indigent and unable to pay fines. <u>Id.</u> This Court concluded there was no error in the district court's failure to "develop and resolve these serious charges from such scant assertions." <u>Id.</u> The panel went on to observe,

> Whatever other legal disputes Beaudett may have had were not brought before the court by the invocation of legal principles at a level of generality so high as to be obscure, especially in light of Beaudett's overwhelming emphasis on his desire for a trial by jury. In this context, we see no error in the district court's sense of what this lawsuit was about.

<u>Id.</u>

Jackson's opening brief asks this Court to direct every district court in this Circuit to conceive of *every* plausible claim for relief that might remotely be supported by the allegations. Such a rule would "strain judicial resources

by requiring those courts to explore exhaustively all potential claims of a *pro se* plaintiff, but would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." Beaudett, 775 F.2d at 1278.

Here, Jackson repeatedly couched his complaint as one for deliberate indifference to medical needs and despite repeated opportunities for him to disabuse the District Court and appellees of that notion, he failed to do so. Therefore, there was no error in the District Court's 28 U.S.C. § 1915A or Rule 12(b)(6) decisions.

## IV.   Jackson Failed to Name Proper Defendants for Purposes of an ADA Claim or Due Process Claim

Additionally, the District Court's construction of Jackson's Complaint and Amended Complaint was not erroneous because Jackson did not even name the proper defendants for purposes of an ADA or due process claim.

First, neither Dr. Smith nor Nurse Dameron are proper defendants for an ADA claim because the ADA does not permit civil actions for damages against persons sued in their individual capacities. See, e.g., Baird ex rel. Baird v. Rose, 192 F.3d 462, 472 (4th Cir. 1999); Jones v. Sternheimer, 387 F. App'x 366, 368 (4th Cir. 2010) (per curiam); see also 42 U.S.C. § 12132

(providing a remedy only against a "public entity"). Jackson concedes this in his opening brief. See Appellant's Br., *8.

The proper defendant in a case alleging ADA violations in a correctional facility is the agency overseeing the facility, which, in this case, would be the Virginia Department of Corrections. Jackson did not name the Virginia Department of Corrections. Instead, he named "Augusta Correctional Center Medical Department." But neither the Augusta Correctional Center Medical Department nor the Augusta Correctional Center is an entity capable of being sued under Virginia law.

The capacity to sue or be sued is determined by state law. Fed. R. Civ. P. 17(b)(3). A state correctional facility is defined as "any correctional center or correctional field unit used for the incarceration of adult offenders established and operated by the Department of Corrections, or operated under contract pursuant to § 53.1-262." See Va. Code § 53.1-1. The Director of the Virginia Department of Corrections has the duty and power to supervise and manage state correctional facilities. Va. Code § 53.1-10(1). The State Board of Corrections owns the real and personal property of state correctional facilities and is the party authorized to sue to protect that property. See Va. Code § 53.1-18; Va. Code § 53.1-31. The "Augusta

Correctional Center Medical Department" certainly does not have the capacity to sue or be sued, and there is no Virginia statute granting state correctional facilities such as Augusta Correctional Center the capacity to sue or be sued either.

Given Jackson's failure to name a proper defendant for an ADA claim and his repeated assertions that he was pursuing a claim for deliberate indifference, the District Court did not err in its construction of Jackson's Complaint and Amended Complaint.

As to the due process claim, Jackson did not allege any facts to suggest that either Dr. Smith or Nurse Dameron violated his due process rights. Instead, he identified another individual but never sought to add that person as a defendant. In the Amended Complaint, Jackson alleged that Nurse Dameron's husband, "Lt. Lokey," (1) ordered a urinalysis screen of Jackson without cause; (2) falsely claimed Jackson tested positive for opioids; (3) falsely stated that Jackson admitted to using opioids; and (4) fabricated a questionnaire he claimed to have given Jackson, which resulted in Jackson receiving a fine. JA32–33. He did not allege Dr. Smith or Nurse Dameron played any role in that investigation and disciplinary charge.

To establish liability for purposes of an individual capacity claim under § 1983, the plaintiff must show "'that the official charged acted personally in the deprivation of the plaintiff's rights.'" <u>Wright v. Collins</u>, 766 F.2d 841, 850 (4th Cir. 1985) (quoting <u>Vinnedge v. Gibbs</u>, 550 F.2d 926, 928 (4th Cir. 1977)); <u>Cook v. James</u>, 100 F. App'x 178, 180 (4th Cir. 2004) (citing <u>Wright</u>, 766 F.2d at 850)). To be liable, the defendant "must have had personal knowledge of and involvement in the alleged deprivation" of the plaintiff's rights. <u>Id.</u> This requires facts showing that the defendant "through [his or her] own actions" violated the Constitution. <u>Iqbal</u>, 556 U.S. at 676.

Jackson failed to add Lt. Lokey as a defendant. There were no allegations of personal involvement by either Dr. Smith or Nurse Dameron. And Jackson repeatedly framed his claim as one for deliberate indifference. Thus, the District Court did not err in its construction of Jackson's Complaint and Amended Complaint and appropriately construed Jackson's pleadings due to Jackson's failure to identify proper defendants for either claim.

## CONCLUSION

For the foregoing reasons, appellees respectfully ask this Court to affirm the District Court's award of judgment for Dr. Smith and Nurse Dameron.

Respectfully Submitted,

D. DAMERON, RN and DR. K. SMITH

/s/ Nathan H. Schnetzler
Nathan H. Schnetzler (VSB #: 86437)
FRITH ANDERSON & PEAKE, PC
29 Franklin Road, S.W.
Post Office Box 1240
Roanoke, Virginia 24006-1240
Phone: 540/772-4600
Fax:    540/772-9167
Email: nschnetzler@faplawfirm.com

Grace Morse McNelis (VSB#: 75957)
FRITH ANDERSON & PEAKE, PC
3957 Westerre Pkway, Suite 360
Glen Allen, Virginia 23233
Phone: 804/362-0078
Fax:    540/772-9167
Email: gmorsemcnelis@faplawfirm.com

*Attorneys for Appellees*

# CERTIFICATE OF COMPLIANCE

1.     This document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

    This document contains <u>4,300</u> words.

2.     This document complies with the typeface requirements because:

    This document has been prepared in a proportional spaced typeface using Microsoft Word in 14-point <u>Century Schoolbook</u>.

/s/ Nathan H. Schnetzler
Nathan H. Schnetzler (VSB #: 86437)
FRITH ANDERSON & PEAKE, PC
29 Franklin Road, S.W.
Post Office Box 1240
Roanoke, Virginia 24006-1240
Phone: 540/772-4600
Fax:    540/772-9167
Email: nschnetzler@faplawfirm.com

Grace Morse McNelis (VSB#: 75957)
FRITH ANDERSON & PEAKE, PC
3957 Westerre Pkway, Suite 360
Glen Allen, Virginia 23233
Phone: 804/362-0078
Fax:    540/772-9167
Email: gmorsemcnelis@faplawfirm.com

*Attorneys for Appellees*