**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 25-6295**

---

DANIEL NEIL JACKSON,

    Plaintiff - Appellant,

  v.

D. DAMERON, RN; DR. K. SMITH,

    Defendants - Appellees.

---

Appeal from the United States District Court for the Western District of Virginia, at Roanoke.  Michael F. Urbanski, Senior District Judge; Cathleen Kailani Memmer, Magistrate Judge.  (7:22-cv-00090-CKM)

---

Argued:  December 9, 2025         Decided:  March 30, 2026

---

Before AGEE and QUATTLEBAUM, Circuit Judges, and FLOYD, Senior Circuit Judge.

---

Affirmed by published opinion. Judge Quattlebaum wrote the opinion, in which Judge Agee joined. Judge Floyd wrote a dissenting opinion.

---

**ARGUED:** Samuel David Kinder Weiss, RIGHTS BEHIND BARS, Washington, D.C., for Appellant.  Nathan Henry Schnetzler, FRITH, ANDERSON & PEAKE, PC, Roanoke, Virginia, for Appellees.  **ON BRIEF:**  Grace Morse-McNelis, FRITH, ANDERSON & PEAKE, PC, Glen Allen, Virginia, for Appellees.

---

QUATTLEBAUM, Circuit Judge:

When a district court screens a pro se prisoner's complaint under the Prison Litigation Reform Act, it must construe the pleadings liberally and in favor of the strongest arguments they suggest. But that does not mean that the district court becomes the plaintiff's legal advocate; nor does it require the court to conjure up every claim imaginable from the plaintiff's allegations. This appeal involves the intersection of these principles. Because the district court's construction of the plaintiff's complaint here does not run afoul of the considerations afforded to pro se parties, we affirm the judgment in favor of the defendants below.

## I.

While Daniel Jackson was an inmate at the Augusta Correctional Center in Craigsville, Virginia, he filed a pro se form complaint for prisoners wishing to assert claims under 42 U.S.C. § 1983.[1] He sued three defendants—Augusta's medical department and two individual healthcare providers at Augusta, Dr. Kyle Smith and Nurse Derinda Dameron.

In one field, the form complaint instructed Mr. Jackson:

State briefly the facts in this complaint. Describe what action(s) each defendant took in violation of your federal rights and include the relevant dates and places. **Do not give any legal arguments or cite any cases or**

---

[1] Section 1983 allows plaintiffs to bring claims against state actors for alleged violations of their constitutional rights. 42 U.S.C. § 1983. Because the issue on appeal concerns the district court's characterization of the allegations in Mr. Jackson's complaint, we recite the facts as alleged in the complaint, which "we accept as true and view in the light most favorable to [Mr. Jackson]." *Moretti v. Thorsdottir*, 157 F.4th 352, 356 (4th Cir. 2025).

**statutes**. If necessary, you may attach additional page(s). Please write legibly.

J.A. 11.[2] In line with this bolded direction, Mr. Jackson organized his initial complaint into three "Claim(s)." J.A. 9. And as directed, he did not reference any cases or statutes, nor did he articulate any legal theories of liability.

In his first claim, Mr. Jackson alleged that, while incarcerated elsewhere, he suffered from numbness in his right heel and from pain in his right knee, hip and Achilles. Outside specialists diagnosed nerve damage and prescribed him pain medication, an ankle sleeve for support, a bottom bunk for sleeping and follow-up visits with a neurologist. When Mr. Jackson was transferred to Augusta, his ankle sleeve was confiscated without justification. Dr. Smith refused to follow up with him about his ankle sleeve. In addition, Augusta officials put Mr. Jackson in a cell that required him to walk up and down stairs multiple times a day to receive his medications and food. The denial of Mr. Jackson's ankle sleeve and his placement in this cell caused him increased pain in his leg, which Dr. Smith did not address.

In his second claim, Mr. Jackson described his employment in Augusta's apparel shop. Apparel shop employees were required to wear boots or obtain a medical exemption. Boots caused Mr. Jackson pain, so he requested an exemption from Dr. Smith. But Dr.

---

[2] We do not embrace the prison's form, but, unlike our colleague in dissent, we see no basis that it "may have signaled to the district judge to solely identify constitutional claims notwithstanding the required liberal construction." Diss. Op. at 24 n.1. To the contrary, the district court told us it construed Mr. Jackson's complaint under 28 U.S.C. § 1915A, and we presume it knows our circuit's requirements for construing the allegations of pro se plaintiffs. Not only that, we conclude the district court followed those precedents here.

Smith told Mr. Jackson that an exemption did not exist and that, even if the prison could issue one, he would not provide one to Mr. Jackson. Dr. Smith did not provide a medical reason for refusing Mr. Jackson's request; he just did not want to issue an exemption to Mr. Jackson. Eventually, Mr. Jackson's pain caused him to quit. He was out of work for approximately half a year.

In his third claim, Mr. Jackson alleged that he was prescribed pain medication and physical therapy to treat his condition. But Dr. Smith never provided physical therapy to Mr. Jackson. Nor did Dr. Smith and Nurse Dameron, in response to numerous requests from Mr. Jackson, follow up with him about his ongoing medical problems. In addition, the prison stopped providing pain medications to Mr. Jackson. Nurse Dameron told Mr. Jackson that he could purchase ibuprofen at the commissary and that the medical department was not responsible for that treatment, even when he told her that he could not afford the cost of his daily dose. And after Mr. Jackson requested multiple times to see a doctor about renewing his prescriptions, Nurse Dameron told him to buy Suboxone in the prison yard like other inmates did.

Mr. Jackson sought compensation for roughly $420.00 in lost wages from when he was out of work, treatment for his pain and compensation for his physical and mental suffering.

Under 28 U.S.C. § 1915A, the district court screened Mr. Jackson's complaint. It construed Mr. Jackson's complaint to assert claims against Dr. Smith and Nurse Dameron for deliberate indifference to his serious medical needs in violation of the Eighth Amendment. It dismissed Augusta's medical department as an improper defendant,

4

concluding that the medical department was not a "person" subject to suit under § 1983. J.A. 13–14, 16.[3]

Later, Mr. Jackson moved to supplement his complaint under Rule 15(d) of the Federal Rules of Civil Procedure. Before the district court addressed his motion, the remaining defendants, Nurse Dameron and Dr. Smith, waived answering Mr. Jackson's complaint.[4] Mr. Jackson responded to the defendants' waiver. In his response, Mr. Jackson maintained that his pleadings "clearly f[e]ll under the Eighth Amendment[] and [met] the standards for serious medical need and Deliberate indifference on the part of the Defendants." J.A. 21.

The district court granted Mr. Jackson's motion and accepted it as his supplemental complaint. In it, he augmented his original factual allegations. For example, Mr. Jackson alleged that he asked Dr. Smith to reissue the ankle sleeve on three occasions and that, each time, Dr. Smith told Mr. Jackson that he would look into it. But Dr. Smith never did. Mr. Jackson also indicated that he had resumed taking pain medication and that he had since received an ankle sleeve and insoles.

In addition, Mr. Jackson asserted new allegations. According to Mr. Jackson, his bottom bunk assignment had been revoked, even though it had been renewed for a one-

---

[3] Following the district court's order, the parties consented to disposition by a magistrate judge under 28 U.S.C. § 636(c)(1).

[4] Defendants may waive the right to reply to a prisoner's § 1983 lawsuit. 42 U.S.C. § 1997e(g)(1). A defendant who waives an answer does not admit the plaintiff's allegations, a district court cannot grant relief to the plaintiff absent an answer and the court "may require" an answer "if it finds that the plaintiff has a reasonable opportunity to prevail on the merits." *Id.* § 1997e(g)(1)–(2).

year period earlier in the year. This change was made without evaluating Mr. Jackson. So, Mr. Jackson submitted a request for a renewed bottom bunk assignment. Although a doctor told Mr. Jackson that he required a bottom bunk assignment, Nurse Dameron had urged revoking it in retaliation for his filing this lawsuit.[5]

After raising these additional allegations, Mr. Jackson asserted two claims. First, he reiterated his claim that Dr. Smith's and Nurse Dameron's actions violated the Eighth Amendment. Second, he alleged Nurse Dameron initiated "a Campaign of Retaliation" against him. J.A. 34. And perhaps because he had resumed taking pain medication and had received an ankle sleeve and insoles, his supplemental complaint requested compensatory damages, punitive damages, costs and any other relief the district court deemed proper.

In separate filings, the defendants moved to dismiss the claims against Nurse Dameron and for summary judgment on all claims. When addressing the motion to dismiss, as before, the district court understood Mr. Jackson's complaint to assert a deliberate indifference claim. And based on Mr. Jackson's new allegations, the district court also acknowledged a First Amendment retaliation claim premised on Nurse Dameron's actions after he sued.

The district court dismissed Mr. Jackson's First Amendment claim against Nurse Dameron, finding he failed to plausibly allege a causal relationship between his protected

---

[5] Mr. Jackson also described new allegations concerning Nurse Dameron's husband who was a lieutenant at the facility and who had not been named as a defendant. According to these allegations, Nurse Dameron's husband ordered certain tests for opioid use and falsely reported the results of those tests in response to Mr. Jackson's lawsuit. In addition to asserting a retaliation claim, the allegations mentioned that "due process was violated." J.A. 33.

activity and the alleged retaliatory conduct required for such a claim. But the district court denied the motion as to Mr. Jackson's deliberate indifference claim against Nurse Dameron, allowing it to proceed.

That reprieve was short-lived, however. Later, the district court granted the defendants' motion for summary judgment on Mr. Jackson's deliberate indifference claims. The district court concluded that there were no genuine factual disputes that Dr. Smith addressed Mr. Jackson's complaints, consulted with other providers in deciding how to treat Mr. Jackson, made reasoned medical judgments and did not disregard treatment recommendations. As for his claim against Nurse Dameron, the district court determined that there were no genuine disputes of fact that (i) Mr. Jackson never received a physician's order for physical therapy, (ii) Nurse Dameron did not play a part in the discontinuation of his pain medication or the revocation of his bottom bunk assignment or that (iii) Mr. Jackson lacked the money necessary to purchase pain medication from the commissary. The district court also concluded that Nurse Dameron's alleged comment about purchasing Suboxone did not alone support a deliberate indifference claim.

Mr. Jackson timely appealed. On appeal, now represented by counsel, Mr. Jackson does not challenge the district court's resolution of his deliberate indifference claims or his retaliation claim. Instead, for the first time, he faults the district court for not recognizing

7

an additional claim—a failure to accommodate claim under the Americans with Disabilities Act—in his original complaint.[6]

## II.

Mr. Jackson's appeal concerns the way district courts are to construe pro se pleadings in the context of prison litigation. We begin by describing our precedents in this area before applying them to the record in this case.[7]

## A.

The Prison Litigation Reform Act, 28 U.S.C. § 1915A, requires district courts to screen pro se prisoner complaints for frivolity, maliciousness, failure to state a claim and

---

[6] The district court had jurisdiction pursuant to 28 U.S.C. § 1331, and we have jurisdiction under 28 U.S.C. § 1291. In briefing on appeal, Mr. Jackson also argued that the district court should have construed from his allegations a claim that Mr. Jackson's constitutional right to due process had been violated. But at oral argument, Mr. Jackson conceded the language in the supplemental complaint was not enough to put the district court on notice of a separate claim. So, we will not address this argument.

[7] What about our standard of review? Citing to decisions involving a different circumstance—when a district court has dismissed a claim under § 1915A—all parties agree our standard of review is de novo. Despite that agreement, we have not found a decision directing us to do so when evaluating what claims a district court identifies in a pro se prisoner's complaint. And the answer as to our standard of review does not seem obvious. On the one hand, poring over pages of often handwritten and sometimes confusing and even incoherent factual assertions to discern the potential legal claims perhaps suggests an abuse of discretion standard should apply. On the other, construing what legal claims may be presented through certain factual allegations involves legal judgment. Because the parties have not briefed the question of what standard of review applies, we will assume without deciding that it's de novo and leave for another day the question of whether a more deferential standard, like abuse of discretion, should apply. *Cf. Nagy v. FMC Butner*, 376 F.3d 252, 254 (4th Cir. 2004) ("We apply an abuse of discretion standard when reviewing a district court's decision to dismiss an in forma pauperis complaint [for frivolity]." (citations omitted)). That's because, under either standard, we would affirm the district court's decision.

immunity. *Burrell v. Shirley*, 142 F.4th 239, 245 (4th Cir. 2025); § 1915A(b)(1)–(2). That review includes "identify[ing] cognizable claims," too. § 1915A(b).

By any measure, this is tricky work. First, pro se prison litigation is ubiquitous. From October 2023 through September 2024, in the Western District of Virginia alone, 848 of the 1,308 civil cases filed were filed by pro se parties (64.8%); 761 of the civil case filings were prisoner cases (58.2%); and 743 of the 761 prisoner cases were filed by pro se parties (97.6%).[8] Second, it's hard. Many pro se prisoner complaints are voluminous and difficult to decipher. District courts often have to scour pages of handwritten documents that are at times confusing and even incoherent to determine what legal claims the facts purport to advance.[9]

But the fact that it's difficult doesn't mean that it's not required. And more than that, courts must be careful in reviewing such pleadings. The Supreme Court has recognized

---

[8] ADMIN. OFF. OF U.S. CTS., JUDICIAL BUSINESS 2024 TABLE C-13: U.S. DISTRICT COURTS–CIVIL PRO SE AND NON-PRO SE FILINGS, BY DISTRICT 1 (2024), https://www.uscourts.gov/sites/default/files/2025-01/jb_c13_0930.2024.pdf [https://perma.cc/2JNW-XQCA]. On the appellate side, from October 2024 through September 2025, approximately half of the appeals were filed by pro se parties, 20% of appeals involved prisoner petitions and 88% of those petitioners were pro se. CHIEF JUSTICE JOHN G. ROBERTS, JR., 2025 YEAR END REPORT ON THE FEDERAL JUDICIARY 9 (2025), https://www.supremecourt.gov/publicinfo/year-end/2025year-endreport.pdf [https://perma.cc/43WN-RQUM].

[9] *See* DONNA STIENSTRA, JARED BATAILLON & JASON R. CANTONE, FED. JUD. CTR., ASSISTANCE TO PRO SE LITIGANTS IN U.S. DISTRICT COURTS: A REPORT ON SURVEYS OF CLERKS OF COURT AND CHIEF JUDGES 21 (2011), https://www.fjc.gov/sites/default/files/2012/ProSeUSDC.pdf [https://perma.cc/8PME-9ZQV] (indicating primary concern with pro se litigation in survey of 61 district court chief judges was "pleadings or submissions that are unnecessary, illegible, or cannot be understood").

that pro se pleadings are "to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation modified). That's because "they represent the work of an untutored hand requiring special judicial solicitude." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277 (4th Cir. 1985). And when a pro se action implicates a civil rights interest, courts must pay careful attention. *Shaw v. Foreman*, 59 F.4th 121, 127 (4th Cir. 2023). That means interpreting pro se pleadings "to raise the strongest arguments that they suggest." *Id.* (quoting *Martin v. Duffy*, 977 F.3d 294, 298 (4th Cir. 2020)); *see also United States v. Mayhew*, 995 F.3d 171, 184 (4th Cir. 2021).

*Mayhew* and *Shaw* illustrate this principle. In *Mayhew*, a pro se litigant filed a 28 U.S.C. § 2255 habeas petition. 995 F.3d at 175. Part of the petition alleged that the petitioner's trial counsel provided ineffective assistance in violation of the Sixth Amendment by not objecting to the district court's restitution calculation. *Id.* at 181. We rejected this argument on the ground that a petitioner may not use a § 2255 petition to challenge a restitution order. *Id.* But we explained that the petition referred "repeatedly to the alleged effect of the restitution calculation on his Sentencing Guidelines range." *Id.* at 184. Thus, we held that the "petition challenge[d] not only his restitution order but also his term of confinement, alleging that his sentence, too, was affected by counsel's deficient performance." *Id.* at 181. Ultimately, we found his claim cognizable under § 2255 and remanded for the district court to consider his contention in the first instance. *Id.*

10

*Shaw* indicates that a pro se plaintiff doesn't have to make repeated references to a cognizable claim for it to be recognized. There, we considered whether a district court properly dismissed a pro se plaintiff's procedural due process claim against prison officials under § 1915A. *Shaw*, 59 F.4th at 125, 126–27. The defendants argued that the plaintiff's procedural due process claim involved his placement in administrative segregation, a non-cognizable liberty interest, instead of his transfer to a maximum-security prison, a cognizable liberty interest. *Id.* at 127. The district court agreed and granted summary judgment to the defendants. *Id.* at 126. On appeal, we recognized that, in his complaint, the plaintiff "seemed to emphasize administrative segregation as his purported liberty interest . . . ." *Id.* at 127. But we found his factual allegations also asserted a legally-cognizable liberty interest—avoiding transfer to a maximum-security prison. *Id.* We noted that we read "pro se pleadings to raise the strongest arguments that they suggest, and we consider whether a pro se civil rights plaintiff is entitled to relief under any legal theory that his factual allegations might plausibly convey." *Id.* at 128. And because "the factual allegations in his complaint sufficiently presented the alternative liberty interest," we remanded for the district court to consider the stronger claim. *Id.* at 127.

Even so, the duty to construe pro se complaints for the strongest arguments suggested is not unlimited. *Beaudett* illustrates those limits. There, a pro se plaintiff lost a bench trial in a state court personal injury lawsuit. *Beaudett*, 775 F.2d at 1276. He wanted a jury trial but failed to follow the required procedures to obtain one. *Id.* at 1276 & n.1. Then things went from bad to worse for him. After publicly protesting his plight, he was arrested and convicted for criminal trespass. *Id.* at 1276. Later, the plaintiff sued state

11

officials, demanding "(1) a jury in [his] civil suit, (2) freedom of speech (sitting in city hall lobby), and (3) equal protection from persecution." *Id.* at 1277. In his request for relief, he sought "to tell [his] story to a 12-person jury for [his] civil suit" and "charge" the defendants with "collusion" and "obstructing justice." *Id.*

The district court construed the plaintiff's complaint as seeking a jury trial in his previous civil lawsuit and dismissed the complaint because it found the defendants entitled to immunity. *Id.* On appeal, represented by counsel, the plaintiff raised arguments about selective prosecution, about a violation of his First Amendment rights and that the statute under which he was arrested was unconstitutionally vague, none of which were claimed or considered below. *Id.*

We affirmed, reasoning that district courts "cannot be expected to construct full blown claims from sentence fragments, . . . [n]or should appellate courts permit those same fleeting references to preserve questions on appeal." *Id.* at 1278. In addition, we stated:

> We will not . . . require the district courts to anticipate all arguments that clever counsel may present in some appellate future. To do so would not only strain judicial resources by requiring those courts to explore exhaustively all potential claims of a *pro se* plaintiff, but would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party.

*Id.* Instead, in construing pro se complaints, we explained that when "the context . . . makes clear a litigant's essential grievance, the complainant's additional invocation of general legal principles need not detour the district court from resolving that which the litigant himself has shown to be his real concern." *Id.* Ultimately, because the plaintiff had reiterated his request for a jury trial in his personal injury lawsuit on numerous occasions,

we determined that desire represented his essential grievance. *See id.* at 1278–79. And we concluded that the plaintiff had, on appeal, effectively asked us to construe additional claims from sentence fragments, despite never putting the district court on notice that he wished it to hear those claims. *Id.*[10]

Thus, when the thrust of a complaint points to an "essential grievance," courts are not required to scour pleadings for stray phrases that could, with the benefit of hindsight, be consistent with another theory, and then construe those phrases to assert separate claims. *Id.* at 1278. After all, district courts are not the legal advocates of pro se litigants. *Id.* Nor are courts required to anticipate all arguments or "explore exhaustively all potential claims of a *pro se* plaintiff" that are not readily apparent from the allegations. *Id.* But if a pro se plaintiff's complaint raises different theories, some of which are plainly vague or weak, the court should construe in favor of the strongest theories. *See Shaw*, 59 F.4th at 127–28; *Mayhew*, 995 F.3d at 181, 184. This is especially true if a pleading repeatedly refers to that stronger theory. *Mayhew*, 995 F.3d at 181, 184.

---

[10] Our dissenting colleague implies that *Beaudett* might conflict with *Gordon v. Leeke*, 574 F.2d 1147 (4th Cir. 1978). Diss. Op. at 32–33 n.5. It doesn't. In *Gordon*, we cautioned against dismissing a complaint when facts asserted "could very well" support a claim. 574 F.2d at 1151. That's exactly what the district court did here when it identified that Mr. Jackson's allegations could support an Eighth Amendment claim. The dissent also relies on Judge Phillips' opinion in *Brock v. Carroll*, 107 F.3d 241 (4th Cir. 1997). Diss. Op. at 28–29, 30. But that opinion concurred in part and dissented in part. *Brock*, 107 F.3d at 245–48 (Phillips, J., concurring in part and dissenting in part). Since it was not a majority opinion, it is not precedent binding us here.

**B.**

With these principles in mind, we turn to Mr. Jackson's arguments on appeal. He contends that the district court should have construed an ADA claim from his allegations. It is true that Title II of the ADA prohibits state prisons from discriminating against disabled inmates on account of their disability. *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 208 (1998). It is also true that disability discrimination in prisons includes failing to provide reasonable accommodations to inmates with disabilities. *See Koon v. North Carolina*, 50 F.4th 398, 403 (4th Cir. 2022). And finally, with the benefit of hindsight, it is true that one could possibly imagine an ADA claim in Mr. Jackson's allegations about having to climb two flights of stairs and wanting a medical boot exemption for work.

But those truths do not mean the district court erred. The thrust of Mr. Jackson's complaint, its essential grievance, was deliberate indifference. "To state a claim under Section 1983 for deliberate indifference to serious medical needs, a prisoner must show that he had a serious medical need, and that officials knowingly disregarded that need and the substantial risk it posed." *DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018). Here, Mr. Jackson's allegations—setting aside their merit—align with the elements of an Eighth Amendment deliberate indifference claim. He alleged that he had a serious medical condition in the form of his lower body troubles. And his allegations focused on Dr. Smith's and Nurse Dameron's disregard of that condition and the risks it posed to Mr. Jackson. For instance, Dr. Smith allegedly refused to engage with Mr. Jackson about the ankle sleeve which Mr. Jackson was previously prescribed and which was confiscated upon his arrival at Augusta, even though he was experiencing increased pain in its absence. Dr.

14

Smith also failed to address Mr. Jackson's complaints about his placement in a cell near stairs.

In addition, according to Mr. Jackson, Dr. Smith and/or Nurse Dameron took a similar approach to his requests for a medical boot exemption at work and for treatment with physical therapy and pain medication. When Mr. Jackson asked Dr. Smith to issue him a medical exemption, Dr. Smith told him, without giving a medical explanation, that an exemption did not exist and that, even if one existed, Dr. Smith would not provide one to Mr. Jackson. Dr. Smith also disregarded orders for Mr. Jackson to receive physical therapy. And Dr. Smith and Nurse Dameron disregarded numerous complaints from Mr. Jackson about his medical condition. When it came to Mr. Jackson's pain medication, in the face of his inability to afford medication from the prison commissary, Nurse Dameron ignored his repeated requests for renewed prescriptions and instead told Mr. Jackson to purchase Suboxone in the prison yard.

These allegations suggest Mr. Jackson's "essential grievance" is that Dr. Smith and Nurse Dameron were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. They indicate that Mr. Jackson felt the defendants knew of his condition and needs but, over and over, consciously disregarded them.

Our colleague in dissent contends that an ADA claim was just as much of an "essential grievance" as an Eighth Amendment deprivation of serious medical needs claim. Diss. Op. at 31–33. In explaining this view, he points out that the legal issues for ADA claims are similar to those for Eighth Amendment disregard of serious medical needs claims. Diss. Op. at 31–33. He has a point there. But the legal similarities of those claims

15

are only part of the picture. Despite those similarities, Mr. Jackson's factual assertions are almost exclusively aimed at Dr. Smith and Nurse Dameron's awareness of his medical needs and their conscious disregard towards them. The allegations read as if Mr. Jackson believes Dr. Smith and Nurse Dameron have some sort of personal spite towards him. So, it's quite natural for the district court to have construed his complaint to assert an Eighth Amendment serious medical needs claim rather than an ADA claim.[11]

Our precedent does not require more. In fact, to hold that it did would transform the duty to liberally construe a pro se litigant's complaint to a duty to remove the district court's heavy robe, *see* Diss. Op. at 40, and take on the role of the litigant's attorney. Our precedent admonishes against that. *Beaudett*, 775 F.2d at 1278 (declining to extend rule of liberal construction so far that it would "transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party."); *Gordon*, 574 F.2d at 1151 ("[T]he Court of Appeals cannot mean that it expects the district courts to assume the role of advocate for the pro se plaintiff . . . .").

---

[11] Our dissenting colleague also says the majority gives "short shrift" to Mr. Jackson's purported request for injunctive relief under the ADA. Diss. Op. at 34. The dissent argues the district court should have construed this claim from Mr. Jackson's request "to be treated for the pain." Diss. Op. at 36. Mr. Jackson's actual request was for "Compensation for 7 months of lost pay (Approx. $420.00) To be treated for the pain and be compensated for the loss of sleep and physical, mental, and emotional anguish suffered over past 3 months." J. A. 11. Perhaps this sentence fragment, sandwiched between two detailed requests for monetary damages, could be construed as a request for injunctive relief. *Beaudett*, 775 F.2d at 1278. Importantly though, it does not change the fact that the "essential grievance" of Mr. Jackson's allegations points to an Eighth Amendment deliberate indifference claim. *Id*.

And to be clear, this is not a case where the court construed the complaint to be frivolous or not to state a claim. The court construed the allegations to state Eighth Amendment claims for deliberate indifference to serious medical needs and later denied the defendants' motion to dismiss that claim against Nurse Dameron. Said differently, the district court did not strictly construe factual allegations to the detriment of a pro se litigant.

In fact, unlike in *Mayhew* and *Shaw*, it is not at all apparent that Mr. Jackson's purported ADA claim is stronger than his deliberate indifference claim. Remember in those cases, the pro se allegations presented two claims, one unviable and one potentially viable. Here, even assuming for the sake of argument that Mr. Jackson's allegations presented an ADA claim, it suffered from a very similar problem as his deliberate indifference claim. To obtain damages under the ADA,[12] a prisoner must prove intentional discrimination. *Koon*, 50 F.4th at 403. There are two parts to this burden. *See id.* at 405. First, "a plaintiff must begin by showing an ongoing or likely violation of a federally protected right." *Id.* This prong implicates a three-part test—a plaintiff "must show that he: (1) has a disability; (2) was otherwise qualified to get some public program, service, or activity; and (3) was denied that program, service, or activity on the basis of his disability," including by a "failure to make reasonable accommodation." *Id.* Second, a plaintiff must show a defendant's "knowledge that a federally protected right [wa]s substantially likely to be violated" and the defendant's "failure to act despite that knowledge." *Id.*; *Basta v. Novant*

---

[12] Recall that Mr. Jackson's supplemental complaint sought only money damages and such other relief as the district court deemed proper. He had since resumed taking pain medication and received an ankle support sleeve and insoles.

17

*Health Inc.*, 56 F.4th 307, 316–17 (4th Cir. 2022). In other words, this second element requires a plaintiff to demonstrate a defendant's deliberate indifference. *Id.*

This deliberate indifference requirement is important. Recall that Mr. Jackson did not challenge on appeal the district court's order finding that he failed to present a genuine dispute of material fact on his Eighth Amendment deliberate indifference claims. Because there was no genuine dispute of material fact on these claims, he faces the very tough task of showing one on any ADA failure to accommodate claim. To be sure, deliberate difference in the Eighth Amendment context is not identical to deliberate indifference in the ADA context.[13] But given their similarities, we cannot say that the district court failed to construe Mr. Jackson's complaint in favor of a stronger argument.

In fact, the dissent does not say so either. Rather than saying the ADA claim is stronger, it points to the slight daylight between the deliberate indifference requirement in ADA claims and Eighth Amendment claims and says "there is a chance" Mr. Jackson might have come up with something. Diss. Op. at 38. With respect, when factual allegations point predominantly at one claim, a district court does not err in construing the allegations to

---

[13] *Compare DePaola*, 884 F.3d at 486 (stating that, to prove Eighth Amendment deliberate indifference, a prisoner must demonstrate serious medical need and that the defendant knowingly disregarded that need and the substantial risk posed by it), *with Koon*, 50 F.4th at 405 (indicating that, to prove ADA deliberate indifference, a prisoner must demonstrate (1) the defendant's knowledge that the prisoner's federally protected right against the denial of a public program, service or activity that the prisoner was otherwise qualified for on account of their disability was substantially likely to be violated, and (2) the failure to act despite such knowledge).

assert that claim, even though it is possible that an advocate might also include a different claim that, while not stronger, might have a chance of surviving summary judgment.[14]

In sum, this is not a case like *Mayhew* and *Shaw*, where the pro se filings contained references to stronger legal theories. Instead, it is more like *Beaudett*, where the complaint contains an essential grievance—here, allegations consistent with Eighth Amendment deliberate indifference.

And we have more to go on than Mr. Jackson's initial complaint. In subsequent filings—from his response to the defendants' waiver of answers to his supplemental complaint—Mr. Jackson reemphasized his claims were for deliberate indifference. What's more, Mr. Jackson asserted an additional claim, based on an alleged campaign of retaliation, in his supplemental complaint. This suggests that he was capable of alleging additional claims, like ADA claims, if he had so desired. Despite that, he never hinted that he was asserting an ADA claim or that the district court might be construing his claims too narrowly.[15]

Mr. Jackson insists we should not consider these supplemental filings. According to him, once the district court dismissed the prison's medical department, any ADA claims

---

[14] At times, the dissent suggests the majority holds that Mr. Jackson failed to plausibly assert an ADA claim. *See* Diss. Op. at 31–40. That's not exactly right. Instead, we conclude the district court properly construed Mr. Jackson's factual allegations to assert an Eighth Amendment claim rather than an ADA claim and that an ADA claim would not have been a stronger claim.

[15] In fact, his failure to do so may have forfeited the issue altogether. But forfeiture or not, this failure confirms that his essential grievance was Eighth Amendment deliberate indifference.

were over. But the district court simply ruled that the medical department of a prison was not a proper defendant; it did not dismiss any specific claim. After that, before any motions to dismiss had been filed, Mr. Jackson moved to supplement his complaint. Far from suggesting he had any claim that the district court had not recognized, he said the opposite. Confirming the district court's construction, Mr. Jackson said his pleadings "clearly fall under the Eighth Amendment[] and the standards for serious medical need and Deliberate indifference." J.A. 21.

Nor did the district court prevent Mr. Jackson from later, and for the first time, asserting a retaliation claim at the same time he expressly reasserted a deliberate indifference claim. When he asserted that new retaliation claim, Mr. Jackson once again said nothing about an ADA claim or claims for accommodations separate from his Eighth Amendment deliberate indifference claim.

Besides, the premise of Mr. Jackson's argument is wrong. *Beaudett* instructs that when reviewing an argument like his, we not only can, but should look at context to assess what a pro se litigant's essential grievance is. 775 F.2d at 1278–79 (looking to pro se plaintiff's complaint, deposition and arguments on motions to ascertain essential grievance). Thus, it is proper to consider the supplemental filings to evaluate whether the district court erred in failing to read an ADA claim into Mr. Jackson's complaint. And when considered, they confirm the district court did not err.

To be clear, our conclusion has nothing to do with the fact that Mr. Jackson did not expressly identify an ADA claim in his initial complaint. In *Johnson v. City of Shelby*, 574 U.S. 10 (2014), the Supreme Court held it was improper to dismiss pro se § 1983 claims

20

for not expressly invoking the statute in a complaint. *See id.* at 11–12. Besides that, the form Mr. Jackson used to file his complaint told him not to "give any legal arguments or cite any cases or statutes." J.A. 11 (emphasis omitted). But the district court did not rely on the absence of a reference to the ADA or an express statement about failing to accommodate. Instead, it construed the factual allegations themselves and held they reasonably indicated a claim for deliberate indifference under the Eighth Amendment. For the reasons described, we see no error in that decision.

## III.

Our decision today relies on our precedent that there are limits on the rule requiring liberal construction of pro se pleadings. But we do not supplant that rule. District courts should continue approaching pro se filings with thoughtfulness and thoroughness when discharging their duties under § 1915A. Even so, from the record in this case, the district court properly construed and addressed Mr. Jackson's essential grievance—his belief that the defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. The district court's order is, therefore,

*AFFIRMED.*

FLOYD, Senior Circuit Judge, dissenting:

I would reverse the district court's first order to dismiss for failing to identify that Appellant Daniel Jackson's initial pro se complaint alleged causes of action for both deliberate indifference as to Jackson's serious medical needs in violation of the Eighth Amendment and relief under the Americans with Disabilities Act (ADA). The lower court erred when it solely construed the complaint as bringing a § 1983 claim for Eighth Amendment deliberate indifference to medical needs. The complaint no more expressly invoked the constitutional right than the statutory right as the legal basis for the relief claimed. Because the majority holds otherwise, I respectfully dissent.

## I.

State prison officials transferred Jackson from River North Correctional Center to Augusta Correctional Center. At that time, Jackson was suffering from a series of injuries to his right leg and River North was accommodating his limitations through a support sleeve for his ankle and a medically assigned bottom bunk. However, upon arrival at Augusta, prison staff confiscated his ankle sleeve pending reissue by medical staff. Jackson claims he met with Dr. Smith multiple times to request the sleeve's reissue. Dr. Smith failed to follow up on the matter, never addressed any of Jackson's complaints of leg pain, and never got the sleeve reissued.

Jackson also described his employment in Augusta's apparel shop. Apparel shop employees were required to either wear specific boots or obtain a medical exemption. The required boots caused Jackson extreme pain and discomfort and he requested a medical exemption informally referred to as a tennis shoe pass. Dr. Smith discounted Jackson's

claim of pain and refused to issue a medical exemption. Because of the pain from the required boots, Jackson was forced to resign from the apparel shop. He was then unable to obtain alternative employment for almost seven months. Jackson was later prescribed soft, supportive insoles as treatment.

Finally, Jackson also contends that he was prescribed pain medication and physical therapy to treat his condition. He claims that Dr. Smith never provided him with physical therapy. He also alleges that his pain medication was discontinued because he did not consistently pick up his prescribed Cymbalta. But Jackson had to climb a staircase to pick up that prescription and sometimes it was more detrimental to pick up the dosage than to go without. Finally, he noted that his Ibuprofen was discontinued. Nurse Dameron allegedly directed him to purchase it from the Commissary. Jackson explained he was unable to afford to purchase the necessary dosage. Nurse Dameron replied that he should "just buy some suboxone off the [prison] yard like everyone else does." J.A. 10. His untreated pain made sleeping difficult for three months and caused him physical and mental anguish.

Jackson filed his initial pro se complaint against Nurse Dameron, Dr. Smith, and the Augusta Correctional Center Medical Department (together, the "Prison Defendants") in February 2022. He sought injunctive relief and compensation for both his lost pay and for the physical, mental, and emotional distress he suffered. Jackson used a form complaint provided to the prison by the Western District of Virginia that identifies it should be used "by inmates filing a complaint under CIVIL RIGHTS ACT, 42 U.S.C. § 1983." J.A. 8. Jackson did not identify legal bases for his claims. J.A. 8–12. He simply set forth the

23

supporting facts underlying his claims. In so doing, he followed the directions of the form which directs prisoners, "Do not give any legal arguments or cite any cases or statutes."[1] J.A. 11. In July 2022, the district court screened the complaint under the Prison Litigation Reform Act (PLRA), 28 U.S.C. § 1915A, and dismissed "Augusta Correctional Center Medical Department" as a defendant because state agencies are not "persons" subject to suit under § 1983. J.A. 13–15. In so doing, the district court construed Jackson's pro se complaint as solely bringing § 1983 claims for deliberate indifference to his serious medical needs in violation of the Eighth Amendment.[2] On appeal, Jackson argues that the district court erred when it failed to also identify an ADA claim as part of its PLRA screening. We must agree.

---

[1] The obvious shortcoming of this form is that it implies that no supplemental claims are available to the prisoners who claim constitutional violations. Indeed, this language may have signaled to the district judge to solely identify constitutional claims notwithstanding the required liberal construction. This is highly inappropriate. The prison and the district should amend this form to make it clearly apply to all claims rather than solely § 1983 claims.

[2] Jackson later filed an amended and supplemental complaint that elaborated on the allegations included in his 2022 complaint and added new claims based on subsequent prison incidents. He filed this pro se amended complaint against Nurse Dameron and Dr. Smith and claimed violation of the Eighth Amendment and "a campaign of retaliation." J.A. 34. Dr. Smith and Nurse Dameron filed a partial motion to dismiss and then moved for summary judgment, addressing his Eighth Amendment claims and construing his "campaign of retaliation allegation" as a First Amendment claim. The district court granted the motion to dismiss in part as to Jackson's First Amendment retaliation claims and then granted the motion for summary judgment in full. The amended complaint and subsequent court orders are not challenged on appeal.

24

## II.

"We review de novo a § 1915A dismissal for failure to state a claim."[3] *Jehovah v. Clarke*, 798 F.3d 169, 176 (4th Cir. 2015). "Dismissal is proper only if the plaintiff has failed to 'present factual allegations that state a claim to relief that is plausible on its face.'" *Id.* (quoting *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014)). "Moreover, when such a dismissal involves a civil rights complaint, we must be especially solicitous of the wrongs alleged and must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged." *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (citation modified).

## III.

This appeal primarily concerns a district court's obligation to liberally construe pro se plaintiffs' claims into cognizable causes of action. The factual context here—where the plaintiff is a pro se prisoner alleging violations of his civil rights while he was in the custody of the state—is relevant to this inquiry. This requires starting with what it means to liberally construe pro se claims in the abstract before turning to the district court's construction of Jackson's complaint.

---

[3] The majority assumes that the standard of review is de novo but suggests that a district court's failure to construe should be reviewed under the abuse of discretion standard that applies when a district court dismisses for frivolity. The district court dismissed several defendants pursuant to § 1915A expressly based on Jackson's failure to state a claim as to those defendants. J.A. 14. On appeal, Jackson contends this was in error because those dismissed defendants were properly named pursuant to the ADA. Therefore, the court must conclude review is de novo. *See Jehovah v. Clarke*, 798 F.3d 169, 176 (4th Cir. 2015); *Slade v. Hampton Roads Reg'l Jail*, 407 F.3d 243, 248 (4th Cir. 2005).

## A.

The PLRA requires the district court to construe prisoners' pro se claims from their factual allegations.  28 U.S.C. § 1915A(b) ("On review, the court shall identify cognizable claims.").  This screening requirement may at times be onerous and require district court judges to act as both an advocate identifying plaintiffs' claims and as a defense attorney raising certain affirmative defenses.  *Cf. id.* (requiring the court to dismiss the complaint or any portion of the complaint if it is "frivolous, malicious, or fails to state a claim upon which relief may be granted" or if it "seeks monetary relief from a defendant who is immune from such relief").  This obligation is an important one.  It safeguards the civil rights of some of our most vulnerable citizens: those incarcerated in prisons who are unable to afford an advocate.  Where a pro se prisoner alleges violations of their civil rights, the district court must consider their claims with a magnifying glass to ensure that their rights are secured.

In deciding whether a prisoner's pro se complaint states a cause of action, the district court is required to construe the complaint liberally.  *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972).  "Such a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Hughes v. Rowe*, 449 U.S. 5, 10 (1980); *see also Coleman v. Peyton*, 340 F.2d 603, 604 (4th Cir. 1965) ("[C]laims of legal substance should not be forfeited because of a failure to state them with technical precision.").  As we have observed, "[i]n the great run of pro se cases, the issues are faintly articulated and often only dimly perceived."  *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978).  "There is,

therefore, a greater burden and a correlative greater responsibility upon the district court to insure that constitutional deprivations are redressed and that justice is done." *Id.*  As we decreed in *Gordon*,

> although the Court of Appeals cannot mean that it expects the district courts to assume the role of advocate for the pro se plaintiff, radiations from *Burris* [*v. State Department of Public Welfare of South Carolina*, 491 F.2d 762 (4th Cir. 1974),] strongly suggest that the district court must examine the pro se complaint to see whether the facts alleged, or the set of facts which the plaintiff might be able to prove, could very well provide a basis for recovery under any of the civil rights acts or heads of jurisdiction in the federal arsenal for redress of constitutional deprivations.

*Id.*  Indeed, "we must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged." *Harrison v. U.S. Postal Serv.*, 840 F.2d 1149, 1152 (4th Cir. 1988) (citation modified); *see also Shaw v. Foreman*, 59 F.4th 121, 128 (4th Cir. 2023) ("This Court reads pro se pleadings to raise the strongest arguments that they suggest, and we consider whether a pro se civil rights plaintiff is entitled to relief under any legal theory that his factual allegations might plausibly convey.").

To be sure, we have also previously held that while the court liberally construes a pro se plaintiff's claims, "it will not fundamentally rewrite the causes of action provided in the Complaint." *Kerr v. Marshall Univ. Bd. of Governors*, 824 F.3d 62, 73 (4th Cir. 2016). We have also explained that liberal construction "does not require those courts to conjure up questions never squarely presented to them" because "[d]istrict judges are not mind readers." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). But "[i]f it is apparent to the district court that a pro se litigant has a colorable claim but lacks the

27

capacity to present it, the district court should appoint counsel to him." *Gordon*, 574 F.2d at 1153. Moreover, although we have acknowledged that the leniency accorded to "pro se litigants' pleadings in the civil rights context may marginally increase burdens on defendants[,] . . . context demands this searching treatment, for its absence risks exposing indigent, incarcerated persons to injustices that we cannot condone." *Shaw*, 59 F.4th at 128.

There is "a greater burden and a correlative greater responsibility upon the district court to insure that constitutional deprivations are redressed and that justice is done." *Gordon*, 574 F.2d at 1151. Bedrock legal precedent clearly establishes that multiple causes of action may arise from a common nucleus of operative facts. *See, e.g.*, *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966). This principle is at play here. Importantly, if we agree that "the bald factual allegations of this *pro se* complaint were sufficient" for the district court to *sua sponte* consider whether Jackson stated an Eighth Amendment claim—as the district court and this majority opinion obviously, and rightly, have assumed—then it should logically follow that that the factual allegations also give rise to a claim under the parallel provisions of the ADA. *See Brock v. Carroll*, 107 F.3d 241, 245 (4th Cir. 1997) (Phillips, J., concurring and dissenting in relevant part). Indeed, as Judge Phillips previously noted in response to a similar fact pattern,

> The complaint no more expressly invokes the constitutional right than the statutory right as the legal basis for the relief claimed. The one legal theory is no more implicit in the allegations to the trained legal eye than is the other. Both were in existence at the time the district court considered the complaint. Neither required for its recognition a search for obscure legal theories on the uncertain margins of established law; both, equally, leapt from the allegations.

*Id.* In many ways, *Brock* mirrors the issue presented here—where Jackson plausibly stated facts that the district court interpreted to give rise to an Eighth Amendment claim but not to an equally plausible ADA claim. The majority errs when it does not recognize as much.

Read together, precedent suggests that the lower court errs when it fails to construe a pro se plaintiff's claims into *all* feasible causes of action—both statutory and constitutional—that are plain on the face of the complaint. *Cf. Harrison*, 840 F.2d at 1152 (explaining the court's role in "evaluating a civil rights complaint for failure to state a claim under [Rule] 12(b)(6)"); *Shaw*, 59 F.4th at 128 (explaining that the Court "consider[s] whether a pro se civil rights plaintiff is entitled to relief under any legal theory that his factual allegations might plausibly convey"); *Veney*, 293 F.3d at 730 (explaining that the Court must not dismiss a civil rights complaint "unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged"). To be clear, I agree with the majority that this requires the district court to address the causes of action that attach to the pro se litigant's essential grievance. *See Beaudett*, 775 F.2d at 1278. Where I diverge from the majority is in my conclusion that multiple causes of action can and must be construed where both constitutional and statutory bases exist that may address the litigant's essential grievance. In my opinion, this interpretation is the only logical reading of the plain language of the statute. *See* 28 U.S.C. § 1915A(b) ("On review, the court shall identify cognizable claims."). The district court must identify both statutory and constitutional claims where they equally leap from the litigant's stated grievances and we should find the district court failed to do so here.

29

As the Supreme Court and this Court have counseled, special solicitude is warranted for pro se plaintiffs, *see Hughes*, 449 U.S. at 10; *Gordon*, 574 F.2d at 1151, particularly where civil rights violations are alleged, *Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009). Where "[t]he one legal theory is no more implicit in the allegations to the trained legal eye than is the other," the district court should have the obligation of construing the pro se plaintiff's allegations to bring both claims. *See Brock*, 107 F.3d at 245 (Phillips, J., concurring and dissenting in relevant part). With this special solicitude in mind, I turn to the alleged error in the district court's screening opinion.

### B.

Jackson's core concern was his lack of medical treatment and accommodation that impaired his ability to access the prison facilities and to engage in meaningful work. He sought both compensatory damages and injunctive relief for his claims. The injunctive relief included potential treatment that could be addressed through an Eighth Amendment claim alleging deliberate indifference to his serious medical needs and potential accommodation available through a statutory claim brought under the ADA. Similarly, the damages sought by Jackson could be equally addressed through an Eighth Amendment claim as through an ADA claim. On appeal, Jackson assigns error to the district court's screening opinion.

To start, the appeal of the district court's screening opinion is properly before the court. *See Gowen v. Winfield*, 130 F.4th 162, 172 (4th Cir. 2025) (adopting a general merger rule that confers appellate jurisdiction over prior interlocutory orders that merge into the final judgment). In reviewing the district court's decision to dismiss a claim, "we

30

are limited to the allegations in the complaint, without any benefit of the facts developed in discovery," even when the appeal also includes claims resolved on summary judgment after discovery. *Pleasants v. Town of Louisa*, 524 F. App'x 891, 893 (4th Cir. 2013).

It is important to note what Jackson challenges. On appeal, Jackson challenges the district court's screening dismissal of the official capacity claims and Jackson's claim against the Augusta Medical Department. In his complaint, Jackson followed the instructions on the form *not* to give any legal arguments or cite any cases or statutes, and he instead stated his factual allegations described above. I agree with the majority that the district court correctly determined *sua sponte* that Jackson had stated an Eighth Amendment deliberate indifference claim. But the majority misconstrues Jackson's ADA claim. It suggests the ADA claim is only viable "with the benefit of hindsight." Maj. Op. at 13, 14. I disagree with the majority and believe the district court erred in failing to identify an ADA claim from the same allegations that form a basis for Jackson's Eighth Amendment claim. In other words, Jackson's ADA claim was equally plain on the face of the complaint.

Jackson's factual allegations for deliberate indifference are so intertwined with his allegations for failure to accommodate as to render the majority's "essential grievance" distinction essentially meaningless. Jackson's requests for medical treatment and accommodations are two sides of the same coin, and the majority shortchanges our holding in *Gordon* when it fails to recognize as much. Consider an unaddressed ankle injury: an Eighth Amendment deliberate indifference claim may be brought for failure to medicate, wrap, and elevate the ankle (i.e., treat the medical problem) at the same time as a disability

31

claim could be made for the prison's failure to provide the crutches to access the same prison services available to uninjured prisoners. In cases like this, the need for medical treatments arises simultaneously to the need for disability accommodations, though both may stem from the same initial medical problem. To be sure, the line between treatment and accommodation can be blurry. For example, crutches allow the hypothetical prisoner access to otherwise inaccessible areas of the prison while simultaneously helping to heal the injured ankle by preventing the injury from worsening. But the Eighth Amendment and the ADA provide incarcerated litigants with avenues to address a prison's failure to provide medical treatment and accommodations.[4] The majority opinion fails to acknowledge that the "essential grievance" in this case could equally support an Eighth Amendment claim as an ADA claim and the majority's sole focus on treatment ignores prisoners' rights to accommodation under the ADA.[5]

---

[4] Pro se complaints that include references to requests for wheelchairs, crutches, braces, bottom bunk passes, tennis shoe passes, hearing aids, eyeglasses, etc., should trigger district courts to consider the plausibility of both an ADA claim and an Eighth Amendment medical indifference claim. Jackson's initial complaint identifies that he was "assigned bottom bunk status." J.A. 9. This language should have led the district court to identify both claims.

[5] Let me be clear. "When published panel opinions are in direct conflict on a given issue, the earliest opinion controls, unless the prior opinion has been overruled by an intervening opinion from this court sitting *en banc* or the Supreme Court." *McMellon v. United States*, 387 F.3d 329, 333 (4th Cir. 2004). Our earliest holding in *Gordon* is clear: "the district court must examine the pro se complaint to see whether the facts alleged . . . could very well provide a basis for recovery under any of the civil rights acts or heads of jurisdiction in the federal arsenal for redress of constitutional deprivations." 574 F.2d at 1151. To the extent that the later panel decisions in *Kerr* or in *Beaudett* run afoul of *Gordon*, the "earliest-case-governs" rule must apply and those contrary holdings be deemed non-precedential. *See McMellon*, 387 F.3d at 333. It begs the question whether

32

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The majority correctly notes that "Title II of the ADA prohibits state prisons from discriminating against disabled inmates on account of their disability." Maj. Op. at 14 (citing *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 208 (1998)). Though the majority also notes that "disability discrimination in prisons includes failing to provide reasonable accommodations to inmates with disabilities," *id.*, the majority is plainly wrong when it concludes that Jackson's essential grievance does not request such accommodation.

For Jackson to recover under the ADA, he must allege that "(1) [he] has a disability; (2) [he] is otherwise qualified to receive the benefits of a public service, program, or activity; and (3) [he] was excluded from participation in or denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of [his] disability." *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005). To recover compensatory damages under the ADA, Jackson must also prove intentional discrimination by establishing deliberate indifference. *Koon v. North Carolina*, 50 F.4th 398, 404 (4th Cir. 2022). Inversely, Jackson need not establish deliberate indifference for injunctive relief under the ADA. *See Constantine*, 411 F.3d at 498–99; *cf. Koon*, 50 F.4th at 404–05 (explaining that to assess a claim for compensatory

---

these subsequent cases establish guardrails to *Gordon* or merely decline to apply binding precedent.

damages under the ADA the court first considers whether there was a likely or ongoing violation of federal rights under the ADA before turning to the mental state of deliberate indifference).

Liberally construed, Jackson's initial complaint alleges he has a disability (i.e., pain in his right knee, hip, and ankle). Jackson's disability interferes with his ability to access programs and areas of the prison because the pain limits his ability to go up stairs to reach the medical department, limits his ability to wear the required shoes to work at the prison, as well as interferes with his sleep. Jackson sought and was denied accommodation and medical treatment (i.e., an ankle sleeve, a tennis shoe pass, and pain medication) so that he could access the prison's programs and activities, ultimately leading to his exclusion from those activities. The district court should have identified that these facts plausibly stated a claim for injunctive relief under the ADA and erred when it failed to do so. The majority similarly gives Jackson's request for injunctive relief under the ADA short shrift. Indeed, it fails to engage with the allegations, instead resting its analysis on irrelevant, later-in-time developed facts. The question before the court is whether the district court erred in screening Jackson's initial complaint pursuant to § 1915A. Based on the allegations before the district court, I would answer this question unequivocally in the affirmative.

The plausibility of the ADA claim is buoyed by Jackson's initially named defendants: Nurse Dameron, Dr. Smith, and Augusta Correctional Center Medical Department. Jackson failed to specify whether he named the individual defendants in their individual or official capacities. In its screening opinion, the district court dismissed the claims against the Augusta Medical Department and construed the claims against

34

Nurse Dameron and Dr. Smith as being brought against them in their individual capacities. But "[i]n enacting Title II of the ADA, Congress made it specifically applicable to the States and state entities, such as state prisons." *Fauconier v. Clarke*, 966 F.3d 265, 280 (4th. Cir. 2020) (citing *Yeskey*, 524 U.S. at 210). Thus, Jackson appropriately named a state entity—the Augusta Medical Department[6]—when he alleged facts that gave rise to an ADA claim. *See id.* Moreover, he correctly named Nurse Dameron and Dr. Smith in their official capacities. *See id.* To be sure, the district court properly identified that a state entity is not a "person" under 42 U.S.C. § 1983 such that the Augusta Medical Department was not appropriately named as a defendant for Jackson's Eighth Amendment claim. *See Va. Off. for Prot. & Advoc. v. Reinhard*, 405 F.3d 185, 189 (4th Cir. 2005). Had the district court liberally construed Jackson's initial complaint, it would have interpreted Eighth Amendment claims against Nurse Dameron and Dr. Smith in their individual capacities and ADA claims against Augusta Medical Department as well as Nurse Dameron and Dr. Smith in their official capacities.

Finally, we reach the issue of whether Jackson has plausibly stated a claim for compensatory damages under the ADA. The majority suggests something akin to harmless error because Jackson has essentially conceded his inability to create a genuine dispute of

---

[6] Without citing legal authorities, the Prison Defendants claim that the proper defendant in a case alleging ADA violations in a correctional facility is the agency overseeing the facility. Here, that would be the Virginia Department of Corrections. Such an error is not material to the issue before the court and, in any event, this is the type of trivial error in a pro se complaint that would merit amendment rather than dismissal. *See Gordon*, 574 F.2d at 1152 (explaining that a district court should advise pro se litigants that a complaint could be amended to name the proper defendant).

material fact as to deliberate indifference—a required element for money damages under the ADA in addition to the requirements described above—when he failed to appeal the district court's grant of summary judgment to the defendants as to his Eighth Amendment claim. Such a conclusion is without merit for two reasons.

First, the majority errs by invoking facts developed *after* the screening dismissal in its analysis of the plausibility of Jackson's ADA claim.[7] The operative complaint at issue at the screening dismissal included a request for injunctive relief (i.e., to be treated for the pain) as well as compensatory damages. Thus, when we determine whether Jackson plausibly stated a claim under the ADA, we may look to both the ADA's standards for injunctive relief and its standards for monetary relief. The majority's reliance on Jackson's supplemental complaint, which sought money damages and such other relief that the district court deemed "just, proper, and equitable," is therefore misplaced. J.A. 34. Consequently, the majority errs when it limits its analysis of the ADA to situations where a prisoner seeks money damages. Where Jackson seeks injunctive relief under the ADA,

---

[7] Jackson proceeded pro se before the district court. It is unsurprising that Jackson adopted the district court's initial construction of his claims in his later pro se pleadings. Though the prison may have had a law library, that is a far cry from the abilities of a professionally trained lawyer and it would make sense for a litigant to defer to the district court's construction. *Cf. Falzerano v. Collier*, 535 F. Supp. 800, 803 (D.N.J. 1982) (suggesting that pro se prisoner litigants' access to legal books instead of professional advocates is about as helpful "as furnishing medical services through books like: 'Brain Surgery Self-Taught', or 'How to Remove Your Own Appendix', along with scalpels, drills, hemostats, sponges, and sutures"). In part because of the clear barrier of "technical nicety" requirements, we have required that courts liberally construe pro se pleadings. *See Gordon*, 574 F.2d at 1151. The majority suggests that Jackson's omission of any reference to the ADA in his later pro se filings suggests he did not intend to bring that claim. But such a limit would effectively shield from review the district court's screening opinion. That is inappropriate and contrary to established practice and precedent.

36

he need not prove ADA deliberate indifference.  As explained above, Jackson's initial complaint clearly states a plausible claim for ADA injunctive relief.  The question before the court is whether the district court erred in screening that initial complaint for an ADA claim seeking both injunctive relief and money damages.  The majority's failure to engage with Jackson's claim for injunctive relief is a clear error of law.

Second, the majority errs by concluding that Jackson has conceded he has not established a genuine dispute as to the Prison Defendants' deliberate indifference.  Though the majority notes that there is a distinction between Eighth Amendment deliberate indifference and ADA deliberate indifference, it concludes that Jackson has a "very tough task," Maj. Op. at 18, of establishing ADA deliberate indifference because of Jackson's waiver of his adverse summary judgment ruling on his Eighth Amendment claim.  The majority asserts as much without unpacking the distinctions between the two deliberate indifference standards using the facts of this appeal.  This is just wrong.  Eighth Amendment deliberate indifference requires a showing of the named individual defendant's deliberate indifference to the risk of harm (subjective component) to Jackson's serious medical needs (objective component). *See Hixson v. Moran*, 1 F.4th 297, 302 (4th Cir. 2021).  The district court found that Jackson failed to create a genuine dispute of material fact as to Dr. Smith because mere disagreement with Dr. Smith's medical treatment plan fell short of deliberate indifference.  Additionally, Jackson failed to create a genuine dispute as to Nurse Dameron's knowledge of or involvement in excessive risks to Jackson's health or safety or that she played any role in discontinuing Jackson's medical prescriptions or revoking his bottom bunk pass.

37

In contrast, deliberate indifference under the ADA is the knowing disregard of the substantial likelihood of a violation of federal law. *Koon*, 50 F.4th at 407 ("The official must know of the facts from which a federal-rights violation could be inferred and then actually draw the damning inference."). This inquiry diverges from the inquiry before the district court at summary judgment in that the former asked about two individuals' subjective deliberate indifference to the risk of harm to Jackson. The ADA claim is directed at the state entity, meaning that the discovery would necessarily be broader in scope than discovery as to two individuals' involvement or culpability. To prove ADA deliberate indifference, Jackson must demonstrate that some Virginia official with the authority to address his problem "both had knowledge of his federally protected rights and nonetheless failed to help him." *Id.* This is a high bar. Nonetheless, the evidence to support such a claim is meaningfully different from that required to establish Eighth Amendment deliberate indifference such that the district court's grant of summary judgment as to Eighth Amendment deliberate indifference does not foreclose Jackson from establishing ADA deliberate indifference if he were permitted discovery. With reopened discovery (and perhaps a court appointed attorney), there is a chance that Jackson could create a jury question as to whether officials at the state prison knew Jackson had rights to reasonable accommodation under the ADA but nonetheless denied him a tennis shoe pass and non-stair access to the medical department, as well as revoked his bottom bunk pass. This may not be proven, but the net of relevant prison officials would extend beyond Dr. Smith and Nurse Dameron. This is important because on appeal we are concerned about whether Jackson plausibly stated a claim under the ADA.

38

At the time the district court screened the complaint, Jackson was only required to state a claim to relief that was plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Neitzke v. Williams*, 490 U.S. 319, 326–31 (1989) (extending the Rule 12(b)(6) pleading standard to the section 1915 screening process). Indeed, the district court is required to hold Jackson to a less stringent standard than formal pleadings drafted by lawyers and the lower court had the obligation to liberally construe Jackson's allegations into legal theories that might plausibly be suggested by the facts alleged. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Harrison*, 840 F.2d at 1152; *Shaw*, 59 F.4th at 128. Jackson's complaint plausibly stated a claim for injunctive relief and money damages under the ADA in addition to a claim for Eighth Amendment deliberate indifference. Such a claim was plain on the face of the complaint and clearly sought to address Jackson's essential grievance: treatment and accommodation for his injured leg. The district court therefore erred when it failed to identify the ADA claim, and the majority errs when it suggests the lower court's error was harmless and had no impact on the ultimate outcome of this case. [8]

---

[8] Our *de novo* review of the district court's dismissal for failure to state a claim is informed by plausibility. *See* 28 U.S.C. § 1915A(b) ("On review, the court shall identify cognizable claims."); *Jehovah*, 798 F.3d at 176; *see Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Read together, the statute and our precedent direct courts to identify plausible, cognizable claims using the liberal construction afforded to pro se litigants. If the majority is *not* holding that Jackson's ADA claim is implausible, then what is it if not plausible?

39

Congress directed the federal courts to construe prisoner's pro se claims from their factual allegations under the PLRA. *See* 28 U.S.C. § 1915A(b). In so doing, Congress has charged us with safeguarding the rights of indigent, incarcerated persons to ensure they are not subjected to injustices while in the custody of the state. *See id.*; *Shaw*, 59 F.4th at 128. The majority correctly notes that this task is "hard" and "ubiquitous" but nonetheless "required." Maj. Op. at 9. Yet the majority fails to engage in the liberal construction dictated by Supreme Court and our earliest binding precedent. *See Haines*, 404 U.S. at 520–21; *Hughes*, 449 U.S. at 10; *Gordon*, 574 F.2d at 1151. Perhaps the majority misread the district court's screening opinion. But the majority opinion, as written, fails to hold the district court to the exacting standard required by binding precedent. Had it done so, it would have found Jackson to have plausibly stated an ADA claim for injunctive relief and money damages. Heavy are the robes worn by those who sit on the federal bench. *Cf.* WILLIAM SHAKESPEARE, HENRY IV act 3, sc. 1, I. 31. But it is our burden and our great responsibility to safeguard the people's rights, particularly the rights of our most vulnerable citizens. The majority fails to do so here.

## IV.

Because the district court failed to identify that Jackson's initial complaint contained allegations sufficient to plausibly state a claim under the ADA, we should remand for further proceedings as to Jackson's ADA claim. Given the majority's contrary holding, I respectfully dissent.

40